July 29, 2019

RE:   *In re European Government Bonds Antitrust Litigation*, No. 19-cv-2601-VM (S.D.N.Y.)

Dear Counsel:

In accordance with the Amended Case Management Order (Dkt. No. 65), Defendants write to inform Plaintiffs of their intent to move to dismiss the Consolidated Class Action Complaint ("CAC") (Dkt. No. 47) pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## I.   Plaintiffs Fail Plausibly to Plead a Conspiracy.

Plaintiffs allege price fixing under Section 1 of the Sherman Act with respect to all auctions and all secondary market trading in European Government Bonds ("EGBs") across 13 European states and hundreds of products from 2007 through 2012. But Plaintiffs do not plausibly allege a Section 1 violation because all the CAC musters are vague news reports of a European Commission investigation and self-generated statistical analyses that fail to show what any Defendant did to conspire – much less the massive conspiracy Plaintiffs have asserted.

***First***, the CAC alleges no direct evidence of a conspiracy and does not plausibly allege parallel conduct. *See Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). Plaintiffs make no allegations regarding any bid submitted by any Defendant in the primary market; any bid-ask spread ever quoted by any Defendant in the secondary market (let alone by two Defendants with matching quotes); any conspiratorial communications; or any aspect of any investigation pertaining to U.S. customers or bid-ask spreads. Allegations that Defendants *on average* quoted higher bid-ask spreads or *on average* paid higher prices at auctions over a period of years (CAC ¶¶ 140–44) say nothing about whether any individual Defendant quoted or bid at those levels, much less whether multiple Defendants did anything in parallel. *See In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016) ("Mere generalizations as to any particular defendant—or even defendants as a group—are insufficient."). ***Second***, the CAC examined data for only *two* EGB auctions – one of which did not even include all Defendants (CAC ¶ 83) – and bid-ask spread data for only *one* Eurozone state. This small, cherry-picked sample does not support the sweeping claim that Defendants conspired to manipulate each of the *thousands* of auctions and inflate bid-ask spreads on *all* trades across *13 states* for six years. (*Id.* ¶¶ 83, 119–43.) A complaint cannot rely on sampling when it fails to "allege the statistical significance of the set of . . . transactions . . . selected to conduct the [s]tatistical [a]nalysis." *Hinds Cnty. v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348, 361 (S.D.N.Y. 2010) (Marrero, J.). ***Third***, Plaintiffs do not allege facts demonstrating that, even when they purported to analyze particular auctions, they considered "appropriate metric[s] for evaluating bidding behavior or collusive activity." *Id.* Plaintiffs argue that EGB auctions were manipulated because yields moved in an inverted "V" pattern (CAC ¶¶ 120–35), but one of the academic articles the CAC cites *itself* explains that the inverted "V" – known as an "auction cycle" – is common and is driven by "change[s] in market volatility," not manipulation.[1]
***Fourth***, Plaintiffs' entire theory is implausible, as they allege that the four Defendant groups – who are not alleged to have dominant market shares, even collectively – somehow consistently

---

[1] Roel Beetsma, et al., *Price Effects of Sovereign Debt Auctions in the Euro-Zone: The Role of the Crisis*, at 6, 32, Working Paper Series (No. 1595) (Sept. 2013) (cited at CAC ¶ 154 n.21), *available at* https://www.ecb.europa.eu/pub/pdf/scpwps/ecbwp1595.pdf.



July 29, 2019

cornered the market for bonds of 13 separate states, each of which had between 9 and 32 other primary EGB dealers.[2]  Indeed, all four Defendants are alleged to have served as primary dealers in only three of the 13 states; and in six of the other states only one or two are alleged to have been primary dealers.[3]  (*Id.* ¶ 83.)

## II.  Plaintiffs Lack Standing to Assert a Sherman Act Claim.

Plaintiffs fail to allege antitrust standing.  ***First***, they fail to allege antitrust injury.  "[N]amed plaintiffs in a class action must allege and show that they personally have been injured," *In re SSA Bonds Antitrust Litig.*, 2018 WL 4118979, at \*6–7 and n.17 (S.D.N.Y. Aug. 28, 2018) (internal quotation marks omitted), but Plaintiffs here fail to allege the type of bonds they traded, the days on which they allegedly traded bonds with Defendants, what positions they held, or whether their transactions coincided with instances of alleged manipulation.  Plaintiffs' data analyses also fail to establish injury, as none of the averages they cite are tied to the conduct of any Defendant.  *See Harry v. Total Gas & Pwr. N. Am., Inc.*, 889 F.3d 104, 115 (2d Cir. 2018) (rejecting "studies and expert analysis" that did not connect manipulation to individual defendants).  Nor can Plaintiffs assert claims for products they did not trade, which would require separate proof as to different auctions, days, and bonds.  *See Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014).  ***Second***, Plaintiffs are not efficient enforcers given the highly speculative damages alleged; their auction-related claims also fail given the indirectness of the alleged injury and the presence of more direct alleged "victims" in the form of actual auction participants.  *In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 905 (S.D.N.Y. 2018).

## III.  Plaintiffs' Claim Is Time-Barred.

Because Plaintiffs plead that their claim accrued at least seven years ago (CAC ¶ 1), it is barred by the Sherman Act's four-year statute of limitations unless they allege facts demonstrating that this is a "rare and exceptional" case where fraudulent concealment applies.  *Behrens v. JPMorgan Chase Bank N.A.*, 2019 WL 1437019, at \*6 (S.D.N.Y. Mar. 31, 2019).  The CAC pleads none of fraudulent concealment's elements – (i) wrongful concealment by defendants, (ii) plaintiffs' continual unawareness, and (iii) plaintiffs' due diligence – let alone with the particularity "demanded by [Rule] 9(b)." *Hinds Cnty*, 620 F. Supp. 2d at 519.  By relying on public trade data supposedly revealing "anomalies" that Plaintiffs state can only be explained by collusion (CAC ¶¶ 127–37), Plaintiffs essentially concede that nothing impeded their awareness

---

[2]  AFME, *Primary Dealers Handbook* (2015) (cited at CAC ¶ 172 n.24), *available at*
https://www.afme.eu/globalassets/downloads/publications/afme-primary-dealers-handbook-q4-2015.pdf.

[3]  Because Plaintiffs fail to allege that they participated in any EGB auctions, they cannot recover for Defendants' alleged auction-related conduct.  In addition, Plaintiffs' auction-related claims are barred by the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA") because Plaintiffs only allege that Defendants participated in foreign primary markets, and that Plaintiffs were eventually harmed here.  These allegations do not meet either of the two FTAIA exceptions, as the alleged auction-related conduct does not (1) constitute import commerce, or (2) have even a reasonably foreseeable effect on domestic commerce.  *See F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004); *see also Kruman v. Christie's Int'l PLC*, 284 F.3d 384, 395 (2d Cir. 2002), *abrogated in part on other grounds by Empagran*, 542 U.S. 155.  At most, Plaintiffs allege an insufficient "spillover" impact.  *See, e.g., Eurim-Pharm GmbH v. Pfizer Inc.*, 593 F. Supp. 1102, 1106 (S.D.N.Y. 1984).

July 29, 2019

of their claim. Arguing "that only a plot can explain" public, observable market behavior shows that Plaintiffs "had reason to suspect the probability of any manner of wrongdoing, which is all that is necessary to cause the tolling period to cease." *In re Interest Rate Swaps Antitrust Litig.*, 2018 WL 2332069, at *18 (S.D.N.Y. May 23, 2018). In addition, "[d]ue diligence is not adequately pled if plaintiffs did not allege . . . that they exercised due diligence or if they make no allegation of any specific inquiries of defendants." *Hinds Cnty.*, 620 F. Supp. 2d at 521. Plaintiffs concede they exercised no due diligence (CAC ¶ 193) and do not allege they ever inquired of Defendants despite having 12 years and ready access to "billions" of price quotes that supposedly can be explained only by collusion. (*Id.* ¶¶ 135–37.) Plaintiffs assert that reasonable diligence "could not have discovered" a conspiracy because "Defendants did not t[ell] Plaintiffs . . . they were conspiring" (*id.* ¶¶ 193–95), but this Court has held that such conclusory assertions are insufficient to plead diligence. *Hinds Cnty.*, 620 F. Supp. 2d at 521.

## IV.    The Foreign Defendants Are Not Subject to Personal Jurisdiction.

Plaintiffs fail to allege personal jurisdiction over the Foreign Defendants.[4]  General jurisdiction is absent because none of the Foreign Defendants is incorporated or has its principal place of business in the U.S., and the CAC does not allege that any Foreign Defendant had "continuous and systematic" contacts that render them "at home" in the U.S. *Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2015).

Specific jurisdiction is also absent, as Plaintiffs have not alleged that their claims "arise from the [Foreign Defendants'] purposeful contacts with the" U.S. or that the U.S. was the nucleus or focal point of the alleged misconduct. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83–84 (2d Cir. 2018) (internal quotation marks omitted). *First*, the CAC does not identify any trades Foreign Defendants purportedly manipulated in the U.S., nor does it allege that they had any communications or took any other actions in furtherance of the purported scheme here. *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 229–30 (S.D.N.Y. 2015); CAC ¶¶ 24–27, 28–69, 106–18. Instead, Plaintiffs impermissibly resort to group pleading, "collapsing" the Foreign Defendants with their "distinct" affiliated U.S.-based Defendants and making it "impossible to determine whether [Foreign Defendants] sold directly to [Plaintiffs] . . . or whether [they] belong[] in this lawsuit at all[]." *Schwab*, 883 F.3d at 84; *see Famular v. Whirlpool Corp.*, 2017 WL 2470844, at *2 (S.D.N.Y. June 7, 2017) ("When the action is brought as a purported class action, personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action."). The presence of purported "U.S. victims alone does not make out jurisdiction . . . ." *Sullivan v. Barclays PLC*, 2017 WL 685570, at *44 (S.D.N.Y. Feb. 21, 2017); *see* CAC ¶¶ 12, 22. *Second*, the CAC's allegations all suggest that the focal point of the alleged conduct was outside the U.S. *See Schwab*, 883 F.3d at 84.

Conspiracy-based jurisdiction also fails because, among other things, of the lack of allegations that "a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with [this] state." *See id.* at 87; *In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *49 (S.D.N.Y. Mar. 28, 2017).

---

[4] Bank of America Merrill Lynch International Limited Designated Activity Company, Merrill Lynch International, NatWest Markets Plc, Nomura International PLC and UniCredit Bank AG.

July 29, 2019

Very truly yours,

/s/ Adam S. Hakki
Adam S. Hakki
Richard F. Schwed
Grace Lee
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (646) 848-4000
ahakki@shearman.com
rschwed@shearman.com
grace.lee@shearman.com

*Attorneys for Defendants Bank of America, N.A.; Bank of America Merrill Lynch International Designated Activity Company; and Merrill Lynch International*

/s/ Paul S. Mishkin
Paul S. Mishkin
Maude Paquin
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
paul.mishkin@davispolk.com
maude.paquin@davispolk.com

*Attorneys for Defendants NatWest Markets Plc and NatWest Markets Securities Inc.*

/s/ Aidan Synnott
Aidan Synnott
PAUL, WEISS, RIFKIND, WHARTON & GARRSION LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
asynnott@paulweiss.com

*Attorneys for Defendant Nomura Securities International Inc.*

July 29, 2019

 /s/ John Buretta
John Buretta
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
jburetta@cravath.com

*Attorneys for Defendant Nomura International PLC*

 /s/ Susan Saltzstein
Susan Saltzstein
Boris Bershteyn
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES
4 Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-3000/1
susan.saltzstein@skadden.com
boris.bershteyn@skadden.com

*Attorneys for Defendants UniCredit Capital Markets LLC and UniCredit Bank AG*

TO:

| | | |
|---|---|---|
| Gregory S. Asciolla | Christopher M. Burke | Vincent Briganti |
| **Labaton Sucharow LLP** | **Scott+Scott Attorneys At** | **Lowey Dannenberg, P.C.** |
| 140 Broadway | **Law LLP** | 44 South Broadway, Suite 1100 |
| New York, NY 10005 | 600 W. Broadway, Suite 3300 | White Plains, NY 10601 |
| gasciolla@labaton.com | San Diego, CA 92101 | vbriganti@lowey.com |
| | cburke@scott-scott.com | |

VIA EMAIL

cc:   The Honorable Victor Marrero

VIA HAND DELIVERY

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by defendants.

**SO ORDERED.**

7-30-19
DATE          VICTOR MARRERO, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/30/19