February 26, 2020

RECEIVED
FEB 27 2020
CHAMBERS OF
JUDGE MARRERO

**RE:** *In re European Gov't Bonds Antitrust Litig.*, No. 19-cv-2601-VM (S.D.N.Y.)

Dear Counsel:

Defendants write to inform Plaintiffs of their intent to move to dismiss the Third Amended Consolidated Class Action Complaint ("TAC")[1] pursuant to FRCP 12(b)(2) and 12(b)(6).

**Plaintiffs Fail Plausibly to Plead a Conspiracy.** Plaintiffs seek to plead a price fixing conspiracy with respect to all auctions and secondary market trading in European Government Bonds ("EGBs") across 13 European states from 2007 to 2012. Like the prior complaints, the TAC relies entirely on vague news reports of a foreign investigation and cherry-picked statistical samplings from public data. But the mere existence of a government investigation does not "weigh in favor of the complaint's plausibility," and "an antitrust complaint must provide some basis for inferring that the specific defendants participated in the alleged conspiracy," which the TAC fails to do. *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 389–90 (S.D.N.Y. 2019) ("*MGB*").

*First*, the TAC alleges no direct evidence or parallel conduct "that ties each defendant to the conspiracy." *In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 364 (S.D.N.Y. 2019) ("*GSE*"). It "contains almost no individualized allegations at all" regarding any Defendant's auction bids, specific quotes in the secondary market, or conspiratorial communications. *MGB* at 389. The TAC instead alleges that Defendants in *aggregate* paid higher prices at auctions or *on average* quoted higher bid-ask spreads. (¶¶ 161–96.) But "group statistical pleadings cannot carry the day" because they "obscure any given Defendant's contribution to an observed trend," *MGB* at 390, making it "impossible to have any confidence that the statistics actually capture something different about *each and every* defendant."[2] *GSE* at 365. Moreover, the wild swings in Plaintiffs' aggregated bid-ask spread analysis undermine any arguable inference of conspiracy from it: (i) Defendants' bid-ask spread is just 15% wider than the non-Defendants' during the purported conspiracy (down from 40%, after adding the two newest defendants); while (ii) the *non*-Defendants' bid-ask spread inexplicably appears to be more than 35% wider than Defendants' spread in the purported "post-conspiracy" period. (*Compare* ¶ 187, Fig. 11 *with* Second Amended Complaint (Dkt. No. 73), ¶ 164, Fig. 11.) Plaintiffs' cherry-picked table purporting to show percentage declines in 4 Defendants' bid-ask spreads for just 1 country for just 1 year (¶ 191, Fig. 12) also does not help, as (i) *1 year* of alleged declines in spreads cannot suggest that *each Defendant* conspired for *6 years*, much less across 13 bond-issuing countries, (ii) the wide variation in the alleged decreases (from 27.97% to 66.42%) suggests that Defendants were not conspiring, and (iii) the table does not include any data for NatWest or UBS. *Second*, Plaintiffs' analysis of auction data does not reflect "appropriate metric[s] for evaluating bidding behavior or collusive activity." *Hinds Cnty. v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348, 361 (S.D.N.Y. 2010) (Marrero, J.). Plaintiffs claim that because yields moved in an inverted "V" pattern during some auctions, all auctions must have been manipulated (¶¶ 166–79), but this conclusory assertion is contradicted by an academic article on which the TAC relies,

---

[1] All paragraph citations are to the TAC (Dkt. No. 87) unless otherwise noted.

[2] Plaintiffs rely on *In re Commodity Exchange, Inc.*, 213 F. Supp. 3d 631 (S.D.N.Y. 2016) and *In re London Silver Fixing*, 213 F. Supp. 3d 530 (S.D.N.Y. 2016) (*see* Dkt. No. 70 at 1), but those complaints included dozens of statistical analyses of individualized *and* market-wide data, not merely averages or aggregated market data.

1

**February 26, 2020**

which explains that this pattern—known as an "auction cycle"—is the result of ordinary market forces, not manipulation.[3] ***Third***, Plaintiffs' analysis only covers auctions of French and Italian bonds—just 2 of the 13 states whose auctions Defendants supposedly manipulated—but a complaint cannot rely on sampling when it fails to "allege the statistical significance of the . . . transactions . . . selected to conduct the [s]tatistical [a]nalysis." *Hinds*, 708 F. Supp. 2d at 361. Plaintiffs argue that French and Italian EGBs account for half of all outstanding EGBs (¶ 162), but do not explain how this metric can plausibly show a conspiracy when not all Defendants were primary dealers in those states or why collusion there makes it likely that Defendants were conspiring elsewhere, especially when (i) each state had a different lineup of primary dealers (*see* ¶ 123, Fig. 4) and (ii) Germany, which accounts for 25% of all EGBs outstanding (¶ 162, Fig. 6) and is the only state where all 6 defendants are primary EGB dealers, did *not* experience auction cycles.[4] ***Fourth***, Plaintiffs' theory—that 6 banks not alleged to have dominant market share (even collectively) consistently cornered the market for EGBs in 13 separate states, each of which had between 8 and 30 other primary EGB dealers—is facially implausible.[5] Indeed, only 1 of the 13 states had all 6 Defendants as primary dealers; and in 3 of the other states, only 1 or 2 Defendants are alleged to have been primary dealers.[6] (¶ 123, Fig. 4.)

**Plaintiffs Lack Antitrust Standing.** ***First***, Plaintiffs have not alleged antitrust injury because they "fail[] to show that they themselves were party to any specific price-fixed transaction with a named Defendant." *In re SSA Bonds Antitrust Litig.*, 2019 WL 4917608, at *14 (S.D.N.Y. Oct. 4, 2019). Statistical analysis and allegations of a government enforcement action cannot substitute for evidence that "Plaintiffs' prices were among those affected." *In re SSA Bonds Antitrust Litig.*, 2018 WL 4118979, at *7 (S.D.N.Y. Aug. 28, 2018). Nor can Plaintiffs assert claims for products they did not trade. *See In re N. Sea Brent Crude Oil Futures Litig.*, 256 F. Supp. 3d 298, 314 (S.D.N.Y. 2017). ***Second***, Plaintiffs are not efficient enforcers of their auction-related claims, due to the indirectness of the alleged injury and the presence of more direct alleged "victims" (actual auction participants). *In re London Silver Fixing*, 332 F. Supp. 3d 885, 905–10 (S.D.N.Y. 2018).

**Plaintiffs' Claim Is Time-Barred.** Plaintiffs' claim is time-barred by the Sherman Act's 4-year statute of limitations because it accrued at least 7 years ago (¶ 1) and because this is not a "rare and exceptional" case where fraudulent concealment applies. *Behrens v. JPMorgan Chase Bank N.A.*, 2019 WL 1437019, at *6 (S.D.N.Y. Mar. 31, 2019). The TAC pleads none of fraudulent concealment's elements: (i) defendants' concealment, (ii) plaintiffs' continual unawareness, and (iii) due diligence. By resting their claim on public pricing data that supposedly reveals "anomalies" explainable only by collusion (¶¶ 160–79), Plaintiffs concede that nothing impeded awareness of their claim because if "only a plot can explain [these anomalies] plaintiffs had every basis, in real time, to smell a rat." *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp.

---

[3] Roel Beetsma *et al.*, *Price Effects of Sovereign Debt Auctions in the Euro-Zone: The Role of the Crisis*, 25 J. FIN. INTERMEDIATION 30, 32 (cited at ¶ 207 n.22), *working paper version available at* https://www.ecb.europa.eu/pub/pdf/scpwps/ecbwp1595.pdf?fb6befb53b57101ecc9cb86af33f789d.

[4] *See* Beetsma, note 3 *supra* (cited at ¶ 207 n.22), at 37, 39.

[5] AFME, *Primary Dealers Handbook* (2015) (cited ¶ 232 n.26), *available at* https://www.afme.eu/globalassets/downloads/publications/afme-primary-dealers-handbook-q4-2015.pdf.

[6] Plaintiffs' auction-related claims are also barred by the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA") because Plaintiffs only allege that Defendants participated in foreign primary markets, and that Plaintiffs were eventually harmed here. *See F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004).

2

3d 430, 489 (S.D.N.Y. 2017) *("IRS")*. As this Court has previously concluded, plaintiffs cannot "simultaneously claim[] that the generalized evidence cited as the basis of [their] complaint . . . is sufficiently detailed to state a cognizable claim for relief [but] somehow insufficiently particular to cause the statute of limitations to run . . . ." *Woori Bank v. Merrill Lynch*, 923 F. Supp. 2d 491, 495–96 (S.D.N.Y. 2013) (Marrero, J.), *aff'd*, 542 F. App'x 81 (2d Cir. 2013); *see also IRS*, 261 F. Supp. 3d at 489. Additionally, the TAC cites an article from *2013* confirming that another supposedly unmistakable sign of a conspiracy—EGB auction cycles—was public knowledge, years before the limitations period expired. This Court has also warned that "[d]ue diligence is not adequately pled if plaintiffs did not allege . . . they exercised due diligence or if they make no allegation of any specific inquiries of defendants." *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 521 (S.D.N.Y. 2009) (Marrero, J.) (internal quotations and citations omitted). Plaintiffs concede their lack of diligence (¶ 257) but offer no grounds to excuse it.

**The Foreign Defendants Are Not Subject to Personal Jurisdiction.** The TAC lacks a statutory basis for personal jurisdiction over the Foreign Defendants,[7] and fails to show that the exercise of personal jurisdiction comports with constitutional due process. *First,* it does not adequately allege that any Foreign Defendant "transact[ed] business" in relation to the alleged collusive conduct either under the Clayton Act, 15 U.S.C. § 22, or the New York long-arm statute, N.Y. C.P.L.R. § 302(a). *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168–69 (2d Cir. 2013); *see also Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 424–35 (2d Cir. 2005). *Second,* Plaintiffs make no attempt to allege general jurisdiction, and their specific jurisdiction claim lacks allegations of "suit-related conduct that creates a substantial connection with" the U.S. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83–84 (2d Cir. 2018) (internal quotations and citations omitted). Instead, the TAC impermissibly "collapses" the Foreign Defendants with their "distinct" U.S.-based affiliates and often conflate the Foreign Defendants together, rendering it "impossible to determine" whether any Foreign Defendant "belongs in this lawsuit at all." *Id.* at 84; *e.g.* ¶¶ 47, 66, 70–71, 86, 92, 99–106. Plaintiffs' allegations regarding the Foreign Defendants' U.S. trading activities are conclusory and do not "show that the [Foreign] Defendants transacted with named Plaintiffs," *In re SSA Bonds Antitrust Litig.*, 2019 WL 4917608, at *7 (S.D.N.Y. Oct. 4, 2019), or that the Foreign Defendants' alleged marketing and pricing were suit-related and expressly directed at U.S. customers. *See FrontPoint Asian Event Driven Fund, L.P. v. Citibank, NA.*, 2017 WL 3600425, at *7 (S.D.N.Y. Aug. 18, 2017) (dismissing complaint that "contained no non-conclusory allegations that the Foreign Defendants purposefully directed their activities at residents of the United States"); *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 298 (S.D.N.Y. 2019) ("absence of any non-conclusory allegation connecting [the defendants'] conspiracy-related conduct to [the forum]" defeats specific jurisdiction). The mere presence of alleged "U.S. victims alone" does not confer specific jurisdiction. *Sullivan v. Barclays PLC*, 2017 WL 685570, at *44 (S.D.N.Y. Feb. 21, 2017).[8]

---

[7] Bank of America Merrill Lynch Designated Activity Company, Merrill Lynch International, NatWest Markets plc, Natixis S.A., Nomura International plc, UBS AG, UBS Europe SE and UniCredit Bank AG.

[8] The TAC's effort to establish "minimum contacts" through conspiracy-based specific jurisdiction also fails because, among other things, there are no plausible allegations that "a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with [this] state." *Schwab*, 883 F.3d at 87.

3

**February 26, 2020**

Very truly yours,

/s/ Adam S. Hakki
Adam S. Hakki
Richard F. Schwed
Grace Lee
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (646) 848-4000
ahakki@shearman.com
rschwed@shearman.com
grace.lee@shearman.com

*Attorneys for Defendants Bank of America, N.A.; Bank of America Merrill Lynch International Designated Activity Company; and Merrill Lynch International*


/s/ Fiona Schaeffer
Fiona Schaeffer
Sean Murphy
James Cavoli
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5651
Facsimile: (212) 822-5651
fschaeffer@milbank.com
smurphy@milbank.com
jcavoli@milbank.com

*Attorneys for Defendant Natixis S.A.*

February 26, 2020

/s/ Paul S. Mishkin
Paul S. Mishkin
Maude Paquin
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
paul.mishkin@davispolk.com
maude.paquin@davispolk.com

*Attorneys for Defendants NatWest Markets Plc and NatWest Markets Securities Inc.*


/s/ Aidan Synnott
Aidan Synnott
PAUL, WEISS, RIFKIND, WHARTON & GARRSION LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
asynnott@paulweiss.com

*Attorneys for Defendant Nomura Securities International Inc.*


/s/ John Buretta
John Buretta
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
jburetta@cravath.com

*Attorneys for Defendant Nomura International PLC*

**February 26, 2020**

/s/ Jarrett Arp
D. Jarrett Arp (*pro hac vice*)
Kristen Limarzi (*pro hac vice*)
Amy Feagles (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone:  (202) 955-8678
Facsimile:  (202) 530-9527
jarp@gibsondunn.com
klimarzi@gibsondunn.com
afeagles@gibsondunn.com

Philip Shapiro
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212-351-5323
Facsimile:  212-716-0824
pshapiro@gibsondunn.com

*Attorneys for Defendants UBS AG, UBS Europe SE, and UBS Securities LLC*


/s/ Boris Bershteyn
Susan Saltzstein
Boris Bershteyn
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES
4 Times Square
New York, NY 10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-3000/1
susan.saltzstein@skadden.com
boris.bershteyn@skadden.com

*Attorneys for Defendants UniCredit Capital Markets LLC and UniCredit Bank AG*

February 26, 2020

TO:

| | | |
|---|---|---|
| Gregory S. Asciolla<br>**Labaton Sucharow LLP**<br>140 Broadway<br>New York, NY 10005<br>gasciolla@labaton.com | Christopher M. Burke<br>**Scott+Scott Attorneys At Law LLP**<br>600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>cburke@scott-scott.com | Vincent Briganti<br>**Lowey Dannenberg, P.C.**<br>44 South Broadway, Suite 1100<br>White Plains, NY 10601<br>vbriganti@lowey.com |

VIA EMAIL

cc: The Honorable Victor Marrero

VIA HAND DELIVERY

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by defendants.
>
> SO ORDERED.
>
> 2-27-20
> DATE          VICTOR MARRERO, U.S.D.J.

USDC SDNY
ELECTRONICALLY FILED
DATE: 2/27/20