**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE EUROPEAN GOVERNMENT BONDS ANTITRUST LITIGATION | Lead Case No. 1:19-cv-2601 (VM)<br><br>Hon. Victor Marrero |
|---|---|

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO RECONSIDER THIS COURT'S DECISION DENYING DEFENDANTS NATIXIS S.A., NOMURA INTERNATIONAL PLC AND NOMURA SECURITIES INTERNATIONAL, INC.'S MOTION TO DISMISS THE THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... iii

ARGUMENT ..... 1

I. DEFENDANTS HAVE NOT WAIVED ANY ARGUMENTS ..... 1

II. THE TAC FAILS TO PLEAD PLAINTIFFS' ANTITRUST STANDING ..... 1

A. The TAC Does Not Plead Antitrust Standing as to Natixis and NIP ..... 1

B. The TAC Does Not Plead that Plaintiffs Are Direct Purchasers ..... 3

C. Plaintiffs Cannot Establish Antitrust Standing as to NSI ..... 4

III. THE TAC FAILS TO PLEAD JURISDICTION OVER NATIXIS AND NIP ..... 5

A. In-Forum Marketing/Trading Is Insufficient Under Controlling Precedent ..... 5

B. There Is No Statutory Basis To Exercise Personal Jurisdiction over NIP ..... 7

IV. PLAINTIFFS' SHERMAN ACT CLAIMS ARE TIME-BARRED ..... 9

V. THE TAC FAILS PLAUSIBLY TO ALLEGE A CONSPIRACY ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allianz Global Investors GmbH v. Bank of Am. Corp.*, 2020 WL 2765693 (S.D.N.Y. May 28, 2020) ....... 2, 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....... 3

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018) ....... 5, 6, 9

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) ....... 8

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005) ....... 7, 8

*Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122 (S.D.N.Y. 2018) ....... 6, 8

*Eureka V LLC v. Town of Ridgefield*, 535 Fed. App'x 41 (2d Cir. 2013) ....... 4

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank N.A.*, 2018 WL 4830087 (S.D.N.Y. Oct. 4, 2018) ....... 6

*Fund Liquidation Holdings LLC v. Citibank, N.A.*, 399 F. Supp. 3d 94 (S.D.N.Y. 2019) ....... 6

*Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158 (2d Cir. 2005) ....... 8

*Harry v. Total Gas & Power N.A., Inc.*, 889 F.3d 104 (2d Cir. 2018) ....... 1, 2, 3

*Hinds Cty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499 (S.D.N.Y. 2009) ....... 4

*Hinds Cty. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378 (S.D.N.Y. 2010) ....... 9

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ....... 4

*In re Blood Reagents Antitr. Litigation*, 756 F. Supp. 2d 623 (E.D. Pa. 2010) ....... 10

*In re Foreign Exch. Benchmark Rates Antitr. Litig*., 2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016) ....... 3

*In re Foreign Exch. Benchmark Rates Antitr. Litig.*, 74 F. Supp. 3d 581 (S.D.N.Y. 2015) ....... 3

*In re GSE Bonds Antitr. Litig.*, 396 F. Supp. 3d 354 (S.D.N.Y. 2019) ....... 3

*In re London Silver Fixing, Ltd., Antitr. Litig.*, 332 F. Supp. 3d 885 (S.D.N.Y. 2018) ....... 2

*In re SSA Bonds Antitr. Litig.*, 420 F. Supp. 3d 219 (S.D.N.Y. 2019)..........8

*In re TDT-LCD (Flat Panel) Antitr. Litig.*, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013)..........4

*In re Zyprexa Prods. Liability Litig.*, 549 F. Supp. 2d 496 (E.D.N.Y. 2008)..........9

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)..........8, 9

*JP Morgan Chase Bank, N.A. v. Law Office of Robert Jay Gumenick, P.C.*, 2011 WL 1796298 (S.D.N.Y. Apr. 22, 2011)..........1

*Penn. Pub. Sch. Emps.' Retirement Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341 (S.D.N.Y. 2012)..........9

*Professional Traders Fund, LLC v. Prairie Oil & Gas, Inc.*, 521 F. Supp. 2d 313 (S.D.N.Y. 2007)..........6

*Royal Park Investments SA/NV v. HSBC Bank USA, N.A.*, 2017 WL 6403862 (S.D.N.Y. Dec. 14, 2017)..........5

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995)..........1

*Singh v. Cigna Corp.*, 918 F.3d 57 (2d Cir. 2019)..........9

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521 (S.D.N.Y. 2017)..........6

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 409 F. Supp. 3d 261 (S.D.N.Y. 2019)..........6

*State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065 (2d Cir. 1988)..........3

*Suffolk Parents of Handicapped Adults v. Pataki*, 1996 WL 285423 (E.D.N.Y. May 17, 1996)..........7

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004)..........7

*Town & Country Linen Corp. v. Ingenious Designs LLC*, 436 F. Supp. 3d 653 (S.D.N.Y. 2020), *order vacated in part on reconsideration on other grounds*, 2020 WL 996732 (S.D.N.Y. Mar. 2, 2020)..........1

*Trump v. Vance*, 2020 WL 4861980 (S.D.N.Y. Aug. 20, 2020)..........1, 10

*U.S. v. Apple, Inc.*, 952 F. Supp. 2d 638 (S.D.N.Y. 2013), *aff'd*, 791 F.3d 290 (2d Cir. 2015)..........4

*U.S. v. Trenton Potteries Co.*, 273 U.S. 392 (1927)..........7

*United States v. Scophony Corp. of Am.*, 333 U.S. 795 (1948) .................................................... 8

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) .......................... 1

*Walden v. Fiore*, 571 U.S. 277 (2014) ................................................................................. 7

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) ...................................... 5, 7

**Statutes & Rules**

15 U.S.C. § 22 ..................................................................................................................... 7, 8

28 U.S.C. § 1391 ..................................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 10

**Other Authorities**

Roel Beetsma *et al.*, *Price Effects of Sovereign Debt Auctions in the Euro-Zone: The Role of the Crisis*, Working Paper Series (No. 1595) (Sept. 2013) ................................ 10

## ARGUMENT[1]

## I. DEFENDANTS HAVE NOT WAIVED ANY ARGUMENTS

Plaintiffs erroneously claim that Defendants "argue[] new theories that Defendants failed to previously raise" in their three-page pre-motion letter, which the Court converted into a Motion to Dismiss. Pls.' Mem. of Law in Opp. to Mot. to Reconsider ("Opp.") at 1. The Motion properly elaborates on and provides further authority for the basic arguments outlined in the pre-motion letter, and the pre-motion process does not waive arguments raised in the Motion. *See JP Morgan Chase Bank, N.A. v. Law Office of Robert Jay Gumenick, P.C.*, 2011 WL 1796298, at *3 (S.D.N.Y. Apr. 22, 2011) (Marrero, J.) (insufficient service argument not waived by omitting it from pre-motion letter).[2] The TAC is deficient in many ways, and the Court can and should require more. *Trump v. Vance*, 2020 WL 4861980, at *9 (S.D.N.Y. Aug. 20, 2020) (Marrero, J.) (observing *Twombly*'s admonition that "proceeding to antitrust discovery can be expensive" and "a district court must retain some power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed").

## II. THE TAC FAILS TO PLEAD PLAINTIFFS' ANTITRUST STANDING

### A. The TAC Does Not Plead Antitrust Standing as to Natixis and NIP

The Opposition fails to refute that the Court overlooked the controlling aspects of *Harry v. Total Gas & Power N.A., Inc.*, 889 F.3d 104 (2d Cir. 2018), and distinguishing features

---

[1] Unless otherwise specified, all capitalized terms are as defined in Defendants' Memorandum of Law in Support of Motion to Reconsider ("Motion" or "Mot."), and all internal quotation marks and citations are omitted and all emphases added.

[2] *See also Town & Country Linen Corp. v. Ingenious Designs LLC*, 436 F. Supp. 3d 653, 662 n.2 (S.D.N.Y. 2020) ("failure to raise arguments in pre-motion letters does not waive the arguments"), *order vacated in part on reconsideration on other grounds*, 2020 WL 996732 (S.D.N.Y. Mar. 2, 2020). Given the truncated pre-motion process, Defendants believe the Motion does not need to be considered pursuant to the standard of decision applicable where full motion practice has occurred prior to a decision, but in any case this Motion highlights under that standard matters that "might reasonably be expected to alter the conclusion reached by the court" or "to correct a clear error or prevent manifest injustice." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

of *Allianz Global Investors GmbH v. Bank of Am. Corp.*, 2020 WL 2765693 (S.D.N.Y. May 28, 2020). Under *Harry*, a complaint should be dismissed where it "provides just as much support for the proposition that [plaintiffs] were benefited by [defendant]'s [conduct] as for the proposition that they were harmed by it." 889 F.3d at 115. Given the conspiracy they allege, Plaintiffs must plead facts showing either that they bought EGBs at inflated prices or sold at suppressed prices to avoid dismissal. *See id.* They do not, and allege only that they traded in unspecified EGBs at unspecified times with Natixis and NIP, and, in fact, now reveal that an unspecified "asset manager" purportedly made the trades. Under *Harry*, this is insufficient.[3]

Plaintiffs' contention that *Harry* turned not on plaintiffs' failure to allege that they themselves traded at artificial prices but on the fact that they alleged no facts "connecting defendants' actions in one market (the regional hubs) to the injury plaintiffs allegedly suffered in another (the Henry Hub)" (Opp. at 3-4) is directly contrary to what *Harry* actually said: "[setting] aside whether [plaintiffs] were part of the same market as Defendants . . . [t]here is no actual injury the [p]laintiffs allege, let alone a connection between [d]efendants' unlawful conduct and that non-injury." 889 F.3d at 116.

Plaintiffs next contend that, "even if actual artificial prices were required to be shown," they do so here by alleging that "EGB auction yields were manipulated and bid-ask spreads were made artificially wide as a result of the alleged conspiracy." (Opp. at 4.) Not so. Under *Harry*, the TAC must plausibly demonstrate *more* than alleged artificial EGB prices (which the bid-ask spreads in any case fail to do, since they do not reflect actual transaction prices)—it must allege

---

[3] *E.g.*, *In re London Silver Fixing, Ltd., Antitr. Litig.*, 332 F. Supp. 3d 885, 925 (S.D.N.Y. 2018) (dismissing antitrust claims because plaintiffs "made no attempt to connect those identified instances of manipulation to artificial prices at the time of any of their trades"). Plaintiffs acknowledge the TAC contains no explicit allegation that Ohio Carpenters transacted with Natixis during the Class Period. (Opp. at 5 n.3). The TAC thus also does not plead that Plaintiffs are efficient enforcers as to Natixis. (Mot. at 8.)

that Plaintiffs' EGB transactions were tainted in a manner that injured, not benefited, them.

Finally, Plaintiffs contend that Defendants "overread" *Allianz* as applying only in the unique circumstances present in that case (Opp. at 5), purportedly demonstrated by earlier rulings by Judge Schofield.[4] Those rulings, however, are no more availing to Plaintiffs than *Allianz*. Both pre-date *Harry* and thus say nothing about the circumstances under which Judge Schofield would deem allegations adequate under *Harry*. Moreover, these decisions involve allegations of market dominance.[5] Plaintiffs here, by contrast, do not allege that Defendants controlled the alleged secondary market; indeed, Defendants were only a few of a very large number of market participants (*see* Mot. at 7), and did not participate in every EGB auction such that, according to Plaintiffs' theory of liability, they would not have been enabled to secure supracompetitive secondary pricing in every trade. Thus, unlike *Allianz*, this is not a case where the Court can infer harm to Plaintiffs from market dominance.[6]

**B. The TAC Does Not Plead that Plaintiffs Are Direct Purchasers**

The Opposition confirms that the TAC does not plead facts establishing that Plaintiffs are direct purchasers. Plaintiffs insist they adequately allege standing merely by alleging they are "direct purchasers" (Opp. at 7-8), but conclusory allegations are insufficient. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the Opposition reveals that Plaintiffs

---

[4] (*See* Opp. at 5-6 (citing *In re Foreign Exch. Benchmark Rates Antitr. Litig.*, 74 F. Supp. 3d 581, 595 (S.D.N.Y. 2015) ("*Forex I*"), and *In re Foreign Exch. Benchmark Rates Antitr. Litig*., 2016 WL 5108131, at *6 (S.D.N.Y. Sept. 20, 2016) ("*Forex II*").)

[5] (Mot. at 6-8.) In *Allianz,* defendants' market share exceeded 90% and the alleged manipulation was pervasive. Plaintiffs in *Forex I* (which *Forex II* followed) alleged that the colluding defendants dominated the global foreign exchange market, with nearly 85% of all trades. 74 F. Supp. 3d at 586-87.

[6] The Court's reliance on *Allianz* is not supported by *State of N.Y. v. Hendrickson Bros., Inc.*, which pre-dates Harry by 30 years and did not address what antitrust injury allegations would be sufficient to survive a motion to dismiss. 840 F.2d 1065, 1079 (2d Cir. 1988). *In re GSE Bonds Antitr. Litig.* is also inapposite, because defendants' antitrust injury arguments there "depend[ed] almost entirely on [defendants'] argument that plaintiffs failed to [] plead an antitrust conspiracy"—an argument the court had already rejected. 396 F. Supp. 3d 354, 366 (S.D.N.Y. 2019).

did *not* transact directly, but purportedly through an unspecified "asset manager." (Opp. at 8.) Plaintiffs who transact through third parties must allege facts sufficient to show that they fall under one of the exceptions to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).[7] The TAC fails to do so, and that deficiency cannot be cured in a brief.[8]

**C. Plaintiffs Cannot Establish Antitrust Standing as to NSI**

Plaintiffs concede that they fail to allege that NSI purchased EGBs in a primary market, conspired to fix prices of EGBs, or otherwise had any knowledge of any conspiratorial conduct. (Opp. at 9-10.) They allege only that NSI was a sales agent of NIP. (TAC ¶¶ 69-74.) But NSI, as a sales agent, is no more a conspirator than any third-party sales agent equally ignorant of an alleged conspiracy.[9] Plaintiffs also concede that they have not alleged they purchased EGBs from NSI and that the Court dismissed other Defendants which did not trade with Plaintiffs. (Opp. at 11.) All that Plaintiffs allege is that I.B.E.W. transacted (potentially via a third-party asset manager, as noted above) with NIP, not with NSI. (TAC ¶ 34.) As the Court properly held, allowing Plaintiffs to proceed against Defendants which did not trade with them, "even assuming that these defendants participated in the alleged conspiracy" might "risk speculative assessments of injury or complex apportionment of damages." Op. at 46-47. That same reasoning equally applies to NSI, and Plaintiffs fail to establish otherwise. Plaintiffs essentially admit that, under the Court's efficient enforcer reasoning, NSI should be dismissed. While Plaintiffs hint that they may have hoped for a different result on this issue, their failure to seek

---

[7] *See In re TDT-LCD (Flat Panel) Antitr. Litig.*, 2013 WL 1164897, at *3 (N.D. Cal. Mar. 20, 2013).
[8] *See Eureka V LLC v. Town of Ridgefield*, 535 Fed. App'x 41, 42 (2d Cir. 2013).
[9] *See Hinds Cty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009) (Marrero, J.) ("Plaintiffs must make allegations that plausibly suggest that *each Defendant* participated in the alleged conspiracy."); *U.S. v. Apple, Inc.*, 952 F. Supp. 2d 638, 697 (S.D.N.Y. 2013) (defendant must "knowingly and intentionally" participate in conspiracy and make a "conscious commitment to join the scheme"), *aff'd*, 791 F.3d 290 (2d Cir. 2015).

reconsideration on that ground precludes considering their arguments seeking a contrary result.[10]

## III. THE TAC FAILS TO PLEAD JURISDICTION OVER NATIXIS AND NIP

### A. In-Forum Marketing/Trading Is Insufficient Under Controlling Precedent

In upholding jurisdiction over Natixis and NIP based on alleged in-forum marketing and trading activities, the Court overlooked that only those contacts that could have subjected Defendants to liability are "suit-related" contacts sufficient to establish personal jurisdiction under *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018), and *Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016). Because the misconduct alleged here indisputably occurred abroad, Plaintiffs' claims against Natixis and NIP must be dismissed.

In *Waldman*, a case Plaintiffs ignore, the Second Circuit confirmed that a court must identify suit-related conduct by analyzing defendant-specific *elements* of each cause of action. 835 F.3d at 331. Only conduct in, or expressly aimed at, the forum that "*could have subjected [the defendant] to liability*" can support specific personal jurisdiction. *Id.* at 335.[11] Here, Defendants' alleged marketing and trading activity—the only in-forum conduct alleged here—is not misconduct that can give rise to liability under the Sherman Act. (Mot. at 13-16.) Thus, allegations that Defendants charged fixed prices to U.S.-based persons are insufficient.

As confirmed by numerous rulings in this District (which Plaintiffs ignore (Mot. at 15)), Plaintiffs misconstrue *Schwab* in contending that in-forum transactions are sufficient. In *Schwab*, plaintiffs argued that their in-forum transactions with direct-seller defendants, who allegedly conspired abroad to suppress LIBOR, gave rise to personal jurisdiction. 883 F.3d at 82. *Schwab* held that while these transactions provided a basis for certain claims, they did *not*

[10] *See Royal Park Investments SA/NV v. HSBC Bank USA, N.A.*, 2017 WL 6403862, at *2 (S.D.N.Y. Dec. 14, 2017) (because "HSBC failed to seek reconsideration of or object to the Order . . . it has waived the opportunity").

[11] *See also id.* at 337 (requiring that "defendants participated in" alleged misconduct in the forum "or that their liability . . . resulted from their actions that did occur" there).

"constitute 'suit-related conduct [that] create[ed] a substantial connection with [the forum state]'" for claims stemming from those transactions and "premised solely on Defendants' false LIBOR submissions in London." *Id*. at 83-84. "'Courts typically require that the plaintiff show some sort of causal relationship between a defendant's U.S. contacts and the episode in suit,' and the plaintiffs' claim must in some way 'arise from the defendants' purposeful contacts with the forum.'" *Id*. at 84. Since the in-forum transactions "did not cause Defendants' false LIBOR submissions . . . in London" or "give rise to claims seeking to hold Defendants liable for those submissions," they were not suit-related conduct. *Id*.

Plaintiffs' claims here are *exactly* like the false LIBOR submissions claims in *Schwab*. Here, as there, the alleged conduct giving rise to the "episode-in-suit"—manipulation of EGB prices—indisputably occurred overseas. (Mot. at 13-14.) That Plaintiffs allege a "for-profit" conspiracy—just like plaintiffs in *Schwab*—makes no difference. *See* 883 F.3d at 87 ("Schwab argues . . . Defendants conspired . . . also 'to earn profits' from that manipulation."); *see also Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 205 (S.D.N.Y. 2018) (conspiracy in *Schwab* "was indeed motivated in part by financial incentives").[12]

---

[12] Neither *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521 (S.D.N.Y. 2017) ("*CHF LIBOR I*"), nor *FrontPoint Asian Event Driven Fund, L.P. v. Citibank N.A.*, 2018 WL 4830087 (S.D.N.Y. Oct. 4, 2018) ("*SIBOR II*"), support Plaintiffs' arguments. *CHF LIBOR I* pre-dates *Schwab* and Judge Stein did not have an opportunity to address whether this pre-*Schwab* ruling remained good law because he dismissed the case for lack of subject matter jurisdiction. *See Sonterra Capital Master Fund Ltd.* v. *Credit Suisse Grp. AG*, 409 F. Supp. 3d 261, 266 n.4 (S.D.N.Y. 2019). Although *SIBOR II*—misapplying *Schwab*—upheld personal jurisdiction over certain defendants based on alleged trades in the U.S. between named plaintiffs and defendants, it rejected the expansive theory of personal jurisdiction espoused by Plaintiffs here. 2018 WL 4830087, at *7 ("Merely trading SIBOR- and SOR-based derivatives in the United States . . . could not be a basis for jurisdiction."). In any event, the TAC contains no allegations regarding the location of Plaintiffs' alleged trades with Natixis and NIP and Judge Hellerstein later determined that he lacked subject matter jurisdiction and dismissed the action. *Fund Liquidation Holdings LLC v. Citibank, N.A.*, 399 F. Supp. 3d 94, 104 (S.D.N.Y. 2019). *CHF LIBOR I* and *SIBOR II*, therefore, are no longer operative. *See, e.g.*, *Professional Traders Fund, LLC v. Prairie Oil & Gas, Inc.*, 521 F. Supp. 2d 313, 315 (S.D.N.Y. 2007) (vacating prior decision on motion for reconsideration for lack of subject matter jurisdiction).

Instead of addressing Moving Defendants' authorities that reject Plaintiffs' misinterpretation of *Schwab*, *see* Mot. at 15 (citing cases), Plaintiffs direct the Court to a transcript of an oral argument before the Second Circuit in cases

Nor is it significant that Plaintiffs assert antitrust claims alleging restraint of trade in the U.S. (Opp. at 14-15.)[13] Binding precedent holds that only the location of the defendant-focused elements of a claim are relevant, not where a plaintiff was injured. *Waldman*, 835 F.3d at 336-37. Here, the relevant "location" is where Natixis and NIP allegedly violated the law by manipulating EGB prices (which Plaintiffs concede occurred outside the U.S.), not where Plaintiffs were allegedly harmed. As to Natixis and NIP, Plaintiffs do not allege the transactions happened in the U.S., and thus do not allege they were harmed here. Any finding that a profit motive is sufficient to confer personal jurisdiction would make the U.S. courts the courts of international claim regardless of where the conduct at issue took place, contravening decades of precedent that "ma[k]e[s] clear that mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). It is no surprise that Judges Ramos, Daniels, Kaplan and Buchwald—in decisions Plaintiffs cannot and do not distinguish—declined to uphold jurisdiction over antitrust claims following *Schwab*. (*See* Mot. at 14-15 (citing cases).)

**B. There Is No Statutory Basis To Exercise Personal Jurisdiction over NIP**

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) holds: "In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." Because the Clayton Act's venue provision provides for nationwide service of process, the Clayton Act provides the applicable statutory basis for exercising personal jurisdiction here. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005);

---

concerning alleged manipulation of LIBOR. *See* Opp. at 15 n.11. The questions posed or statements made by the panel to counsel at that oral argument, however, are not precedent, much less controlling. *See Suffolk Parents of Handicapped Adults v. Pataki*, 1996 WL 285423, at *1 (E.D.N.Y. May 17, 1996).

[13] *U.S. v. Trenton Potteries Co.*, 273 U.S. 392 (1927), lends no support as it does not address personal jurisdiction, let alone what conduct constitutes suit-related conduct under the jurisdictional inquiry.

*Dennis*, 343 F. Supp. 3d at 198. Plaintiffs do not argue that *Daniel* and *Dennis* are incorrect.[14] Instead, they point to *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 167 (2d Cir. 2005), an inapposite case in which the court did not consider Section 12 of the Clayton Act. This is because Defendants in that case were individuals—states' attorneys general—whereas Section 12 applies to a "proceeding . . . against a corporation." 15 U.S.C. § 22.

As the Clayton Act applies, Plaintiffs bear the burden of establishing that NIP "transacts business" in the forum, which refers to "[t]he practical, everyday business or commercial concept of doing business or carrying on business of any substantial character." *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948). Plaintiffs must provide "factual corroboration" for such allegations. *See In re SSA Bonds Antitr. Litig.*, 420 F. Supp. 3d 219, 230-31 (S.D.N.Y. 2019) (failure to provide factual corroboration was the "type of 'legal conclusion couched as factual allegation' that courts need not accept as true"); *Dennis*, 343 F. Supp. 3d at 200. Plaintiffs' contrary assertion based on *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)) (Opp. at 17), is misplaced, as the plaintiff there provided a declaration to support jurisdiction, supplying factual corroboration. *See id.* at 166. Plaintiffs point to no factual corroboration in the TAC, and remain silent as to whether the alleged trade between I.B.E.W. and NIP occurred in the U.S., much less this venue. (Mot. at 19; Opp. at 8.)

Nor can Plaintiffs establish a statutory basis for personal jurisdiction over NIP by arguing NSI was NIP's in-forum agent. Plaintiffs dispute the applicability of *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998), asserting the New York long-arm statute applies instead, and

[14] Plaintiffs incorrectly argue that *Daniel* held "the Clayton Act provides an alternative statutory basis for personal jurisdiction." (Opp. at 17 n.12.) *Daniel* provides that Section 12 of the Clayton Act may provide an alternative to 28 U.S.C. § 1391 as a basis for *venue*, but nothing in the opinion provides a basis for the proposition that Plaintiffs can pick between the Clayton Act or state long-arm statute as a statutory basis for personal jurisdiction. *Daniel*, 428 F.3d at 427.

requires—per *Schwab*[15]—that the agent act "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." But the TAC does not even satisfy Plaintiffs' own rule; it asserts that NIP and NSI are affiliates (TAC ¶ 71) and conclusorily alleges that NIP acted "on its own behalf and through [NSI]" in the U.S. (TAC ¶ 68). *Schwab* and *Jazini* both hold that conclusory allegations of agency are insufficient for personal jurisdiction.[16]

## IV. PLAINTIFFS' SHERMAN ACT CLAIMS ARE TIME-BARRED

Plaintiffs cannot plead fraudulent concealment because they admit they failed to pursue claims under its diligence prong. Under *Singh v. Cigna Corp.*, 918 F.3d 57 (2d Cir. 2019), Plaintiffs cannot excuse this failure based on generic statements in Defendants' Codes of Ethics, which the TAC does not even allege Plaintiffs relied on.[17] Plaintiffs' effort to distinguish *Singh* on the basis that it is a securities fraud case (Opp. at 19) is unavailing; the *same* reasonable investor standard applies in both the securities fraud and fraudulent concealment contexts. (Mot. at 20-21.)[18] The Opposition's reiteration of statements in the Defendants' Codes of Ethics is the same type of generic "declarations about the importance of acting lawfully and with integrity" *Singh* held are "too general to cause a reasonable investor to rely upon them." 918 F.3d at 63.[19]

---

[15] *Schwab* describes the statute as merely "instructive," rather than as a controlling standard. 883 F.3d at 85.

[16] *See Schwab*, 883 F.3d at 85-86 ("bare allegations" that Defendants "controlled or otherwise directed or materially participated in the operations of th[e] broker-dealers, [and] reaped proceeds or other financial benefits from the broker-dealers' sales of LIBOR-based financial instruments" "are too conclusory to make a prima facie showing of personal jurisdiction"); *Jazini*, 148 F.3d at 185 ("[A]llegations that Nissan U.S.A. is a 'mere department' of Nissan Japan lack the factual specificity necessary to confer jurisdiction.").

[17] *Cf.* Op. at 36; *Hinds Cty. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 400 (S.D.N.Y. 2010) (Marrero, J.).

[18] *Accord Penn. Pub. Sch. Emps.' Retirement Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 367-68 (S.D.N.Y. 2012); *In re Zyprexa Prods. Liability Litig.*, 549 F. Supp. 2d 496, 541 (E.D.N.Y. 2008).

[19] Plaintiffs' further contention that "Defendants failed to advance this new code of ethics argument" earlier omits that the TAC does not allege Plaintiffs relied on the codes of ethics to excuse due diligence, and Plaintiffs raised the codes of ethics in their pre-motion response letter for the first time to seek to excuse their failure to exercise due diligence (Dkt. No. 114 at 3 (citing TAC ¶ 260)); Defendants did not have an opportunity to respond given the rules governing pre-motion letters and, in any case, as noted in Section I, the pre-motion letter process does not preclude elaboration here.

## V. THE TAC FAILS PLAUSIBLY TO ALLEGE A CONSPIRACY

Plaintiffs fail to refute that Figure 12 of the TAC does not adequately allege that Natixis, NIP or NSI participated in any conspiracy. *First*, they offer no response to case law establishing that analyses like Figure 12—based on opaque data and accompanied by no allegations providing any indicia of the data's reliability—are insufficient. (Mot. at 21-24.) *Second*, Plaintiffs' contention that Figure 12 sufficiently alleges parallel conduct because "parallel pricing need not be identical to support the inference of conspiracy" (Opp. at 24) ignores that Figure 12 offers *no allegations* regarding prices *whatsoever*, parallel or otherwise.[20] *Third*, Plaintiffs are wrong that Defendants impermissibly ask this Court to draw adverse inferences by pointing out that Figure 12 has "obvious alternative explanations." (Opp. at 24.) This Court can and must make this determination on a motion to dismiss,[21] contrary to the stated assumption of the Decision, Op. at 55, and market information cited in the TAC itself shows that EGB bond price trends observed in Figure 12 have obvious, non-collusive explanations.[22] *Fourth*, while the Court noted that Figure 12 relates only to Italian EGBs and that Natixis and NSI were not primary dealers in such bonds, Plaintiffs' response ignores (and the Court overlooked) that the secondary market conspiracy Plaintiffs allege—predicated on resale of EGBs acquired by Defendants in the primary market (TAC ¶ 150)—does not plausibly allege either Natixis or NSI would have any motive, incentive or ability to collude in the secondary market for Italian EGBs.

---

[20] The complaint in *In re Blood Reagents Antitr. Litigation*, on which Plaintiffs rely, offered specific details (absent here) about defendants' parallel price increases or price demands demonstrating that some of these indeed were nearly identical. 756 F. Supp. 2d 623, 626-27 (E.D. Pa. 2010).

[21] *Trump*, 2020 WL 4861980, at *16 ("Rule 12(b)(6) require[s] this Court to consider [obvious alternative] possibilities when determining the plausibility of a complaint's allegations.").

[22] *See* Roel Beetsma *et al.*, *Price Effects of Sovereign Debt Auctions in the Euro-Zone: The Role of the Crisis*, Working Paper Series (No. 1595) (Sept. 2013) (finding primary and secondary market trends in Italian EGB yields after 2007 best explained by primary dealers' requiring compensation for inventory risk, which needs to be higher when market uncertainty is larger) (cited at TAC ¶ 207 n.22).

Dated: August 27, 2020

/s/ Fiona A. Schaeffer
Fiona A. Schaeffer
James G. Cavoli
MILBANK LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5172
Facsimile: (212) 822-5172
fschaeffer@milbank.com
jcavoli@milbank.com

Mark D. Villaverde
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067-3019
Telephone: (424) 386-4343
Facsimile: (213) 892-4743
mvillaverde@milbank.com

*Attorneys for Natixis S.A.*

/s/ John D. Buretta
John D. Buretta
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
jburetta@cravath.com

*Attorneys for Nomura International plc*

/s/ Aidan Synnott
Aidan Synnott
Rachel J. Corrigan
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
asynnott@paulweiss.com
rcorrigan@paulweiss.com

*Attorneys for Nomura Securities International, Inc.*