Via ECF

June 4, 2021

The Hon. Victor Marrero
U.S. District Court, Southern District of N.Y.
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

RE:     *In re European Gov't Bonds Antitrust Litig.*, No. 19-cv-2601-VM (S.D.N.Y.)

Dear Judge Marrero:

Pursuant to the Amendment to the Sixth Case Management Order, entered on May 27, 2021
(Dkt. No. 205), Moving Defendants[1] respectfully submit this letter to (i) respond to Plaintiffs'
pre-motion letter regarding judicial notice, filed on May 26, 2021 (Dkt. No. 203), and (ii) request
a pre-motion conference with respect to Moving Defendants' proposed motions to dismiss the
FAC, in accordance with Rule II.B.2 of the Court's Individual Rules of Practice.

**PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE**

Moving Defendants do not oppose Plaintiffs' request that in deciding the motion to dismiss, the
Court take judicial notice of the May 20, 2021 European Commission ("EC") press release (the
"EC Press Release") for the limited purpose of "determin[ing] what statements [it] contained—
but . . . not for the truth of the matters asserted." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.
2007); *see also N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d
109, 127 n.11 (2d Cir. 2013) ("[C]ourts considering a motion to dismiss may take judicial notice
of the *fact* that press coverage . . . contained certain information so long as they do not rely on
the 'truth' of that information.").[2]  Notwithstanding the limited purpose for which the EC Press
Release may be considered, any consideration that the Court gives it would only support
dismissal of Plaintiffs' claims, as set forth below.

---

[1] "Moving Defendants" are all defendants named in the Fourth Amended Complaint (Dkt. No. 146) ("FAC") except
State Street Bank and Trust Company and State Street Corporation.  "TAC Defendants" are all defendants named in
both the Third Amended Complaint (Dkt. No. 87) ("TAC") and the FAC.  "New Defendants" are Citigroup Global
Markets Limited ("CGML"), Citigroup Global Markets Inc., Jefferies International Limited ("JIL"), Jefferies LLC,
JPMorgan Chase Bank, N.A., J.P. Morgan Securities plc ("JPMS plc"), J.P. Morgan Securities LLC, RBC Europe
Limited ("RBCE"), Royal Bank of Canada ("RBC"), and RBC Capital Markets, LLC.  "Foreign Defendants" refers
to CGML, JIL, JPMS plc, Merrill Lynch International ("MLI"), Natixis S.A., NatWest Markets Plc ("NWM"),
Nomura International plc ("NIP"), RBCE, RBC, UBS AG, UBS Europe SE and UniCredit Bank AG ("UCB").  This
letter adopts all terms as defined in Defendants' pre-motion letters dated April 16, 2021, which are attached as
Appendices A, B, and C.  Plaintiffs' letters in response are attached as Appendices D, E, and F.

[2] Unless otherwise indicated, all internal quotation marks and citations are omitted.

**SHEARMAN.COM**

Shearman & Sterling LLP is a limited liability partnership organized in the United States under the laws of the state of Delaware, which laws limit the personal liability of partners.

AMERICAS/2019489062.15

**DEFENDANTS' MOTIONS TO DISMISS**

As explained in Moving Defendants' pre-motion letters of April 16, 2021 and summarized below, Defendants respectfully submit that the Court should dismiss the action or, in the alternative, allow full briefing and argument on Defendants' motions given the number of Defendants and the numerous grounds upon which relief is sought.

**TAC Defendants Should Be Dismissed.**  The FAC alleges a sprawling, six-year conspiracy to manipulate auction bids and bid-ask spreads of all EGBs.  The linchpin of this Court's holding that the TAC plausibly alleged an antitrust conspiracy was the analyses in TAC Figures 11 and 12.  As set forth in TAC Defendants' pre-motion letter (App'x A), however, the FAC's new allegations undermine these same analyses.  Plaintiffs' response (App'x D) largely ignores these flaws, and the EC Press Release confirms the implausibility of Plaintiffs' claims.

*Figure 11.*  The Court's July 23, 2020 decision relied on TAC Figure 11's showing that Defendants' average bid-ask spreads only became wider than non-defendants' average spreads *after* the start of the Class Period in 2007.  Op. at 52–53.  But the revised FAC Figure 11 shows that Defendants' average spreads were already wider than non-defendants' spreads *before* the start of the alleged Class Period.  App'x A at 1.  Plaintiffs' response ignores this gap in their theory.[3]  In addition, the EC Press Release undermines any inference that can be drawn from Figure 11's comparison of the alleged Class Period (2007-2012) with the post-Class Period (beginning in 2013), as it states that the alleged conduct continued only until *2011*, not 2012.

*Figure 12.*  Plaintiffs ignore the inconsistencies between TAC Figure 12, which the Court previously found "reflects parallel conduct" (Op. at 60), and the revised FAC Figure 12, which shows a more varied pattern of behavior.  TAC Figure 12 showed that average spreads for non-defendants hardly changed from 2012 (the last year of the Class Period) to 2013 (the first year after the Class Period), while spreads for some Defendants decreased.  But the revised Figure 12 in the FAC shows that non-defendants' spreads on average *increased* during this time, spreads of one defendant (JPMS plc) were virtually the same, and spreads of some other Defendants decreased by widely varying degrees.  *Id.* at 2.  Figure 12 thus does not "reflect[] parallel conduct."[4]  Moreover, the Court credited TAC Figure 12 because it compared conduct in 2012 with 2013, "coincid[ing] with the end of the conspiracy alleged by the [EC] in its Statement of Objections."  Op. at 61.  But the EC Press Release renders Figure 12's comparisons meaningless because the time periods Figure 12 compares (2012 and 2013) are both after *2011*— the last year in which the EC Press Release states any Defendant participated in "the cartel."  Plaintiffs therefore fail to "tie[] each defendant" to the alleged conspiracy (Op. at 60), as Figure 12 was the Court's sole basis to "infer a conspiracy involving specific defendants."  Op. at 61.[5]

---

[3] Plaintiffs attempt to deflect from this obvious failing by citing the irrelevant fact that Defendants' average spreads in the FAC during the Class Period were slightly higher than in the TAC (App'x D at 1), while ignoring the more relevant fact that the TAC's alleged change in spreads at the start of the Class Period has disappeared in the FAC.

[4] Plaintiffs attempt to evade this problem with a strawman, observing that "[p]rice fixing agreements do not require Defendants to agree to uniform prices."  App'x D at 2.  But Plaintiffs must allege parallel conduct that ties each defendant to the conspiracy (Op. at 60), and Figure 12 shows the exact opposite of parallel conduct.

[5] Specifically, the basis for the Court's prior finding that a conspiracy was plausibly pled as to Natixis, NIP and NSI rested on Figure 12.  Op. at 63-66.  Thus, all Defendants, including these three, should now be dismissed.  Plaintiffs

*EC Press Release.*  Plaintiffs point to the EC Press Release announcing fines against some Defendants for conduct involving EGBs.  But the Press Release actually undermines Plaintiffs' allegations.  According to the EC Press Release, the EC alleged that certain banks had "colluded in [the EGB] market at the expense of EU Member States."  In other words, the EC Press Release suggests that certain banks conspired to *depress* EGB auction prices.  But Plaintiffs here allege Defendants agreed to "collusively bid *above* the market price for the bonds issued at auction" and "artificially inflated the auction-clearing prices."  FAC ¶¶ 7, 228 (emphasis added).  Moreover, the EC Press Release omits most Defendants entirely and states that any alleged conduct by certain other Defendants was limited to much shorter periods than Plaintiffs allege, including MLI (2007-2008), Natixis (2008-2009), NIP (10 months in 2011), and UCB (3 months in 2011), further undermining Plaintiffs' allegation of a single conspiracy among 10 dealers spanning the entirety of 2007 to 2012.  Plaintiffs frame the EC investigation as the cornerstone of the FAC, but their claim should be dismissed now that it has been revealed that it differs from the EC's findings in critical respects, including theory of liability, time frame, and participants.

*Chats.*  Nor does the FAC plead "direct evidence" by quoting chat excerpts involving a subset of TAC Defendants.  Unlike in *In re GSE Bonds Antitrust Litigation*, none of the excerpted "chats unmistakably show traders . . . agreeing to fix prices."  396 F. Supp. 3d 354, 361 (S.D.N.Y. 2019).  And though Plaintiffs do not purport to bring an "information exchange" claim, which would be "analytically distinct" from Plaintiffs' price-fixing claim, *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001), they principally rely on chats that they claim show information sharing, not price-fixing.[6]  In fact, two chat excerpts that Plaintiffs characterize as showing "agree[ment]" or "coordination" (App'x D at 2 n.4 (citing FAC ¶¶ 241, 255)) do not show bid or price manipulation.  Even if the Court were to credit Plaintiffs' self-serving characterizations of the chats—which it need not—the chat allegations concededly involve only a small subset of the alleged Class Period and bond types, while some Defendants do not appear in them at all.  *See In re Commodity Exch., Inc. Gold & Futures Trading Litig.*, 328 F. Supp. 3d 217, 228, 230–31 (S.D.N.Y. 2018) (dismissing claims where chats at most indicated "episodic coordinat[ion]" between isolated individuals and did not "meaningfully add to the mix of circumstantial evidence" regarding plaintiffs' hypothesized "ambitious multi-year conspiracy with four other financial institutions").

**New Defendants Should Be Dismissed.**  Plaintiffs' response letter to the New Defendants (App'x E) and request for judicial notice confirm that all New Defendants should be dismissed. The EC's investigation is the "starting point for Plaintiffs' claims," Op. at 51, and it is undisputed that neither the investigation nor the EC Press Release implicates any New Defendant.  Although Plaintiffs try to downplay the New Defendants' conspicuous absence from the EC's investigation, their letter to the TAC Defendants belies those efforts by contending that the investigation shows that their "conspiracy allegations are plausible" as to the TAC Defendants.  App'x D at 1.  Plaintiffs' request for judicial notice further undermines the

---

also ignore the absence of individualized allegations against any entity that did not appear in Figure 12 or the chats, providing an additional ground for dismissing such Defendants.  *See* App'x A at 2–3.

[6] *U.S. v. Container Corp. of Am.*, 393 U.S. 333 (1969), is inapposite because, unlike here, there existed a reciprocal agreement among the competitors to exchange information, and defendants controlled 90% of the market for a single, fungible good.

plausibility of their allegations against the New Defendants because the EC Press Release reveals an alleged "cartel" that notably *did not* include any New Defendants.  *See* Dkt. No. 203, at 1–2.

Unable to use the EC's investigation to connect the New Defendants to an alleged conspiracy, Plaintiffs cite Figure 12 as purported "circumstantial evidence" of a conspiracy.  App'x E at 2.  But Figure 12 alleges nothing about seven of the New Defendants or any RBC defendant, and *exonerates* JPMS plc by showing that its bid-ask spreads were nearly identical before and after the alleged conspiracy.  *Id*. at 3.  Moreover, Figure 12 is irrelevant as to *all* of the New Defendants because it reflects the alleged reduction of bid-ask spreads from 2012 to 2013, and as noted above, the EC Press Release states that any alleged conduct (not including New Defendants) at best ended in *2011*.

Plaintiffs fare no better with their strained assertion that a handful of mundane chats should be considered "direct evidence" of the New Defendants' participation in a massive, six-year conspiracy to rig auctions and bid-ask spreads for EGBs.  App'x E at 1.  The chats reflect *no* discussion of bid-ask spreads, *no* coordination of auction bids, and *no* indication of any alleged agreement to fix EGB bids or prices.  Furthermore, they are confined to just a three-month period out of an alleged six-year conspiracy.  At most, the chats show isolated discussions among a handful of traders about market color and potential opportunities to trade with each other.  Plaintiffs argue that the Court cannot "pick and choose" among competing inferences from the chats (*id.*), but ignore that the chats raise no plausible inference of a conspiracy to rig auctions or fix bid-ask spreads in the first place.  The FAC thus lacks any allegations of "direct evidence" or parallel conduct indicating that any New Defendant (or any other Defendant) agreed to rig auction bids or fix prices for EGBs.  The New Defendants therefore should be dismissed.  *See Mayor of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 136–39 (2d Cir. 2013); *In re Treasury Sec. Auction Antitrust Litig.*, 2021 WL 1226670, at *13 (S.D.N.Y. Mar. 31, 2021); *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 389–91 (S.D.N.Y. 2019).

**Plaintiffs' Claims Against All Defendants Are Untimely**.  Plaintiffs concede that their claims fall outside the statute of limitations and that they must establish fraudulent concealment as a basis for tolling.  Their letters confirm, however, that they failed to conduct a diligent inquiry, foreclosing fraudulent concealment under recent precedent from this district.  Plaintiffs rely on general statements regarding legal compliance to try to justify their lack of diligence, but the cited statements are materially identical to the type of statements courts reject as insufficient.[7] *Compare In re Merrill, BofA, & Morgan Stanley Spoofing Litig.*, 2021 WL 827190, at *9 (S.D.N.Y. Mar. 4, 2021) (rejecting reliance on statements of "compliance with all applicable laws and regulations"), *with* FAC ¶ 380 (relying on statements of "compliance with applicable laws, rules and regulations"); *see also* App'x B at 3.  Moreover, Plaintiffs' claims that Defendants "publicly disavowed that they engaged in illegal conduct with respect to their EGB trading" (App'x E at 3) are wholly divorced from the FAC, which alleges no statements by any Defendant about its EGB trading.

**Plaintiffs Lack Antitrust Standing.**  Plaintiffs lack standing for the reasons set forth in TAC Defendants' pre-motion letter, including because Plaintiffs do not dispute that they never

---

[7] The FAC cites no such statement at all as to JPMorgan, and although Plaintiffs cite a 2020 statement by JPMorgan in their New Defendant letter (App'x E), that statement is dated *eight years* after the end of the alleged misconduct.

transacted with several Defendants (UCM and NSI).[8]  Moreover, the EC Press Release indicates that several Defendants were not part of the alleged "cartel" at all or only participated for a limited period.  Given the FAC's failure to allege when any Plaintiff traded with any Defendant, Plaintiffs cannot allege that they traded with any Defendant—much less each Defendant—at a time when that Defendant was participating in the conspiracy alleged in the FAC.  *See* Op. at 42–43 (recognizing that "Plaintiffs must plead facts regarding specific transactions to allege antitrust standing" when facts suggest they may have transacted with a non-conspirator).

**Personal Jurisdiction.**  Foreign Defendants should be dismissed for lack of personal jurisdiction based on the Supreme Court's recent decision in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).[9]  *First*, Plaintiffs do not meet the constitutional due process requirement that the allegations demonstrate a "strong relationship among the defendant, the forum, and the litigation."  *Ford*, 141 S. Ct. at 1028.  Plaintiffs do not dispute that Foreign Defendants are all located abroad or that the alleged collusion occurred entirely abroad.  Rather, they argue that this Court should exercise jurisdiction anyway because the Foreign Defendants "served the U.S. market for EGBs."  App'x F at 2.  But the FAC pleads no facts about the location of the alleged EGB trades with Plaintiffs and, in fact, Plaintiffs' letter suggests that those purchases may not even have occurred in the U.S.  *See id.* at 2 n.5 (asserting location of their trades via third-party asset managers is irrelevant and declining to identify location of the trades).  Moreover, unlike in *Ford*, where a "strong relationship" with the forum was demonstrated by Ford's maintenance of over 100 in-forum dealerships and marketing "[b]y every means imaginable," *Ford*, 141 S. Ct. at 1028, the FAC pleads no strong relationship between Plaintiffs' claims, this forum, and Foreign Defendants, instead providing generic allegations of U.S. marketing and sales of unidentified EGBs.  App'x C at 2.  *Second*, Plaintiffs lack a statutory basis for personal jurisdiction.  *Id.* at 3.  Their letter does not address what conduct by Foreign Defendants meets the standards of the Clayton Act or CPLR, nor does it address analogous dismissals in this District.  *See Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 200 (S.D.N.Y. 2018).  Instead, Plaintiffs impermissibly try to conflate Foreign Defendants with their domestic affiliates.  *See id.* at 199.[10]

---

[8] Plaintiffs argue that Ohio Carpenters' and IBEW Local 103's trades via unnamed asset managers are actually "direct" trades because the asset managers were their agents, but allegations demonstrating any such agency relationships are absent from the FAC.  App'x A at 3.

[9] As noted in Foreign Defendants' letter, Foreign Defendants are prepared to submit declarations refuting the jurisdictional allegations in the FAC.  App'x C at 1.

[10] The Court should again dismiss NWM.  Like the TAC, the FAC's generic allegations that "the New York metro area" (¶ 31) was a "hub" for NWM operations still do not demonstrate that Plaintiffs' claims arise from NWM's transactions in New York, as required by CPLR 302(b), nor do any other new allegations.  *Compare* FAC ¶ 31 *with* TAC ¶ 30; *see* Op. 26.  Further, NatWest is prepared to submit a declaration refuting Plaintiffs' allegations (FAC ¶¶ 30-31) that this alleged "hub" and NWM's "headquarters" were ever in New York.  Plaintiffs' pivot to the Clayton Act as a purported basis for jurisdiction over NWM after (1) they previously relied exclusively on the CPLR and Rule 4 (Dkt. No. 114 at 3 n.6) and (2) the Court considered and appropriately rejected these bases (Op. 26-27) is of no help to Plaintiffs.  The FAC's allegations on which they purport to base this new argument were largely in the TAC, and any new allegations are cumulative.  *Compare* FAC ¶¶ 51-52, 56 *with* TAC ¶¶ 61-62, 66.  The new allegations in the FAC do not give rise to the "extraordinary circumstances" that would be necessary to revive Plaintiffs' already-dismissed claims against NWM.  *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y. 2015).  In any event, the FAC does not sufficiently allege that NWM "transacts business" in this District.  *See, e.g.*, *Dennis*, 343 F. Supp. at 199–200 (dismissing NWM, then known as The Royal Bank of Scotland plc).  In addition, for reasons applicable to all Foreign Defendants, due process cannot support jurisdiction over NWM.

Respectfully Submitted,


 /s/ Adam S. Hakki
Adam S. Hakki
Richard F. Schwed
Grace Lee
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone:  (212) 848-4000
Facsimile:  (646) 848-4000
ahakki@shearman.com
rschwed@shearman.com
grace.lee@shearman.com

*Attorneys for Defendants Bank of America, N.A.; Bank of America Merrill Lynch
International Designated Activity Company; and Merrill Lynch International*


 /s/ Fiona Schaeffer (on consent)[11]
Fiona Schaeffer
James Cavoli
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 530-5651
Facsimile:  (212) 822-5651
fschaeffer@milbank.com
jcavoli@milbank.com

Mark D. Villaverde
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067-3019
Telephone:  (424) 386-4000
Facsimile:  (213) 892-4743
mvillaverde@milbank.com

*Attorneys for Defendant Natixis S.A.*

---

[11] Defendants use electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.

  /s/ Paul S. Mishkin (on consent)
Paul S. Mishkin
John M. Briggs
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
paul.mishkin@davispolk.com
john.briggs@davispolk.com

*Attorneys for Defendants NatWest Markets Plc and NatWest Markets Securities Inc.*

  /s/ Aidan Synnott (on consent)
Aidan Synnott
PAUL, WEISS, RIFKIND, WHARTON & GARRSION LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
asynnott@paulweiss.com

*Attorneys for Defendant Nomura Securities International Inc.*

  /s/ John Buretta (on consent)
John Buretta
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
jburetta@cravath.com

*Attorneys for Defendant Nomura International PLC*

 /s/ Kristen Limarzi (on consent)
Kristen Limarzi (*pro hac vice*)
Amy Feagles (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone:  (202) 955-8678
Facsimile:  (202) 530-9527
klimarzi@gibsondunn.com
afeagles@gibsondunn.com

Philip Shapiro
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212-351-5323
Facsimile:  212-716-0824
pshapiro@gibsondunn.com

*Attorneys for Defendants UBS AG, UBS Europe SE, and UBS Securities LLC*


 /s/ Boris Bershteyn (on consent)
Boris Bershteyn
Susan Saltzstein
Sam Auld
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES
One Manhattan West
New York, NY 10001
Telephone:  (212) 735-3000
Facsimile:  (212) 735-3000/1
boris.bershteyn@skadden.com
susan.saltzstein@skadden.com
sam.auld@skadden.com

*Attorneys for Defendants UniCredit Capital Markets LLC and UniCredit Bank AG*

  /s/ Roger A. Cooper (on consent)
Lev L. Dassin
Roger A. Cooper
Andrew Weaver
Shannon A. Daugherty
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999
ldassin@cgsh.com
racooper@cgsh.com
aweaver@cgsh.com
sdaugherty@cgsh.com

*Attorneys for Defendants Citigroup Global Markets Inc. and Citigroup Global Markets Limited*



  /s/ Kenneth Schacter (on consent)
Kenneth I. Schacter
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001
kenneth.schacter@morganlewis.com

Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2541
Telephone:  (202) 739-3000
Facsimile:  (202) 739-3001
jon.roellke@morganlewis.com

*Attorneys for Defendants Jefferies International Limited and Jefferies LLC*

  /s/ Robert D. Wick (on consent)
Robert D. Wick
Henry Liu
Jeffrey Cao
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington D.C. 20001
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291
rwick@cov.com
hliu@cov.com
jcao@cov.com

Kyle W. Chow
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone:  (212) 841-1000
kchow@cov.com

*Attorneys for Defendants JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc*


  /s/ Barry G. Sher (on consent)
Barry G. Sher
Kevin Broughel
PAUL HASTINGS, LLP
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
barrysher@paulhastings.com
kevinbroughel@paulhastings.com

*Attorneys for Defendants RBC Capital Markets, LLC, RBC Europe Limited, and Royal Bank of Canada*


Attachments

cc:     All Counsel of Record (Via ECF)


Page 10 of 10