**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ) | |
| ) | |
| **IN RE EUROPEAN GOVERNMENT BONDS** ) | Lead Case No. 1:19-cv-2601 |
| **ANTITRUST LITIGATION** ) | |
| ) | Hon. Victor Marrero |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF STIPULATION**
**AND AGREEMENT OF SETTLEMENT WITH STATE STREET CORP.**
**& STATE STREET BANK AND TRUST COMPANY**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

PROCEDURAL BACKGROUND............................................................................. 2

ARGUMENT ........................................................................................................... 5

I.   THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED
SETTLEMENT................................................................................................ 5

    A.   The Settlement Is Procedurally Fair Because It Was Achieved Through
Extensive Arm's-Length Negotiation with the Assistance of a Respected
and Experienced Mediator (Rule 23(e)(2)(B)) ...................................................6

    B.   The Settlement Is Substantively Fair .................................................................7

        1.   The Complexity, Expense, and Likely Duration of the Litigation
(*Grinnell* Factor #1) ................................................................ 7

        2.   The Reaction of the Settlement Class (*Grinnell* Factor #2)........................ 8

        3.   The Stage of the Proceedings and the Amount of Discovery Completed
(*Grinnell* Factor #3) ................................................................ 9

        4.   The Risks of Establishing Liability and Damages
(*Grinnell* Factors #4, 5)....................................................... 11

        5.   The Risks of Maintaining a Class Through Trial
(*Grinnell* Factor #6) ............................................................. 13

        6.   State Street's Ability to Withstand a Greater Judgment
(*Grinnell* Factor #7) ............................................................. 13

        7.   The Range of Reasonableness of the Settlement Fund in Light
of the Best Possible Recovery and Attendant Risks of Litigation
(*Grinnell* Factors #8, 9)....................................................... 14

    C.   The Remaining Rule 23(e)(2) Factors Support Preliminary Approval of the
Settlement ......................................................................................................18

        1.   Rule 23(e)(2)(A) – Plaintiffs and Co-Lead Counsel Have Adequately
Represented the Settlement Class ........................................... 18

        2.   Rule 23(e)(2)(C) – the Monetary Relief, Cooperation, and
Remediation Measures Provided by State Street Are Adequate,
Taking into Account the Costs and Risks of Further Litigation
and All Other Relevant Factors............................................... 18

        3.   Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably
Relative to Each Other ............................................................ 19

II.  CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ..................... 20

    A.   The Settlement Class Meets the Requirements of Rule 23(a) .............................20

        1.   Settlement Class Members Are so Numerous that Joinder Is
Impracticable.......................................................................... 20

|   |   | 2. | There Are Questions of Law and Fact Common to All Settlement Class Members | 20 |
|   |   | 3. | Plaintiffs' Claims Are Typical of Those of the Settlement Class | 21 |
|   |   | 4. | The Settlement Class Is Fairly and Adequately Represented | 22 |
|   | B. | | The Settlement Class Meets the Requirements of Rule 23(b)(3) | 22 |
|   |   | 1. | Common Questions of Law and Fact Predominate | 22 |
|   |   | 2. | A Class Action Is the Superior Method for Resolving This Case | 23 |
|   | C. | | The Court Should Appoint Co-Lead Counsel as Counsel for the Settlement Class | 24 |
| III. | | | NOTICE TO THE SETTLEMENT CLASS | 25 |
| CONCLUSION | | | | 25 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................22, 24

*Amgen Inc v. Connecticut Ret. Plans and Trust Funds*,
    568 U.S. 455 (2013)............................................................................................................22

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................................9

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010).........................................................................................21, 23

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
    No. 85 Civ. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ....................................12

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ............................................................................................24

*Chhab v. Darden Rests., Inc.*,
    No. 11 Civ. 8345 (NRB), 2016 WL 3004511 (S.D.N.Y. May 20, 2016)...............................24

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.
    Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ....................................................................6

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)............................................................................................................13

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)...............................................................................................22

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..............................................................................................18

*Dial Corp. v. News Corp.*,
    314 F.R.D. 108 (S.D.N.Y. 2015) .......................................................................................21

*Garland v. Cohen & Krassner*,
    No. 08-CV-4626 (KAM), 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011).............................13

*Gonqueh v. Leros Point to Point, Inc.*,
    No. 14-CV-5883 (GHW), 2015 WL 9256932 (S.D.N.Y. Sept. 2, 2015) ...............................24

*Guippone v. BH S&B Holdings LLC*,
 No. 09-CV-1029 (CM), 2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016) .................................13

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 689 F.3d 229 (2d Cir. 2012) .........................................................................................20, 24

*In re Amaranth Nat. Gas Commodities Litig.*,
 269 F.R.D. 366 (S.D.N.Y. 2010) ............................................................................................21

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
 No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................9, 10

*In re Austrian and German Bank Holocaust Litig.*,
 80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche
 Bank*, 236 F.3d 78 (2d Cir. 2001) ...........................................................................................6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 No. 14-cv-2058, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015).............................................17

*In re Currency Conversion Fee Antitrust Litig.*,
 01-MD-1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006).......................................................7

*In re Currency Conversion Fee Antitrust Litig.*,
 224 F.R.D. 555 (S.D.N.Y. 2004) ............................................................................................24

*In re Currency Conversion Fee Antitrust Litig.*,
 264 F.R.D. 100 (S.D.N.Y. 2010) ............................................................................................21

*In re Elec. Books Antitrust Litig.*,
 No. 11 MD 2293 (DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ...................21, 22, 24

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
 No. 13 Civ. 7789 (LGS), 2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016)................................12

*In re Global Crossing Sec. and ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................................9

*In re GSE Bonds Antitrust Litig.*,
 No. 19-CV-1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ...................................6

*In re High-Tech Emp. Antitrust Litig.*,
 No. 11-CV-2509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ............................................10

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
 733 F. Supp. 2d 997 (E.D. Wis. Aug. 16, 2010).....................................................................15

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
 299 F. Supp. 3d 430 (S.D.N.Y. 2018)......................................................................................20

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) .........................................................10, 15, 17

*In re Lipitor Antitrust Litig.*,
  868 F.3d 231 (3d Cir. 2017)...................................................................................12

*In re Local TV Advertising Antitrust Litig.*,
  MDL No. 2867, 2020 WL 6557665 (N.D. Ill. Nov. 6, 2020).................................12

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................8, 12, 23

*In re Nissan Radiator/Transmission Cooler Litig.*,
  10 CV 7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013)............................9

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ...................15, 17

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013), *reversed and vacated on other grounds*,
  827 F.3d 223 (2d Cir. 2016)................................................................................8, 11

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (S.D.N.Y. 2019) ......................................................................5, 8, 19

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017).............................................................................22, 24

*In re Playmobil Antitrust Litig.*,
  35 F. Supp. 2d 231 (E.D.N.Y. 1998) ....................................................................21

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  584 F. Supp. 2d 697 (M.D. Pa. 2008) ...............................................................13, 15

*In re Processed Egg Prod. Antitrust Litig.*,
  284 F.R.D. 278 (E.D. Pa. 2012)...................................................................... *passim*

*In re Sumitomo Copper Litig.*,
  182 F.R.D. 85 (S.D.N.Y. 1998) .............................................................................21

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013)...................................................................................22

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012).............................................................................23

*In re Vitamin C Antitrust Litig.*,
  No. 06-MD-1738 (BMC), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ...........8, 13

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002)...................................................................................23

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008).............................8

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ...........................................................................12

*Laydon v. Mizuho Bank, Ltd.*,
    No. 12-3419, ECF No. 720 (S.D.N.Y. Nov. 10, 2016)..........................................15

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).........................................................................1

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011).....................................................................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ..........................................................................................22

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001).......................................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................18, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).......................................................................................12

*Wallace v. IntraLinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) ............................................................................20

*Wanechek Mink Ranch v. Alaska Brokerage Int'l Inc.*,
    No. C06-00089, ECF No. 43 (W.D. Wash. Sept. 22, 2006)....................................13

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
    Rule 12(b)(2)..........................................................................................1, 3, 4
    Rule 12(b)(6)..........................................................................................1, 3, 4
    Rule 23 ....................................................................................................6, 19
    Rule 23(a)....................................................................................................20
    Rule 23(a)(2)...............................................................................................20
    Rule 23(a)(3)...............................................................................................21
    Rule 23(b)....................................................................................................20
    Rule 23(b)(3)...............................................................................................22
    Rule 23(c)(1)(B)...........................................................................................24

Rule 23(e)...............................................................................................................5
Rule 23(e)(2)..............................................................................................5, 6, 18, 19
Rule 23(e)(2)(A) ..................................................................................................18, 22
Rule 23(e)(2)(B)...........................................................................................................6
Rule 23(e)(2)(C)...................................................................................................18, 19
Rule 23(e)(2)(C)(i).....................................................................................................19
Rule 23(e)(2)(C)(ii)....................................................................................................19
Rule 23(e)(2)(C)(iii)...................................................................................................19
Rule 23(e)(2)(C)(iv)...................................................................................................19
Rule 23(e)(2)(D) .........................................................................................................19
Rule 23(e)(3)...........................................................................................................6, 19
Rule 23(f)......................................................................................................................8
Rule 23(g).....................................................................................................................24
Rule 23(g)(1)(A)(i)-(iv)..............................................................................................24

## Other Authorities

2 W. Rubenstein, NEWBERG ON CLASS ACTIONS
   §4:49 (5th ed. 2012).............................................................................................22

# INTRODUCTION

The State Street Settlement[1] provides Plaintiffs and the Settlement Class with critically important and timely cooperation materials to expand and strengthen their allegations in the Action at an early stage of the litigation prior to formal discovery.  In its Decision and Order granting in part and denying in part Defendants' Rule 12(b)(2) and 12(b)(6) motion to dismiss the complaint ("Decision and Order") (ECF No. 115), the Court dismissed certain Defendants because it found the allegations in the Third Amended Complaint ("TAC") did not connect these Defendants to the alleged antitrust conspiracy.  Based on the cooperation materials State Street Corporation and State Street Bank and Trust Company (collectively, "State Street") provided, in the Fourth Amended Complaint ("FAC") Plaintiffs were able to allege new, direct evidence of coordination among Defendants that is part and parcel of the alleged conspiracy to fix European Government Bonds prices, including chat room transcripts linking these Defendants to the conspiracy.  Information gleaned from State Street's cooperation materials also assisted Plaintiffs in naming four additional defendant-bank families (for a total of 12 new defendants) in the FAC.

Based on their experience and knowledge of the claims and defenses at issue in this Action, Co-Lead Counsel believe that the Settlement is in the best interests of the Settlement Class.  *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) (stating that "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").[2]

---

[1]     Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement with State Street Corporation and State Street Bank and Trust Company (the "Stipulation").

[2]     Unless otherwise noted, citations are omitted and emphasis is added.

As discussed more fully below, this Settlement provides valuable cooperation to the Settlement Class and should be approved.

## PROCEDURAL BACKGROUND

On March 4 and March 22, 2019, Plaintiffs Electrical Workers Pension Fund Local 103 I.B.E.W. ("IBEW 103") and Ohio Carpenters' Pension Fund ("Ohio Carpenters") filed their initial complaints, triggered by an announcement by the European Commission that it issued a Statement of Objections to eight banks.  Joint Declaration of Kristen M. Anderson, Vincent Briganti, and Gregory S. Asciolla in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with State Street Corp. & State Street Bank and Trust Co. ("Co-Lead Counsel Decl."), ¶11.  Shortly thereafter, on April 26, 2019, the Court appointed Scott+Scott Attorneys at Law LLP ("Scott+Scott"), Lowey Dannenberg P.C. ("Lowey Dannenberg"), and Labaton Sucharow LLP ("Labaton Sucharow") as interim co-lead counsel in the Action.  Co-Lead Counsel Decl., ¶12.  On April 23, 2021, Berman Tabacco was appointed as additional interim co-lead counsel.  *Id.*

On June 11, 2019, Plaintiffs filed the Consolidated Class Action Complaint.  Co-Lead Counsel Decl., ¶13.  Following several rounds of pre-motion letters to dismiss the complaint and amendment of the complaint thereafter, Plaintiffs filed the TAC on December 3, 2019.  *Id.*, ¶¶16-17.  The TAC did not name State Street as a defendant, but State Street was reported to have been a recipient of a Statement of Objections from the European Commission in an October 25, 2019 *Bloomberg* news article.  *Id.*, ¶17.  On or about April 2020, Co-Lead counsel contacted State Street's Counsel to convey interest in possible resolution of the Action.  *Id.*, ¶27.

After numerous bilateral telephone discussions, on September 9, 2020, the Parties participated in a mediation session held over Zoom with mediator Anthony Piazza.  *Id.*, ¶28.  After a full day of mediation, Mr. Piazza made a "mediator's proposal," but State Street requested

additional time to consider the mediator's proposal and the mediation was suspended.  *Id.*, ¶29.
On September 12, 2020, the Parties accepted the mediator's proposal.  *Id.*, ¶29.  After weeks of
negotiations on certain key terms of a settlement, on October 9, 2020, Plaintiffs and State Street
executed a Term Sheet.  *Id.*, ¶30.  The Term Sheet required State Street to provide significant and
immediate cooperation upon its execution, and those cooperation terms became part of the
Stipulation.  *Id.*, ¶35.  Following months of additional negotiations, on June 8, 2021, Plaintiffs and
State Street executed the Stipulation.  *Id.*, ¶33.

On July 23, 2020, the Court issued its Decision and Order granting in part and denying in
part Defendants' Rule 12(b)(2) and 12(b)(6) motion to dismiss the TAC.  *Id.*, ¶19.  The Court
sustained Plaintiffs Ohio Carpenters' and IBEW 103's claim under Section 1 of the Sherman Act,
15 U.S.C. §1, finding that Plaintiffs had plausibly alleged a conspiracy to fix European
Government Bond prices against Natixis S.A. ("Natixis"), Nomura International plc, and Nomura
Securities International Inc. (together, "Nomura").  *Id.*, ¶19.  The Court, however, dismissed
Defendants Bank of America Merrill Lynch International Designated Activity Company
("BAML") and NatWest Markets plc on personal jurisdiction grounds.  *Id.* at 15.  In addition, the
Court dismissed Plaintiffs' claims against BAML, UniCredit Bank AG, and UniCredit Capital
Markets LLC on antitrust standing grounds and dismissed BAML, Bank of America, N.A., Merrill
Lynch International, NatWest Markets plc (f/k/a Royal Bank of Scotland plc), NatWest Markets
Securities Inc. (f/k/a RBS Securities Inc.), UBS AG, UBS Europe SE, and UBS Securities LLC
f/k/a UBS Warburg LLC for failure to connect these Defendants to the antitrust conspiracy alleged
in the TAC.  *Id.*, ¶19.  Natixis and Nomura filed a motion for reconsideration of the Decision and
Order, which Plaintiffs opposed.  *Id.*, ¶20.

Pursuant to the Court's direction in the Decision and Order, Plaintiffs sought leave to amend the TAC to replead against dismissed Defendants, and the parties agreed on a schedule for amendment, permitting Plaintiffs to file their FAC 60 days after the Court's decision on the Natixis and Nomura's motion for reconsideration.  *Id.*, ¶21.  The Court denied Natixis and Nomura's motion for reconsideration on December 11, 2020.  *Id.*, ¶22.  Accordingly, on February 9, 2021, Plaintiffs filed the FAC, which included as defendants all the entities named defendants in the TAC, but also State Street and 12 additional defendants based in part on the cooperation materials received from State Street.  *Id.*, ¶23.  Among other things, the FAC incorporated cooperation materials provided by State Street and added San Bernardino County Employees' Retirement Association ("SBCERA") as a Plaintiff.  *Id.*, ¶23.

On April 15, 2021, Plaintiffs and State Street informed the Court in a sealed filing that they had reached a settlement and sought a stay of the case as to State Street, which the Court granted. *Id.*, ¶32.  On April 16, 2021, Defendants served Plaintiffs with three pre-motion letters informing Plaintiffs of their intent to move to dismiss the FAC under Rule 12(b)(2) and 12(b)(6).  *Id.*, ¶24. Because of the stay, State Street did not join in Defendants' pre-motion letter.  *Id.*, ¶24.  On May 17, 2021, Plaintiffs served Defendants with letters responding to Defendants' pre-motion letters. *Id.*, ¶24.

Finally, on May 21, 2021, the European Commission announced the issuance of a decision against Bank of America, Natixis, Nomura, RBS (now NatWest), UBS, UniCredit and WestLB for their participation in a cartel in the primary and secondary market for European Government Bonds and imposed fines totaling over €371 million ($454.4 million).  *Id.*, ¶25.  While State Street had been publicly named as a recipient of a Statement of Objections, it was not ultimately included in the European Commission's press release or fined.

On May 26, 2021, Plaintiffs filed a pre-motion letter with the Court requesting that the Court take judicial notice of the May 20, 2021 press release issued by the European Commission regarding its European Government Bonds decision. *Id.*, ¶26.  On June 4, 2021, Defendants (except for State Street who had not moved to dismiss due to the stay in place) replied to Plaintiffs' response to Defendants' pre-motion letters, responded to Plaintiffs' judicial notice letter, and notified the Court of the parties' failure to resolve their dispute over the appropriateness of the filing of a motion to dismiss. *Id.*, ¶26.

## **ARGUMENT**

## I. **THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT**

Rule 23(e) requires court approval of a proposed class action settlement upon finding that the proposal "is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).  The preliminary approval process is governed by a "likelihood standard" – requiring the Court to assess whether the parties have shown that "the court will ***likely*** be able to grant final approval and certify the class." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (S.D.N.Y. 2019) (emphasis in original).  Under the December 1, 2018 amendments to Rule 23(e), in weighing preliminary approval, the Court must consider whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).  The Rule 23 factors "supplement rather than displace the[] '*Grinnell'* factors" traditionally considered in the Second Circuit to evaluate the substantive fairness of a settlement during the preliminary approval process.  *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019).  Grinnell requires the Court to weigh the following factors to determine whether a proposed settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

### A.    The Settlement Is Procedurally Fair Because It Was Achieved Through Extensive Arm's-Length Negotiation with the Assistance of a Respected and Experienced Mediator (Rule 23(e)(2)(B))

To determine whether a settlement is procedurally fair, courts evaluate the process undertaken to achieve it.  The State Street Settlement is entitled to a presumption of fairness because it was reached by capable counsel with the assistance of an experienced mediator, Anthony Piazza.  *See GSE Bonds*, 2019 WL 6842332, at *2 (citing *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)) (stating that where a settlement is the "product of

arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness").

On September 9, 2020, the Parties engaged in a mediation before Mr. Piazza who confirms that the outcome was reached based on arm's-length negotiations between counsel that zealously advocated for their respective clients. Declaration of Anthony Piazza, Esq. Regarding Preliminary Approval of Stipulation and Agreement of Settlement with State Street Corp. & State Street Bank and Trust Co. ("Mediator Decl."), ¶4. Following the mediation, the Parties accepted the mediator's proposal. Co-Lead Counsel Decl., ¶29. Thus, an initial presumption of fairness attaches to the State Street Settlement. *See In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 278, 296 (E.D. Pa. 2012).

## B.     The Settlement Is Substantively Fair

At preliminary approval, the Court "must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, 01-MD-1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006).

### 1.     The Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor #1)

This Action involves complex issues of law and fact. Defendants' arguments raised in their pre-motion letter to move to dismiss the TAC (ECF No. 110) and Natixis and Nomura's arguments in their motion for reconsideration (ECF No. 120), illustrate the complexity of the Action. Defendants argued that Plaintiffs' economic analysis of bid-ask spreads failed to show that each defendant conspired for six years across 13 bond-issuing countries. Moreover, Defendants argued that Plaintiffs' economic analysis of European Government Bond auctions was the result of ordinary market forces, not manipulation.

Complex issues of law and fact are also likely to be raised at the class certification stage, and the losing party will likely seek interlocutory review pursuant to Rule 23(f), which will cause delay in resolving the litigation.  *See In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 n.13 (E.D.N.Y. 2013), *reversed and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) (noting that "[i]n the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision.").

Finally, any trial in this action is likely to be lengthy, and "[t]he losing parties would likely appeal any adverse jury verdicts, thereby extending the duration of litigation."  *Payment Card*, 986 F. Supp. 2d at 212.

As a result, numerous courts have recognized that "'[f]ederal antitrust cases are complicated, lengthy . . . bitterly fought,' as well as costly."  *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC), 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases").  This case is no different.  In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result."  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998).  Accordingly, this factor weighs in favor of the State Street Settlement.

## 2.    The Reaction of the Settlement Class (*Grinnell* Factor #2)

This *Grinnell* factor is generally inapplicable prior to disseminating notice.  *See Payment Card*, 330 F.R.D. at 29 (declining to address "the reaction of the class to the settlement"); *see also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is

premature.").  At this time, the reaction of the Settlement Class comes from the Plaintiffs who authorized the Settlement.

> ### 3.      The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor #3)

In assessing the fairness of a settlement at preliminary approval, the Court inquires as to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("[T]he question is whether the parties had adequate information about their claims.").  Further, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).

Co-Lead Counsel's knowledge of the merits and potential weaknesses of Plaintiffs' claims supports preliminary approval of the Settlement.  Co-Lead Counsel have undertaken an extensive investigation, which included engaging two sets of experts, one of which analyzed the price of French and Italian 10-year bonds in and around auctions for the period of 2006-2013, while the other collected and analyzed millions of Italian, French, German, and Spanish government bond quotes in the secondary market from 2004 through 2015.  *See*, *e.g.*, *In re Nissan Radiator/Transmission Cooler Litig.*, 10 CV 7493 (VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (stating "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement").

By the time the mediation occurred, Plaintiffs had received and analyzed three rounds of pre motion-to-dismiss letters from the Defendants and amended the complaint several times in response to the letter exchanges.  Co-Lead Counsel also had the benefit of the Court's ruling on Defendants' motion to dismiss.  In addition, Plaintiffs had responded to Natixis and Nomura's motion for reconsideration prior to the mediation.  In accordance with the mediator's guidance, Co-Lead Counsel had also drafted a mediation statement in which they discussed the litigation risks Plaintiffs faced in pursuing their claims against State Street and Defendants, as well as potential damages.  Mediator Decl., ¶5.  Thus, by the September 9 mediation, Co-Lead Counsel were well apprised of the strengths and weaknesses of Plaintiffs' claims. *See Processed Egg Prod.*, 284 F.R.D. at 299 (finding counsel had adequate knowledge of the litigation where counsel had "conducted extensive investigations into the case in preparation for filing of the complaint" and defendants' motions to dismiss provided counsel "with an additional platform from which to ascertain [settling defendant's] and the other Defendants' positions on the case and thereby to evaluate further the merits of the litigation").

Co-Lead Counsel "'have engaged in sufficient investigation of the facts to enable the Court to "intelligently make . . . an appraisal" of the Settlement.'"  *AOL Time Warner*, 2006 WL 903236, at *10.  Indeed, if extensive discovery was required for settlement approval, class action plaintiffs would be deprived of the "ice breaker" settlement strategy, which is often used in multi-party cases, as it was here, to "'break the ice' and bring other defendants to the point of serious negotiations."  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *see also In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013).  Therefore, this factor weighs in favor of preliminary approval.

**4.    The Risks of Establishing Liability and Damages (*Grinnell* Factors #4, 5)**

To assess this factor, "the Court should balance the benefits afforded the Class, including the ***immediacy*** and ***certainty*** of a recovery, against the continuing risks of litigation.'" *Payment Card*, 986 F. Supp. 2d at 224. Regarding liability, Plaintiffs expect Defendants to continue to vigorously contest all elements of Plaintiffs' claims during each stage of the case.

Indeed, Defendants' multiple motions to dismiss have already raised difficult issues of law and fact. In their motion to dismiss which the Court considered in the Decision and Order (ECF No. 110), Defendants argued that Plaintiffs failed to allege a plausible overarching conspiracy to fix prices of European Government Bonds across all Eurozone auctions (particularly considering not all Defendants participated in each Eurozone member's auctions) where the TAC's allegations focused on French and Italian primary markets. Defendants also challenged the findings of the statistical analysis in the TAC, arguing that the inverted "V" pattern observed in the primary market was the result of ordinary market forces, not manipulation. Moreover, Defendants argued that allegations of widening of Defendants' bid-ask spreads for Italian bonds did not reflect collusion across all other Eurozone members' bonds in the secondary market. Even at the pleading stage, resolution of these issues was complex.

State Street also would have the unique liability argument that although it received a Statement of Objections from the European Commission, State Street was not included in the European Commission's ultimate decision and did not receive a fine. Thus, State Street was likely to argue that it did not participate in the cartel in the primary and secondary market for European Government Bonds. While Plaintiffs would argue that the scope and nature of the European

Commission's enforcement action is not determinative of Plaintiffs' claims here,[3] there would still be a considerable risk that the Court would credit State Street's argument.

If liability is established, Plaintiffs will still face the difficulties inherent in proving damages. Plaintiffs' theory of damages will be hotly contested, and there is no doubt that at trial the issue will involve a "battle of the experts." *NASDAQ*, 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985). Thus, there is a substantial risk that a jury might accept one or more of Defendants' damages arguments, or award far less than the value of the State Street cooperation, or nothing at all. Indeed, "'the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005).

In short, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 Civ. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). In contrast, the State Street Settlement significantly reduces the risks associated with discovery in this Action. Plaintiffs receive the benefit of immediate cooperation to litigate the Action against Defendants.

---

[3]      *See In re Local TV Advertising Antitrust Litig.*, MDL No. 2867, 2020 WL 6557665, at *2, *16 (N.D. Ill. Nov. 6, 2020) (denying motion to strike nationwide class allegations where DOJ civil enforcement concerned conduct in specific local markets); *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 263 (3d Cir. 2017) (lack of FTC civil enforcement not determinative of private plaintiffs' claims); *cf. In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2016 WL 5108131, at *4 (S.D.N.Y. Sept. 20, 2016) (holding that guilty pleas "are not determinative of the plaintiffs' potential claims in a civil antitrust suit").

### 5. The Risks of Maintaining a Class Through Trial (*Grinnell* Factor #6)

Although the "risk of maintaining a class through trial is present in [every] class action," *Guippone v. BH S&B Holdings LLC*, No. 09-CV-1029 (CM), 2016 WL 5811888, at *7 (S.D.N.Y. Sept. 23, 2016), "this factor [nevertheless] weighs in favor of . . . settlement" where "it is likely that defendants would oppose class certification" if the case were to be litigated, *Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM), 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011). Plaintiffs believe they will ultimately persuade the Court to certify a litigation class, but Defendants will advance substantial arguments in opposition. Thus, there is a risk that this litigation might not be maintained as a class through trial. *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013) (reversing class certification in an antitrust case).

### 6. State Street's Ability to Withstand a Greater Judgment (*Grinnell* Factor #7)

"'[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement.'" *Vitamin C*, 2012 WL 5289514, at *6. However, "the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008). Here, State Street's ability to withstand a greater judgment is offset by the value of the cooperation it has agreed to in the Stipulation. Co-Lead Counsel Decl., ¶ *Id.*35-36; *see also Wanechek Mink Ranch v. Alaska Brokerage Int'l Inc.*, No. C06-00089, ECF No. 43, at 7 (W.D. Wash. Sept. 22, 2006) (finding that settling defendant's "cooperation shall provide critical information and benefit to the class that is likely to far surpass the quantity, quality, and timeliness of the information that could be gleaned via the normal discovery process").

In addition, State Street may have unique defenses owing to its limited participation in the European Government Bond market.  Mediator Decl., ¶8.  State Street represented that it only maintained a European Government Bond trading desk for one year, from December 2010 through December 2011, with significant time spent during this period simply setting up the desk.  *Id.*  The desk was only active for a limited time, after which State Street represented that it exited the European Government Bond market as a dealer.  *Id.*  State Street estimates that it had an extremely limited share, well below 1%, in the secondary market.  *Id.*  Accordingly, State Street likely had limited participation in both the primary and secondary European Government Bond markets during the Class Period.  This factor also offsets State Street's ability to withstand a greater judgment.

<strong>7.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation (<em>Grinnell</em> Factors #8, 9)</strong>

In recommending that the Court preliminarily approve the Settlement, Plaintiffs have taken into account estimated damages, State Street's limited participation in the European Government Bond market, the benefits and risks of continuing litigation against State Street in light of the cooperation the bank has agreed to provide, and the range of possible outcomes in the absence of a settlement.  *See, e.g.*, *Processed Egg Prod.*, 284 F.R.D. at 302 ("Despite the difficulties they pose to measurement, nonpecuniary benefits . . . may support a settlement.").  Moreover, calculating the best possible recovery against State Street "in the aggregate is 'exceedingly speculative' at this point in time given the previously-discussed risks of establishing liability and damages associated with this complex litigation, even when considering that treble damages are technically available for recovery under the Plaintiffs' Sherman Act claim."  *See id.* at 302-03.

State Street's cooperation obligations include attorney proffers, witness interviews, production of data and documents, deposition testimony, evidentiary declarations, and further

cooperation that the Parties agree to.  Stipulation, ¶13; *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011) (recognizing value of early cooperation); *Pressure Sensitive Labelstock*, 584 F. Supp. 2d at 702 (same); *Linerboard*, 292 F. Supp. 2d at 643 (same).  State Street is obligated to provide this cooperation until judgment is final against all Defendants.  Stipulation, ¶13(j).  State Street's agreement to provide continued cooperation "is valuable consideration in light of the risks in proceeding with this suit against the remaining Defendants."  *See Processed Egg Prod.*, 284 F.R.D. at 303.

Courts have previously approved cooperation-only settlements under similar circumstances.  *See, e.g.*, *id.* (granting final approval to pre-discovery cooperation-only settlement in multi-defendant action where court found cooperation "confers real and substantial benefits upon the Class"); *Wanechek Mink Ranch*, ECF No. 43, at 7 (granting preliminary approval to pre-discovery cooperation-only settlement in multi-defendant action); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1009 (E.D. Wis. Aug. 16, 2010) (approving pre-discovery cooperation-only settlement in multi-defendant action which "provided plaintiffs with quite a bit of information about the operation of the alleged conspiracy"); *Laydon v. Mizuho Bank, Ltd.*, No. 12-3419, ECF No. 720 (S.D.N.Y. Nov. 10, 2016) (approving pre-discovery cooperation-only settlement in multi-defendant action).

State Street's cooperation has already been of great value to Plaintiffs, as the information contained in State Street's cooperation materials was critical for Plaintiffs linking an additional four defendant-bank families (for a total of 12 new defendants) to the European Government Bond conspiracy alleged in the Action.  The information contained in State Street's cooperation materials also allowed Plaintiffs to include additional allegations against the Defendants dismissed in the Decision and Order.  Excerpts of chat room communications included in the FAC allowed

15

Plaintiffs to include specific instances where Defendants' European Government Bond traders coordinated bidding strategies, shared proprietary information and/or trading strategies, disclosed pricing information, exchanged highly sensitive order flow information, disclosed prices from their proprietary pricing screens, and disclosed customer identities.   FAC, ¶¶240-44, 250-67; *see Processed Egg Prod*., 284 F.R.D. at 302 (finding settling defendant's "conferral of the nonpecuniary benefits to class members that is proposed under the settlement is valuable consideration, and reasonable both in light of the best possible recovery against [settling defendant] and in light of the risks the parties would face if the case went to trial against [settling defendant]").

The Court held in the Decision and Order that analysis of European Government Bond quotes specifically attributable to Natixis and Nomura in 2012 and 2013 was sufficient to plausibly connect them to the alleged conspiracy.   ECF No. 115 at 60-67.   Plaintiffs searched for, but were unable to locate, any publicly available data containing European Government Bond quotes specifically attributable to NatWest Markets plc, NatWest Markets Securities Inc., UBS AG, UBS Europe SE, or UBS Securities LLC from 2012 to 2013.   Co-Lead Counsel Decl., ¶38.   The cooperation materials allowed Plaintiffs to incorporate chat room transcripts involving traders from these Defendants in the FAC, providing an alternative basis to replead Plaintiffs' claims against these Defendants.   *Id.*   Because Plaintiffs' research suggests that these Defendants were significantly more active in the European Government Bond market than State Street, Co-Lead Counsel believe that the timely cooperation received as part of the Settlement with State Street places Plaintiffs and the Class in a significantly improved position to maximize their total recovery in the Action.   *Id.*

Because State Street's participation in the European Government Bond market was limited, likely with less than 1% market share, estimated damages based on State Street's transactions were minimal.  Moreover, while the Settlement does not have a monetary benefit for the Settlement Class, under the doctrine of joint and several liability, Plaintiffs are able to seek the full amount of damages from the other Defendants.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) (noting the right to seek entire damages from non-settling defendants "provides increased value . . . by creating added incentive for the remaining defendants to settle or allowing greater recovery for the Plaintiffs at trial").

Further, receiving State Street's crucial cooperation prior to formal discovery provides greater efficiency.  *See Processed Egg Prod.*, 284 F.R.D. at 303 (finding that "the [] Settlement likely has short-circuited at least some of the expense and delay of future discovery by securing [settling defendant's] cooperation and removing the [settling defendant] forces from those who would contest or complicate Plaintiffs' discovery efforts.").  Information learned from the State Street cooperation bestows Plaintiffs with "a clear tactical advantage . . .  to formulate a strategy in taking discovery from the remaining Defendants, specific tailoring the scope and focus of discovery." *Id.* at 304.

Finally, this Settlement has added value as an "ice-breaker" settlement in a multi-party antitrust case.  *Packaged Ice*, 2011 WL 717519, at *10.  Such settlements add value because they can "'break the ice' and bring other defendants to the point of serious negotiations." *Linerboard*, 292 F. Supp. 2d at 643.  Plaintiffs respectfully submit that the Settlement confers substantial benefits while eliminating risks attendant to continued litigation against State Street, which is a well-financed and well-represented party with unique liability limits.

### C.     The Remaining Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement

#### 1.     Rule 23(e)(2)(A) – Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class

Plaintiffs each share the same interest as the Settlement Class in prosecuting this Action to ensure the greatest recovery from State Street and Defendants.  Plaintiffs are part of the Settlement Class and suffered the same injuries as other Settlement Class Members – *i.e.*, monetary losses when they were overcharged or underpaid in their transactions with Defendants in European Government Bonds.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) ("'class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members'").  Plaintiffs have played an active role in this case's development, prosecution, and settlement.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 n.25 (2d Cir. 2006) (stating that a class representative "must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members").  Thus, the Plaintiffs are adequate representatives of the Settlement Class and should be appointed as class representatives for settlement purposes.  Further, Co-Lead Counsel have demonstrated they are qualified, experienced, and able to conduct the litigation.  *See* Section II.C., *infra*.

#### 2.     Rule 23(e)(2)(C) – the Monetary Relief, Cooperation, and Remediation Measures Provided by State Street Are Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors

To assess whether this relief is adequate, Rule 23(e)(2)(C) requires the Court to consider:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

FED. R. CIV. P. 23(e)(2)(C)(i-iv).  Plaintiffs previously discussed Rule 23(e)(2)(C)(i) in Sections I.B.1, I.B.4, and I.B.5, *supra*.[4]  The remaining Rule 23(e)(2)(C) factors support preliminarily approving the Settlement.

> **a.  Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(C)(iii) – Effectiveness of Any Proposed Method of Distributing Relief to the Class and the Terms of Any Proposed Award of Attorneys' Fees**

Because the State Street Settlement is a cooperation-only settlement, there is no proposed method of distributing relief to the Settlement Class and Co-Lead Counsel will not be seeking an award of attorneys' fees from the State Street Settlement.

> **b.  Rule 23(e)(2)(C)(iv) – Any Agreement Required to Be Identified Under Rule 23(e)(3)**

There are no agreements to be identified pursuant to Rule 23(e)(3).

> **3.  Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to Each Other**

This Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." FED. R. CIV. P. 23 advisory committee's note to 2018 amendment.  The Releases treat all Settlement Class Members equitably relative to one another.  Subject to Court approval, all Settlement Class Members will be giving State Street an identical release running to the identical factual predicate of the Action.  Stipulation, ¶¶3-10.

---

[4]   *Grinnell* factors 1, 4, 5, and 6 are subsumed by Rule 23(e)(2)(C)(i), which analyzes the costs, risks, and delay of trial and appeal.  *Payment Card*, 330 F.R.D. at 36 (noting that this assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial, and considering each *Grinnell* factor in its analysis).

## II.   CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

### A.   The Settlement Class Meets the Requirements of Rule 23(a)

A court may certify a class for settlement purposes where the proposed settlement class meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b).  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012).  Rule 23(a) provides that a class may be certified if the plaintiff demonstrates numerosity, commonality, typicality, and adequacy of the class plaintiffs.  FED. R. CIV. P. 23(a).  The Settlement Class meets the requirements of Rule 23(a) for settlement purposes.

### 1.   Settlement Class Members Are so Numerous that Joinder Is Impracticable

In cases involving widely traded instruments such as this one, numerosity is readily satisfied.  *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (stating that courts presume numerosity for classes of 40 or more members).

### 2.   There Are Questions of Law and Fact Common to All Settlement Class Members

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  This threshold is satisfied if the question is "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores*, 564 U.S. at 350.  When assessing commonality, even "'a single [common] question will do.'"  *Id*. at 359.  Commonality is regularly found in antitrust cases because questions of the existence, nature, and scope of an antitrust conspiracy are common.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 590 (S.D.N.Y. 2018) (stating that "the existence of a conspiracy is a common question").  In addition to common questions about the conspiracy element, numerous other

common questions are presented, including whether Plaintiffs and the other Settlement Class Members suffered an injury in fact and the appropriate measure of class-wide damages.

### 3.    Plaintiffs' Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3).  This standard is satisfied when "'each [class] member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 1282293, at *12 (S.D.N.Y. Mar. 28, 2014) (citing *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010)).  "Factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser . . . and other such concerns will not defeat class certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class."  *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998).  The standard is "not highly demanding," *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), and is readily satisfied in price-fixing claims which aim to prove "a conspiracy, its effectuation, and damages therefrom."  *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111 (S.D.N.Y. 2010) (collecting cases).

Plaintiffs' claims are typical of the Settlement Class's claims because Plaintiffs allege the same unlawful course of conduct harmed all Settlement Class Members.  *See In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 376 (S.D.N.Y. 2010) (stating that "the typicality requirement may be satisfied where 'injuries derive from a unitary course of conduct by a single system'").  Any differences that may exist as to the amount of injury suffered by each Settlement Class Member does not preclude a finding of typicality.  *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998).

### 4. The Settlement Class Is Fairly and Adequately Represented

As discussed previously at Section I.C.1, *supra*, in the Rule 23(e)(2)(A) analysis, Plaintiffs and Co-Lead Counsel have fairly and adequately represented the Settlement Class.

### B. The Settlement Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) permits a case to be litigated as a class action if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### 1. Common Questions of Law and Fact Predominate

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, NEWBERG ON CLASS ACTIONS §4:49, at 195-96 (5th ed. 2012)). Predominance is satisfied "'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013). A plaintiff does not have "'to prove that each element of her claim is susceptible to classwide proof,'" but rather, a plaintiff need only show "'that common questions *predominate* over any questions affecting only individual [class] members.'" *In re Petrobras Sec.*, 862 F.3d 250, 268 (2d Cir. 2017) (quoting *Amgen Inc v. Connecticut Ret. Plans and Trust Funds*, 568 U.S. 455, 469 (2013)) (emphasis in original).

Predominance is "'a test readily met in certain cases alleging . . . violations of the antitrust laws.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)); *Elec. Books*, 2014 WL

1282293, at *14 ("'where plaintiffs were allegedly aggrieved by a single policy of the defendant[],
and there is a strong commonality of the violation and the harm, this is precisely the type of
situation for which the class action device is suited'") (quoting *Brown*, 609 F.3d at 484).

Here, each element of the Plaintiffs' antitrust claims – collusion, causation and impact, and
damages – would be proven through common evidence. *See In re Vitamin C Antitrust Litig.*, 279
F.R.D. 90, 109 (E.D.N.Y. 2012) (stating that in price-fixing conspiracy cases, "courts have
frequently held that the predominance requirement is satisfied because the existence and effect of
the conspiracy are the prime issues in the case and are common across the class") (citing cases).

The existence and scope of Defendants' conspiracy to fix prices for European Government
Bonds can be established by common evidence, such as chat room communications and the
deposition testimony of Defendants' traders. *NASDAQ Market-Makers*, 169 F.R.D. at 518
("Courts repeatedly have held that the existence of a conspiracy is the predominant issue in price
fixing cases, warranting certification of the class even where significant individual issues are
present."). None of this proof will vary across Settlement Class Members. Rather, proof of the
conspiracy "will focus on the actions of the defendants, and, as such, proof for these issues will
not vary among class members." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 264 (D.D.C.
2002). Further, class-wide impact, causation, and damages can also be demonstrated using
common evidence, including through expert testimony and modeling that relies on Defendants'
transaction data, which is common to all members of the Settlement Class and requires no
individualized inquiries.

### 2. A Class Action Is the Superior Method for Resolving This Case

A case satisfies the superiority test if "the class device will achieve economies of scale,
conserve judicial resources, preserve public confidence in the integrity of the judicial system by
avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of

similar claims." *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345 (NRB), 2016 WL 3004511, at *3 (S.D.N.Y. May 20, 2016) (citing *Gonqueh v. Leros Point to Point, Inc*., No. 14-CV-5883 (GHW), 2015 WL 9256932, at *3 (S.D.N.Y. Sept. 2, 2015)).  Superiority is "explicitly comparative in nature: courts must ask whether 'a class action is ***superior to other available methods*** for fairly and efficiently adjudicating the controversy.'" *Petrobras*, 862 F.3d at 268 (quoting FED. R. CIV. P. 23(b) (emphasis in original)).  In the settlement context, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620; *Am. Int'l Group*, 689 F.3d at 239, 240.

Class litigation is superior in actions where, as here, it would be unduly costly for Settlement Class Members to pursue litigation on their own.  *See Elec. Books*, 2014 WL 1282293, at *23 (citing *Amchem*, 521 U.S. at 617); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The ***realistic*** alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original).  Additionally, Settlement Class Members are significant in number and geographically disbursed, making a "class action the superior method for the fair and efficient adjudication of the controversy." *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004).

**C.    The Court Should Appoint Co-Lead Counsel as Counsel for the Settlement Class**

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." FED. R. CIV. P. 23(c)(1)(B) considering the factors identified in Rule 23(g)(1)(A)(i)-(iv).  The Court previously appointed Scott+Scott, Lowey Dannenberg, Labaton Sucharow, and Berman Tabacco as interim co-lead counsel.  ECF Nos. 32, 200.  Since that time, the firms have competently undertaken the responsibilities assigned to them by the Court.  Accordingly, Plaintiffs

request that Scott+Scott, Lowey Dannenberg, Labaton Sucharow, and Berman Tabacco be appointed as counsel for the Settlement Class.

## III.   NOTICE TO THE SETTLEMENT CLASS

Plaintiffs and State Street propose to provide notice to the Settlement Class no earlier than 180 days following preliminary approval by the Court, unless otherwise agreed to by the Parties or ordered by the Court. *See* Stipulation, ¶17.  To the greatest extent possible, Co-Lead Counsel wish to combine the Notice of the State Street Settlement with notice(s) of other settlements if those materialize.

State Street agreed to supply the names and addresses of potential Settlement Class Members who or which can be identified based on records within the bank's possession, and prior to providing notice, Plaintiffs will require name and address information from the other Defendants as well.  Plaintiffs have not yet requested this information due to their request that the provision of notice be stayed for at least 180 days following preliminary approval.  Prior to issuing notice, Plaintiffs would submit a motion for the Court to approve the form and manner of notice.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order preliminarily approving the State Street Settlement.

Dated: June 15, 2021

| **LABATON SUCHAROW LLP** | **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | **LOWEY DANNENBERG, P.C.** |
|---|---|---|
| *s/ Gregory S. Asciolla* | *s/ Kristen Anderson* | *s/ Vincent Briganti* |
| GREGORY S. ASCIOLLA | KRISTEN ANDERSON | VINCENT BRIGANTI |
| MATTHEW J. PEREZ | DONALD A. BROGGI | GEOFFREY M. HORN |
| VERONICA BOSCO | MICHELLE E. CONSTON | CHRISTIAN LEVIS |
| 140 Broadway | The Helmsley Building | ROLAND R. ST. LOUIS, III |
| New York, NY 10005 | 230 Park Ave., 17th Floor | 44 South Broadway, Suite 1100 |
| Telephone: 212-907-0700 | New York, NY 10169 | White Plains, NY 10601 |
| Facsimile:  212-818-0477 | Telephone: 212-223-6444 | Telephone: 914-997-0500 |
| gasciolla@labaton.com | Facsimile:  212-223-6334 | Facsimile:  914-997-0035 |

mperez@labaton.com
vbosco@labaton.com

kanderson@scott-scott.com
dbroggi@scott-scott.com
mconston@scott-scott.com

vbriganti@lowey.com
ghorn@lowey.com
clevis@lowey.com
rstlouis@lowey.com

CHRISTOPHER M. BURKE
**SCOTT+SCOTT ATTORNEYS
AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com

CHARLES KOPEL
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: 215-399-4770
Facsimile:  610-862-9777
ckopel@lowey.com

DAVID R. SCOTT
**SCOTT+SCOTT ATTORNEYS
AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile:  860-537-4432
david.scott@scott-scott.com

JOSEPH J. TABACCO, JR.
TODD A. SEAVER
CARL N. HAMMARSKJOLD
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: 415-433-3200
Facsimile:  415-433-6382
jtabacco@bermantabacco.com
tseaver@bermantabacco.com
chammarskjold@bermantabacco.com

*Interim Co-Lead Counsel*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

<u>s/ Kristen M. Anderson</u>
Kristen M. Anderson