November 1, 2021

**VIA ECF**
Honorable Victor Marrero
U.S. District Court
Southern District of New York
500 Pearl Street, Suite 1610
New York, NY 10007

   Re: *In re European Government Bonds Antitrust Litigation*
      No. 19-cv-02601-VM (S.D.N.Y.)

Dear Judge Marrero:

  Pursuant to Rule II.A.1. of the Court's individual rules and Federal Rule of Evidence 201, Plaintiffs respectfully submit this pre-motion conference letter requesting that the Court take judicial notice of the European Commission's Provisional Non-Confidential Decision ("Decision," attached at Exhibit A) and Summary of the Decision ("Summary Decision," attached at Exhibit B) in Case AT.40324 – *European Government Bonds*, in support of Plaintiffs' opposition to Defendants' pre-motion to dismiss letters.

  In deciding Defendants' prior motions to dismiss, the Court found that the European Commission's (the "Commission") Statement of Objections was "relevant," but noted that the Commission "is still investigating and ***has not formally alleged wrongdoing by any defendant***." *In re Eur. Gov't Bonds Antitrust Litig.*, No. 19 CIV. 2601 (VM), 2020 WL 4273811, at *18 (S.D.N.Y. July 23, 2020) ("*EGB I*"), *reconsideration denied*, 2020 WL 7321056 (S.D.N.Y. Dec. 11, 2020) (emphasis added). Now the playing field has changed because the Commission issued its Decision, replete with evidence of anticompetitive conduct, reinforcing this Court's prior ruling that Plaintiffs plausibly alleged a conspiracy and buttressing the allegations in the Fourth Amended Complaint ("FAC") tying each of the Defendant addressees of the Decision to that conspiracy.

**The Commission's European Government Bond Investigation**

  As the Commission explains in its 248-page Decision, on July 29, 2015, NatWest (then RBS) applied for a leniency marker "in relation to possible collusive bidding in the EGB auctions." Ex. A, ¶68. On January 27, 2016, the Commission granted RBS/NatWest conditional immunity from fines. *Id.*, ¶69. Thereafter, the Commission sent requests for information to Bank of America, Natixis, Nomura, RBS/NatWest, UBS, UniCredit, and other parties. *Id.*, ¶72.

  On January 31, 2019, the Commission issued a Statement of Objections, which reflected the Commissions' "preliminary view that 'eight banks participated in a collusive scheme that aimed at distorting competition when acquiring and trading [EGBs].'" *EGB I*, 2020 WL 4273811, at *4 (quoting TAC, ¶198) (brackets in original). At the time the Commission announced the Statement of Objections, it "did not specify which eight banks were under investigation, but Plaintiffs identified Defendants [Bank of America, Natixis, Nomura, RBS/NatWest, UBS, and

Honorable Victor Marrero
November 1, 2021
Page 2

UniCredit] based on various media reports and Defendants' own filings." *Id.*

The Commission, after considering voluminous evidence and argument, issued its Decision and found that Bank of America, Natixis, Nomura, RBS/NatWest, UBS, and UniCredit (collectively, the "addressees") conspired to fix the prices of EGBs. Ex. A, ¶1; Ex. B, ¶1. On October 15, 2021, the Commission published the Decision and Summary Decision.

The Commission imposed fines totaling over €371 million ($454.4 million) on Nomura (€129.6 million or $158.5 million); UBS (€172.4 million or $210.9 million); and UniCredit (€69.4 million or $85 million). Ex. A, ¶907; Ex. B, ¶23. The Commission granted full immunity to RBS/NatWest for revealing the cartel, which enabled it to avoid a €260 million ($318.1 million) fine.[1] Ex. A, ¶¶69, 895; Ex. B, ¶¶2, 22. The Commission reduced UBS's fine by 45% (€140 million or $172 million) because it was a cooperating leniency applicant. Ex. A, ¶¶896-903; Ex. B, ¶¶2, 22. Natixis was also a cooperating leniency applicant, but no fines were imposed because its cartel activity fell outside of the limitation period. Ex. A, ¶778; Ex. B, ¶¶2, 17. Similarly, Bank of America was not fined due to the limitation period. Ex. A, ¶778; Ex. B, ¶17.[2]

The Commission found that:

(a) [T]he addressees of this Decision have been involved in several types of anticompetitive conducts, namely the alignment and coordination of trading and bidding strategies, including strategies on the levels of overbidding, and the collusive exchange of forward looking commercially sensitive information on their trading activities, positions, prices, volumes, customers and strategies. These elements amounted to price fixing arrangements, collusive exchanges of information, market sharing and customer allocation[.]

(b) [T]he types of conduct set out in point (a) constitute a cartel conduct and are by their very nature among the most harmful restrictions of competition under [European competition law] . . . . The participants colluded to set up a horizontal scheme designed to restrict competition in the EGB sector[.]

Ex. A, ¶859(a)-(b). *See also* Ex. B, ¶1 ("The addressees of the Decision participated in a single and continuous infringement" of European competition law, and "[t]he object of the infringement (a cartel) was the restriction and/or distortion of competition in the sector of European Government Bonds"). The Decision is consistent with the conspiracy to fix EGB prices alleged in the FAC.

---

[1] Under the Commission's Notice on Immunity from fines and reduction of fines in cartel cases (Official Journal of the European Union 2006 C 298), referred to as the "Leniency Notice" in the Decision, to be eligible for immunity from fines or a reduction in fines, a firm must disclose its participation in a particular cartel to the Commission and provide cooperation to the Commission.

[2] While other Defendants named in the FAC are not named in the Decision, the scope of the decision is not determinative here. *See Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430, 442 (6th Cir. 2012) (stating that the plaintiff "should be free to draw facts from the EC decision to provide a 'starting point' and then use those facts to construct a theory that differs from or even contradicts that of the EC"); *see also* ECF No. 206-5, at 3 (collecting cases).

As Plaintiffs allege, Defendants engaged in frequent communications in electronic chatrooms. FAC, ¶¶239-45, 249-68 (setting out chatroom extracts obtained from a cooperating bank). Similarly, the "main evidence" in the Decision "consists of contemporaneous records of various Bloomberg communications," including "hundreds of communications" selected by the immunity and leniency applicants and provided to the Commission. Ex. A, ¶¶78, 93. The banks' traders "were in close contact with each other via persistent chats," which began in early 2007 and operated throughout 2011. *Id.*, ¶¶79, 83-84. Communications in the chatrooms "occurred regularly, sometimes daily, in particular when EGB came up for auction. Communications could be lengthy, lasting all day or spanning multiple days." *Id.*, ¶88.

Plaintiffs allege that Defendants used chatrooms to coordinate their trading strategies in both the primary (FAC, ¶¶235-37, 239-45) and secondary (*Id.*, ¶¶246-68) markets. The Commission likewise found "concerted practices" relating to the "coordinat[ion of] the bidding on the primary market" (Ex. A, ¶¶496, 504-11) and "other exchanges of sensitive information" relating to the secondary market (*Id.*, ¶¶496, 516-24). Further, Plaintiffs allege, and the Commission found, that Defendants coordinated levels of overbidding in the primary market. *Compare* FAC, ¶¶270-88 *with* Ex. A, ¶¶178, 496, 512-15. The conduct described in the Decision was not isolated or sporadic. The Commission's conspiracy five-year chronology uses the traders' own words to narrate how Defendants fixed the EGB market, day after day after day, at the expense of their customers. Ex. A, ¶¶89-350.

**Request for Judicial Notice**

Under Federal Rule of Evidence 201, the Court may take judicial notice of the Commission's Decision and Summary Decision.[3] As noted above, the Commission's investigation is "relevant" to Plaintiffs' claims, *EGB I*, 2020 WL 4273811, at *18, so the outcome of that investigation likewise bears on the sufficiency of Plaintiffs' conspiracy allegations. *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 592 & n.4 (S.D.N.Y. 2015) (taking judicial notice of settlements, penalties, and fines based on government orders and noting the "penalties provide non-speculative support for the inference of a conspiracy" and the reported outcomes "buttress the critical allegations" detailing "actions that were inherently collusive and conspiratorial—the sharing of proprietary pricing information and agreeing on trading strategies"); *see also Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC), 2017 WL 685570, at *20 (S.D.N.Y. Feb. 21, 2017); *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16 CIV. 3495, 2017 WL 4049253, at *4 (S.D.N.Y. June 28, 2017).

---

[3] Judicial notice is appropriate at any time during a proceeding, Fed. R. Evid. 201(d), including on a motion to dismiss. *EGB I*, 2020 WL 4273811, at *5. "[T]he Court may consider [matters of which the Court takes judicial notice] when adjudicating a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 75 (S.D.N.Y. 2015).

Respectfully submitted,

| **LABATON SUCHAROW LLP** | **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | **LOWEY DANNENBERG, P.C.** |
|---|---|---|
| By: *s/* Gregory S. Asciolla<br>GREGORY S. ASCIOLLA<br>140 Broadway<br>New York, New York 10005<br>Tel: (212) 907-0700<br>gasciolla@labaton.com | By: *s/* Kristen M. Anderson<br>KRISTEN M. ANDERSON<br>230 Park Avenue, 17th Floor<br>New York, New York 10169<br>Tel: (212) 223-6444<br>kanderson@scott-scott.com | By: *s/* Vincent Briganti<br>VINCENT BRIGANTI<br>44 S. Broadway<br>White Plains, New York 10601<br>Tel: (914) 997-0500<br>vbriganti@lowey.com |

CHRISTOPHER M. BURKE
600 W. Broadway, Suite 3300
San Diego, California 92101
Tel: (619) 798-5300
cburke@scott-scott.com

**BERMAN TABACCO**

By: *s/* Joseph J. Tabacco, Jr.
JOSEPH J. TABACCO, JR.
TODD A. SEAVER (admitted *pro hac vice*)
44 Montgomery Street, Suite 650
San Francisco, California 94104
Tel.: (415) 433-3200
jtabacco@bermantabacco.com
tseaver@bermantabacco.com

*Counsel for San Bernardino County Employees' Retirement Association*

*Interim Co-Lead Counsel*