**SHEARMAN & STERLING LLP**

599 Lexington Avenue
New York, NY 10022-6069
+1.212.848.4000

rschwed@shearman.com
212.848.5445

<u>Via ECF</u>

November 8, 2021

The Hon. Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

RE: <u>*In re European Gov't Bonds Antitrust Litig.*</u>, No. 19-cv-2601-VM (S.D.N.Y.)

Dear Judge Marrero:

We write on behalf of Moving Defendants[1] to respectfully inform the Court of a recent decision that strongly supports the proposed motions to dismiss the FAC (Dkt. No. 206). On October 25, 2021, Judge Liman dismissed with prejudice a putative class action complaint alleging that several financial institutions conspired to boycott trading platforms in the market for odd-lot corporate bonds in violation of the Sherman Act. *See Litovich v. Bank of Am. Corp.*, No. 20-cv-3154, 2021 WL 4952034 (S.D.N.Y. Oct. 25, 2021) ("*Odd-Lots*," attached as Ex. A.). The decision is directly relevant to Moving Defendants' proposed motions because (i) in assessing the plausibility of the alleged conspiracy, it rejected the same types of average and aggregate statistical analyses relied on by Plaintiffs here, and (ii) in assessing whether the claims were timely, it held that the plaintiffs could not establish fraudulent concealment based on the same general statements in the defendants' corporate codes of conduct on which Plaintiffs rely here.

**Statistical Analyses**

Plaintiffs in *Odd-Lots* presented the same types of statistical analyses as Plaintiffs allege in the FAC: (a) comparisons between defendants' aggregate average spreads and non-defendants' aggregate average spreads, and (b) comparisons between individual defendants' average spread differentials and non-defendants' aggregate average spread differentials. The court found these comparisons did not support plaintiffs' claims and dismissed the complaint, concluding that plaintiffs "fail[ed] to present any statistical evidence . . . plausibly suggesting that Defendants

---

[1] "Moving Defendants" are all defendants named in the Fourth Amended Complaint ("FAC," Dkt. No. 146) except State Street Bank and Trust Company and State Street Corporation.

**SHEARMAN.COM**

Shearman & Sterling LLP is a limited liability partnership organized in the United States under the laws of the state of Delaware, which laws limit the personal liability of partners.

November 8, 2021

each, or all . . . were not competing amongst each other." Ex. A at *20.  Plaintiffs' statistical analyses in the FAC are similarly deficient.

***First***, the *Odd-Lots* court found that statistical analyses purporting to show that average spreads for "the Defendant group as a whole" were wider than average spreads for "the non-Defendant group as a whole" "do not say anything meaningful about the role of any individual Defendant and thus about the group of Defendants as a whole." *Id.*  FAC Figure 11 suffers from the same fatal flaw.  *See* FAC ¶¶ 296-99, Fig. 11.  As in *Odd-Lots*, Figure 11 simply "compare[s] *average* spreads . . . amongst *all* Defendants to *average* spreads . . . amongst *all* non-Defendant dealers," without "analyz[ing] whether each Defendant on average charges more for a[] . . . transaction than every non-Defendant or even whether a majority of Defendants charge more than the average non-Defendant." Ex. A. at *20.  The use of averages makes it "impossible to know from Plaintiffs' statistics whether the average for the Defendant group is driven by one particular dealer who charges a higher spread than the remainder and whose trades drive the average or whether the average for the non-Defendant group too is driven by one or a small group of dealers who charge a lower spread."  *Id.*  Figure 11 thus provides no support for Plaintiffs' claims.[2]

***Second***, the *Odd-Lots* court held that the comparison of spread differentials for individual defendants to a single average of *all* non-defendants' spread differentials did not cure these flaws.  *Id.*  By "utiliz[ing] an average of all non-Defendant dealers as a comparator," the plaintiffs gave the court "no way to infer from this that each Defendant's pricing differentials were higher than those of every non-Defendant dealer, or even that each Defendant's pricing differentials were higher than those of a majority of non-Defendant dealers." *Id.*  Here, Figure 12—the FAC's only Defendant-specific analysis—suffers from the same flaw because it purports to compare the average spreads in Italian EGBs for seven individual Defendants to a single average figure for all "Non-Defendant Dealers." FAC ¶¶ 300-04, Fig. 12.  As in *Odd-Lots*, there is no way to tell, for example, whether this single average figure for Non-Defendant Dealers is skewed by an outlier, or whether any of these dealers experienced an even greater change in spreads than all of the Defendants.

***Third***, the *Odd-Lots* court also held that the analysis that included individual defendant spreads suffered from additional defects because the table omitted two defendants and because "the significant disparity between the numbers presented for each of the eight individual Defendants included in the table undercuts the assumption that Defendants' odd-lot pricing was supracompetitive . . . ." Ex. A at *20.  The court observed, for example, that this analysis

---

[2] These flaws are highlighted by comparing different versions of Plaintiffs' averages across different iterations of the Complaint.  In the Third Amended Complaint's ("TAC," Dkt. No. 87) version of Figure 11, for example, Plaintiffs included Citi, Jefferies, and JPMorgan in the "non-Defendant" group and argued that these non-Defendants' average spreads were benign compared to the Defendants' spreads.  After adding these three entities as defendants in the FAC, Plaintiffs moved their bid-ask spread averages into the defendant bucket and argued that the average spreads of all Defendants, now including Citi, Jefferies and JPMorgan, were suspiciously wide.  Plaintiffs thereby demonstrated the very flaw that caused the court to reject the averages in *Odd-Lots*: they say nothing about whether any entity (or all entities) should be in either group and can be manipulated to conform to any alleged theory of competitive impact a plaintiff wishes to posit.

November 8, 2021

showed one defendant's average markdown as 83.7 basis points whereas another defendant's average markdown was 27.3 basis points, and that "[t]his pricing disparity is consistent with a market in which Defendants competed for odd-lot business by improving execution prices . . . ." *Id.* (citation and internal alterations omitted). Similarly, Figure 12 in the FAC omits three defendants and, for those defendants it does include, shows a wider variation than the variation in *Odd-Lots*, with the average reduction in spreads for Italian EGBs ranging from 3.51% to 66.42%. FAC ¶¶ 300-04, Fig. 12. As in *Odd-Lots*, the omission of some Defendants and the wide variation across the remaining Defendants suggest a competitive market, not a conspiracy.

In short, *Odd-Lots* underscores the inherent flaws in using the same type of averages that were identified in Moving Defendants' pre-motion letters. As shown in Moving Defendants' pre-motion letters, just moving certain New Defendants from the non-Defendant category in the TAC to the Defendant category in the FAC caused Plaintiffs to do an about-face regarding what statistical information is indicative of a conspiracy. And in making those changes, Plaintiffs undermined the economic analyses on which the Court relied in assessing the Third Amended Complaint. *See* TAC Defendants' Pre-Motion Letter (Dkt. No. 206-1). The statistical analyses in the FAC thus do not provide a plausible basis to infer wrongdoing.

**Statute of Limitations**

The *Odd-Lots* court also held that the plaintiffs' claims were time-barred and rejected the same code-of-conduct-based fraudulent concealment allegations made here. The plaintiffs there alleged that defendants took "affirmative steps to throw Plaintiffs off of their scent" by adopting "detailed codes of conduct promising" that "*their operations were above-board, providing a false sense of security to corporate bond investors*." Ex. A at *28 (emphasis added). The *Odd-Lots* court held that the plaintiffs could not rely upon those statements to excuse their failure to uncover the purported conspiracy for two independent reasons: (i) "there is no evidence here that Defendants' general representations of ethical behavior in their codes of conduct were directed at Plaintiffs" and (ii) "general statements about . . . compliance with ethical norms are . . . 'too general to cause a reasonable investor to rely upon them.'" *Id.* (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014)).

Here, Plaintiffs' code-of-conduct-based fraudulent concealment allegations are indistinguishable from the allegations in *Odd-Lots*. *See* FAC ¶ 380 ("Defendants also took active steps to conceal evidence of their misconduct [because their] codes of conduct represented that *their operations were above board, providing a false sense of security to unwitting investors*.") (emphasis added). Moreover, Defendants' codes of conduct are just as general and were made to just as wide of an audience. Therefore, Plaintiffs cannot excuse their failure to conduct due diligence based upon Defendants' general statements about compliance with the law because those statements were not made directly to Plaintiffs and are far too general for a reasonable investor to rely upon them.

November 8, 2021

Respectfully submitted,

/s/ Richard F. Schwed

Richard F. Schwed
*Attorney for Bank of America, N.A. and Merrill Lynch International*