**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE EUROPEAN GOVERNMENT BONDS
ANTITRUST LITIGATION

No. 19-cv-2601 (VM)

**REPLY MEMORANDUM OF LAW OF DEFENDANTS CITIGROUP**
**GLOBAL MARKETS LIMITED, CITIGROUP GLOBAL MARKETS INC.,**
**JEFFERIES INTERNATIONAL LIMITED AND JEFFERIES LLC**
**IN FURTHER SUPPORT OF MOTION FOR RECONSIDERATION**

-i-

## TABLE OF CONTENTS

**Page**

I.      THE COURT OVERLOOKED THAT THE CHATS INVOLVING CITI
        AND JEFFERIES DO NOT SUPPORT PLAINTIFFS' ALLEGATIONS................ 1

II.     THE COURT OVERLOOKED THE SIGNIFICANCE OF CITI'S AND
        JEFFERIES'S ABSENCE FROM THE EC INVESTIGATION AND
        DECISION.................................................................................................................... 5

III.    THE COURT OVERLOOKED THAT FIGURE 12 DOES NOT
        ESTABLISH PLAUSIBILITY AS TO CITI AND JEFFERIES ................................ 7

IV.     THE COURT OVERLOOKED THAT JEFFERIES WAS NOT A
        PRIMARY DEALER OF ITALIAN GOVERNMENT BONDS.............................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011)......................................................................................................1, 4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)............................................................................................................1

*In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*,
    328 F. Supp. 3d 217 (S.D.N.Y. 2018)..........................................................................................8

*In re European Govt. Bonds Antitrust Litig.*,
    No. 19 CIV. 2601 (VM), 2020 WL 7321056 (S.D.N.Y. Dec. 11, 2020) ....................................4

*Mandala v. NTT Data, Inc.*,
    975 F.3d 202 (2d Cir. 2020).........................................................................................................10

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013).........................................................................................................9

*Phoenix Light SF Ltd. v. Bank of New York Mellon*,
    No. 14-CV-10104 (VEC), 2020 WL 2765044 (S.D.N.Y. May 28, 2020)....................................5

*Salerno v. City of Niagara Falls*,
    No. 20-3749-CV, 2021 WL 4592138 (2d Cir. Oct. 6, 2021)........................................................1

*In re Treasury Sec. Auction Antitrust Litig.*,
    No. 15 MD 2673 (PGG), 2022 WL 976357 (S.D.N.Y. Mar. 31, 2022) .................................4, 8

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992).......................................................................................................5

Plaintiffs' opposition to Citi and Jefferies's motion for reconsideration ("Pl. Br.," Dkt. 248) fails to account for several dispositive deficiencies in the FAC that the Court overlooked in its March 14, 2022 Decision and Order ("Order," Dkt. 236).[1]  Plaintiffs do not dispute that, absent any "plus factors," the parallel conduct allegedly reflected in Figure 12 is insufficient to state a claim.  The only potential "plus factors" in the Order are one Citi chat and two Jefferies chats, but the Court does not appear to have considered what those chats say on their face, and they do not support Plaintiffs' conspiracy claims.  Further, a copy of the actual Citi chat now dispositively shows that it does not even relate to EGB trading at all.  Plaintiffs also do not explain why Citi and Jefferies's absence from the EC Decision does not negate the plausibility of their claim.  The Court should reconsider and dismiss Citi and Jefferies.

I.      **THE COURT OVERLOOKED THAT THE CHATS INVOLVING CITI AND JEFFERIES DO NOT SUPPORT PLAINTIFFS' ALLEGATIONS**

In their moving brief ("MFR Br.," Dkt. 239), Citi and Jefferies showed that the Court overlooked that the substance of the chats involving their traders not only fails to support Plaintiffs' conclusory claim but also contradicts it.  *Salerno v. City of Niagara Falls*, No. 20-3749-CV, 2021 WL 4592138, at *1 (2d Cir. Oct. 6, 2021) (the court "may consider documents 'attached to the complaint' or 'incorporated into [it] by reference'") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  In this Circuit, "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true."  *Amidax Trading Grp. v. S.W.I.F.T.*

---

[1] Unless defined herein, all capitalized terms have the meanings ascribed to them in Citi and Jefferies's memorandum of law in support of their motion to dismiss (Dkt. 239).

*SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).  That is the case with these chats, and the claims should have been dismissed on that basis.[2]

Critically, the one chat pleaded in the FAC with respect to a Citi trader now dispositively shows that the chat is not a plus factor for Citi.[3]  After Plaintiffs refused Citi's request for a copy of the chat, Citi was able to locate it internally.  *See* Declaration of Zoeb Sachee ("Sachee Decl."), Ex. A.[4]  The unredacted portions of the chat show that the one Citi employee involved was Marco Zanoni.  In 2011, Mr. Zanoni worked in London as a Short Term Interest Rate Trading (STIRT) trader at CGML.  Sachee Decl. ¶ 8.  Mr. Zanoni's responsibilities ***did not include trading in EGBs; nor was he permitted to trade EGBs***.  *Id.*  Further, another chat participant is an employee from Tullett Prebon, which is an interdealer broker, and also not a trader of EGBs.  *Id.*, Ex. A.  To be a "plus factor," the chats—at a minimum—must logically be related and causally connected to the EGB conspiracy alleged in the FAC.  This chat is not.  It does not relate to any EGB trading by a CGML EGB trader, and, therefore, by definition it cannot support the Court's finding that it is a "plus factor" supporting the allegations as to Citi.[5]

---

[2] The fact that Citi and Jefferies's arguments on reconsideration are consistent with arguments they previously raised does not necessarily mean that the Court considered those prior arguments.  Pls. Br. at 21.  In opposing UniCredit's arguments as to Figure 12, Plaintiffs take the opposite position—that UniCredit's arguments are invalid because, Plaintiffs say, they were raised for the first time in UniCredit's motion for reconsideration.  Pls. Br. at 19.  The Court should reject Plaintiffs' "heads I win, tails you lose" proposition.

[3] As noted in our opening brief, Citi asked Plaintiffs' counsel for a copy of the chat before filing the motion for reconsideration, but they denied the request.  MFR Br. at 10 n.3.  Citi also searched its internal records, but was unable to locate the document.  It was only after filing the motion for reconsideration and after substantial additional effort that Citi was able to locate the copy referenced herein.

[4] The FAC alleges that the messages cited in paragraph 259 were exchanged on October 27, 2011 but as reflected in Exhibit A, the messages in fact were exchanged on November 1, 2011.  Further, although the chat as alleged in the FAC appears in English, the original chat is primarily in Italian.  Exhibit A reflects the languages as they originally appear in the chat.

[5] Plaintiffs claim that their "investigation determined, and the allegations in the FAC reflect, the employee of CGMI in the chat is a trader," Pls. Br. at 23 n.13, but notably missing from this statement is any

Because this is the only chat involving Citi in the FAC and the only allegation supporting the

Court's finding of a "plus factor" as to Citi, not reconsidering the Order now that the Court has

this information about this chat and not dismissing Plaintiffs' claim against Citi would result in

manifest injustice.

As to the substance of the two Jefferies chats and one Citi chat (which the Court need not

reach for Citi given that the chat does not even show EGB trading by it), Plaintiffs argue that the

Court analyzed the chats and found the allegations "as a whole 'show coordination between

bidding strategies and sharing of confidential information involving several Defendants,

including Citi and Jefferies." Pl. Br. at 21.  But the Order does not reflect that the Court

considered what the chats in fact say.  Instead, it appears that the Court accepted Plaintiffs'

conclusory characterization of the chats without independently analyzing their content.  *Compare*

Order at 55 ("The chat transcripts quoted in the FAC show coordination between bidding

strategies and sharing of confidential information involving several Moving Defendants") *with*

FAC ¶¶ 240 ("[t]his reflects impermissible coordination of bidding strategies among competing

firms"), 264 (characterizing chats as "improper sharing of confidential proprietary customer"

information).  In so doing, the Court overlooked that the chats show nothing more than ordinary

and lawful information exchanges, and the FAC's putative excerpts from the alleged chats

(which, as it turns out, were translated in part by Plaintiffs) are inconsistent with and even

contradicts Plaintiffs' descriptions of them.

Notably, nowhere in the Opposition do Plaintiffs even try to demonstrate how the

substance of *any* of the chats supports their conclusory descriptions.  Instead, Plaintiffs argue

that Citi and Jefferies "impermissibly 'ask[s] the Court to dispute the facts alleged in the [FAC]

---

reference to EGBs.  Either Plaintiffs did not investigate whether Mr. Zanoni traded EGBs, or they learned
that he did not but nevertheless represented to this Court that he did.

and reconsider certain inferences drawn therefrom,'" Pl. Br. at 22 (citing *EGB II*, 2020 WL

7321056, at \*3), but the reconsideration motion merely asks the Court to consider whether the

chats actually reflect any communications supporting Plaintiffs' claim.  MFR Br. at 9.  The Court

should not accept inferences unsupported by well-pleaded facts, and should reject inferences

contradicted by documents relied on by the FAC.  *Amidax*, 671 F.3d at 147.  Unlike Plaintiffs'

characterizations of dozens of chats involving other defendants, the two chats involving Jefferies

and one chat involving Citi (which, as now shown, does not even relate to EGB trading) do not

reflect the sharing of confidential information—much less agreements on price, volume, or

anything else—and thus do not support any plausible inference in Plaintiffs' favor.  They instead

represent benign banter on general market trends or market color, which neither suffices to plead

an antitrust conspiracy nor has any nexus with the misconduct alleged in the FAC.  *In re*

*Treasury Sec. Auction Antitrust Litig.*, No. 15 MD 2673 (PGG), 2022 WL 976357, at \*17

(S.D.N.Y. Mar. 31, 2022) ("*Treasury*").  As in the recent *Treasury* case, the chats also reference

"trades that had already been executed" or "express uncertainty about the market," *id.* at \*18, *see*

MFR Br. at 9-11.  Indeed, Judge Gardephe found that similar chats ***undermined*** allegations "that

the chat[s] [were] somehow intended to facilitate coordinated bidding," *Treasury* at \*18, because

they contain inherently ***backward-looking*** information.  Nothing in the Citi or Jefferies chats is

actionable.  Plaintiffs do not even attempt to establish otherwise.

Finally, Plaintiffs effectively concede that the Court treated the Citi and Jefferies chats

differently from other defendants' chats but contend that "inconsistent treatment alone" does not

warrant reconsideration.  Pl. Br. at 24.  Plaintiffs' argument ignores that such inconsistent

treatment indicates that the Court overlooked the substance of the Citi and Jefferies chats.  Those

chats are no more supportive of a conspiracy than the NatWest and RBC chats, and consistent

treatment should have led to the dismissal of Citi and Jefferies as well.

## II. THE COURT OVERLOOKED THE SIGNIFICANCE OF CITI'S AND JEFFERIES'S ABSENCE FROM THE EC INVESTIGATION AND DECISION

As Citi and Jefferies explained in their moving brief, the Court's Order overlooked the

significance of the fact that neither Citi nor Jefferies is named in or implicated by the EC

investigation or the EC Decision.  MFR Br. at 5-9.  In response, Plaintiffs assert that the Court

"took judicial notice of the EC Decision and referred to it in its analysis of the sufficiency of the

FAC's allegations."  Pl. Br. at 8.  But that is the point:  the Court relied on the EC Decision in

assessing the claims against other defendants but overlooked that Citi and Jefferies were

strikingly absent from this critical adjunct to Plaintiffs' complaint.  While Plaintiffs portray Citi

and Jefferies's motion as expressing a "mere disagreement" with the Court's Order (Pl. Br. 13),

they concede that the Court did not "explicitly mention the EC Decision in connection with its

analysis of the FAC's allegations against Citi and Jefferies" (*id.*)—in other words, the Court

overlooked this point.

The Second Circuit recognizes that reconsideration is justified when, as here, there is a

"need to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l*

*Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *see Phoenix Light SF Ltd. v. Bank of New*

*York Mellon*, 14-CV-10104 (VEC), 2020 WL 2765044, at *3 (S.D.N.Y. May 28, 2020) (granting

motion for reconsideration where Court overlooked aspect of expert's methodology in ruling on

motion to exclude testimony).  Here, it is manifestly unjust that Citi and Jefferies are the only

defendants remaining in this action who were notably ***not*** named in the EC Decision—of which

Plaintiffs asked the Court to take judicial notice—while the Court dismissed other defendants the

5

EC determined, after a comprehensive investigation, had participated in an alleged conspiracy. Pl. Br. at 13.

Plaintiffs made the EC Decision central to their claim. They updated the Court on developments in the EC investigation several times (Dkts. 203, 217) and, in opposing the motion to dismiss, they argued that the EC Decision "bears on the sufficiency of Plaintiffs' conspiracy allegations," Dkt. 217, at 3. The Court, accepting this contention, held that the "starting point for Plaintiffs' claims is the European Commission's" investigation. Dkt. 115 at 51. The EC investigation and the EC Decision are thus the very foundation of the FAC. MFR Br. at 6-7. It logically follows that the ***absence*** of a defendant from the EC's exhaustive report is an important factor in determining the plausibility of allegations against that defendant. Plaintiffs do not engage with this argument.

Instead, as to Citi and Jefferies, Plaintiffs pivot from the EC Decision they previously embraced and speculate that "the scope of the alleged conspiracy is not governed exclusively by the findings in the [EC's] investigation and EC Decision." Pl. Br. at 14. Effectively, Plaintiffs argue that the burden is somehow on Citi and Jefferies to prove a negative—that they were ***not*** investigated by the EC or implicated by the EC Decision that is the cornerstone of Plaintiffs' claims.[6] That is not the law. Indeed, Plaintiffs do not cite a single case that supports relying on the EC Decision to support claims against defendants named therein, but avoids the corollary

---

[6] In a footnote, Plaintiffs speculate, without any factual support, that unspecified confidential portions of the EC Decision might "refer to or describe Citi's or Jefferies' involvement in any facet of the cartel." Pl. Br. at 13 n.6. Plaintiffs do not cite any news articles or public statements by Citi or Jefferies suggesting that either was ever the subject of the EC investigation. It is implausible that Citi or Jefferies were subjects of the investigation but somehow not named in the EC Decision, which references other banks dozens or hundreds of times each. Likewise, the EC's summary of its decision published "the names of the parties and the main content of the decision" yet never references Citi or Jefferies. Dkt. 217-2, preamble.

principle—that Citi and Jefferies's omission from the EC Decision fatally undermines their

claims against those defendants.

Contrary to Plaintiffs' contention, that logical and commonsense principle is not "a new

rule in antitrust law" (Pl. Br. at 2), but rather is supported by ample precedent.  Indeed, Plaintiffs

themselves concede that "a court may not infer a defendant's involvement in a conspiracy based

solely on general allegations of a government action or investigation."  Pl. Br. at 14.  This

proposition has even greater force when entities, like Citi and Jefferies, are not even mentioned

as alleged conspirators or the subjects of an investigation.  *See* MFR Br. at 8 (collecting cases).

Plaintiffs cannot have it both ways.  They cannot rely heavily on the EC investigation and

resulting EC Decision to plead their claims against some defendants, while ignoring that the

investigation did not implicate Citi or Jefferies in any way.

III.    **THE COURT OVERLOOKED THAT FIGURE 12 DOES NOT ESTABLISH PLAUSIBILITY AS TO CITI AND JEFFERIES**

Citi and Jefferies explained in their moving brief that the Court's Order erroneously

concluded that Figure 12 of the FAC supports the plausibility of the claims against them.  MFR

Br. at 13-14.  The Court recognized, and Plaintiffs do not dispute, that Figure 12 is intended to

show parallel pricing by primary dealers of Italian bonds only.  Order at 64, 74.  Even assuming

that the disparate variation in bid-ask spreads among the defendants reflected in Figure 12 shows

parallel pricing (and it does not), a finding of conscious parallelism requires "circumstantial

evidence and 'plus factors' indicative of conspiracy."  Order at 53.  The only plus factor

attributed to Citi and Jefferies are the chats discussed above, which are fully consistent with

independent and unilateral conduct, and are not tethered in any way to Figure 12, bid-ask

spreads, or, as to Citi, even EGB trading at all.  Neither the Court's Order nor Plaintiffs'

opposition establishes any connection between the alleged parallel conduct reflected in Figure 12

and the content of the chats.  That is fatal to Plaintiffs' argument.  *See In re Commodity Exch., Inc., Gold Futures & Options Trading Litig*., 328 F. Supp. 3d 217, 228 (S.D.N.Y. 2018) (granting motion to dismiss where there was no "connection between [the plus factor] and the price-fixing conspiracy alleged").

While Figure 12 purports to show a narrowing of bid-ask spreads for Italian government bonds from *2012 to 2013* for certain defendants, whose data happened to be available to Plaintiffs (FAC ¶ 300), the EC Decision states that the alleged "infringement [by others] took place in the period between *2007 and 2011*."  EC Decision ¶ 1 (emphasis added).  In recently dismissing a similar antitrust claim against primary dealers of U.S. Treasury securities, Judge Gardephe  noted that "lengthy time intervals" before and after the alleged conspiracy period "blunt any inferences that may be drawn from the data, as there likely have been other trends affecting the Treasuries market during these time periods." *Treasury* at *16.  That is true here too.

Seeking to avoid this temporal disconnect, Plaintiffs argue that "Moving Defendants cannot read into the EC Decision a conclusion that *no misconduct* continued into 2012 because . . . a government regulator's prosecutorial decisions are not affirmative evidence that the misconduct alleged in a complaint did not happen."  Pl. Br. at 18 (emphasis in original).  Those arguments fail because neither Citi nor Jefferies were implicated by the EC in any misconduct between 2007 and 2011—or for any other period, for that matter.  Accordingly, Plaintiffs' speculation that Citi and Jefferies's alleged "misconduct *continued* into 2012" (*id.*) is without support in any allegation in the FAC or the EC Decision itself.

Plaintiffs also respond with the strawman argument that "the law does not require plaintiffs to show that all conspirators charged the same price."  Pl. Br. at 21.  But Figure 12 does

not show "prices" of Italian government bonds.  It purports to show (widely varying) relative

changes in bid-ask spreads year to year.  Figure 12 does not account for a myriad of

dealer-specific reasons for why bid-ask spreads for Italian bonds might narrow over time for

certain entities (*e.g.*, Citi and Jefferies) but remain steady or widen for others, in varying degrees.

It is equally plausible that the data in Figure 12 reflects differences in dealers' perceptions of

market conditions and the specific risks associated with Italian bonds.  *See Mayor & City

Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 137 (2d Cir. 2013) ("'[S]uch factors

in a particular case could lead to an equally plausible inference of mere interdependent behavior,

*i.e.*, actions taken by market actors who are aware of and anticipate similar actions taken by

competitors, but which fall short of a tacit agreement.'")  These factors have no bearing on

claims of collusion among dealers, especially one full year ***after*** the conclusion of the conspiracy

allegedly involving entities other than Citi and Jefferies.  MFR Br. at 13-14.

In addition, as discussed *infra* § IV, the gravamen of Plaintiffs' claims is that primary

dealer-defendants colluded in the secondary market to "artificially inflate[ ] prices" in order to

"recoup the costs of colluding" in the primary markets.  FAC ¶ 290.  The secondary market

statistics identified in Figure 12 do not, and cannot, support an inference that Jefferies' bid-ask

spreads reflect its participation in any purported conspiracy because Jefferies was not a primary

dealer of Italian bonds to begin with.  It therefore could not have acquired Italian bonds in the

primary market and then re-sold them in the secondary market at purportedly "inflated prices."

FAC ¶ 290.  Indeed, if Plaintiffs' allegations that primary dealers inflated secondary market

prices are credited, the narrowing of Jefferies' bid-ask spreads reflected in Figure 12 shows only

that Jefferies was no longer buying bonds at purportedly inflated prices.  Comparing Jefferies's

bid-ask spreads to those of primary dealers of Italian bonds, and quantifying variations in

Jefferies's spreads from one year to the next, is comparing apples to oranges, and certainly does

not establish the plausibility of Plaintiffs' claims against Jefferies. *See Mandala v. NTT Data,*

*Inc.*, 975 F.3d 202, 210 (2d Cir. 2020) ("[S]tatistical analysis must, at the very least, focus on the

disparity between appropriate comparator groups.").

**IV.   THE COURT OVERLOOKED THAT JEFFERIES WAS NOT A PRIMARY
       DEALER OF ITALIAN GOVERNMENT BONDS**

As Jefferies explained (MFR Br. at 14-16) and as Plaintiffs concede (Pl. Br. at 17-18), the

Court erred in inferring that Jefferies was a primary dealer of Italian government bonds.  Order at

63-64 (citing FAC ¶ 294).  Plainly, the Court understood that the data in Figure 12 was intended

to compare bid-ask spreads of ***primary dealers*** of Italian bonds to those of "non-defendant

***dealers***," whose spreads purportedly widened.  Order at 64.  The fact that Jefferies was only a

secondary market participant for Italian bonds undermines Plaintiffs' entire theory of

plausibility, which is that "cartel members relied upon their primary dealer status to acquire

EGBs by rigging issuer auctions."  Pl. Br. at 17.  Indeed, if these allegations are true, then it

follows that Jefferies was ***harmed***, and did not benefit from, alleged collusion among primary

dealers.

Plaintiffs contend that the Court addressed this argument in a decision resolving a motion

to dismiss made by Natixis before Jefferies was added to this case.  Pl. Br. at 17.  The Court's

prior ruling concerning Natixis is irrelevant for this simple reason that Natixis is named in the

EC Decision—a fact the Court determined to be a "plus factor"—while Jefferies is not.  Neither

Jefferies nor Citi is named in the EC Decision, and Jefferies is the only Defendant left in this

case that also was not a primary dealer of Italian bonds.  That is manifestly unjust.

Dated:  April 28, 2022

/s/ Roger A. Cooper
Lev L. Dassin
Roger A. Cooper
Andrew Weaver
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
ldassin@cgsh.com
racooper@cgsh.com
aweaver@cgsh.com

*Attorneys for Defendants Citigroup Global
Markets Inc. and Citigroup Global Markets
Limited*


/s/ Kenneth I. Schacter
Kenneth I. Schacter
Jawad Muaddi
Elizabeth Buechner
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Fax: (212) 309-6001
kenneth.schacter@morganlewis.com
jawad.muaddi@morganlewis.com
elizabeth.buechner@morganlewis.com

Jon R. Roellke
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue N.W.
Washington, D.C.  20004
Telephone: (202) 739-3000
Fax: (202) 739-3001
jon.roellke@morganlewis.com

*Attorneys for Defendants Jefferies
International Limited and Jefferies LLC*