UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE EUROPEAN GOVERNMENT BONDS ANTITRUST LITIGATION | Lead Case No. 1:19-cv-2601 (VM)<br><br>Hon. Victor Marrero |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF NATIXIS S.A.'S MOTION FOR RECONSIDERATION**

The Court should grant Natixis's Motion for Reconsideration, Dkt. No. 242,[1] as Plaintiffs' Omnibus Opposition, Dkt. No. 248 (the "Opposition" or "Opp."), fails to refute that the Court overlooked controlling facts that compel dismissal of Natixis.

## ARGUMENT

It is manifestly unjust for Natixis to remain in this action solely because it is included in the statistical analysis set out in Figure 12. Plaintiffs' claim is that Defendants colluded in the primary markets to overbid and thereby secure EGBs that they could then resell to investors in the secondary markets at supracompetitive prices. The FAC offers no direct evidence in support of that claim. Instead, Plaintiffs rely on statistical analyses (many of which the Court rejected), the fact that several Defendants are named in the EC Decision, and chats. The Court declined to dismiss Plaintiffs' claim against Natixis because it is (fortuitously) among the Defendants included in Figure 12. But, as the FAC makes clear, Figure 12 purports to show that the Defendant ***primary dealers*** of Italian EGBs colluded, and Plaintiffs concede that Natixis was not a primary dealer of Italian EGBs. With no Italian EGBs acquired at auction to resell, Natixis, if anything, was the victim of the Italian EGB conspiracy Plaintiffs allege because, under Plaintiffs' theory, Natixis would have acquired Italian EGBs at inflated prices. Moreover, the EC Decision—which the Court found constitutes a "plus factor" that supports Figure 12—*undermines* Figure 12 as to Natixis because it found that any relevant conduct at Natixis ended in 2009—years before the 2012-2013 period analyzed in Figure 12. Because the Court overlooked these controlling facts demonstrating that Figure 12 cannot support an inference of conspiratorial parallel conduct by Natixis with the Defendants in Figure 12 (or anyone else), Natixis respectfully requests that the

---

[1] Unless otherwise specified, all internal quotation marks and citations are omitted and capitalized terms are as defined in Natixis's Memorandum of Law in Support of Motion for Reconsideration, Dkt. No. 243 (the "Motion" or "Mot.").

Court reconsider its Decision and, upon reconsideration, grant its motion to dismiss the FAC.

### A. Figure 12 Does Not Support Plaintiffs' Claim Against Natixis Because It Was Not a Primary Dealer in Italian EGBs.

Figure 12 cannot support an inference of conspiracy against Natixis because it purports to show collusive conduct by *primary dealers* of Italian EGBs and Natixis was not a primary dealer in Italian EGBs. *See* FAC at 52, Figure 4.

Plaintiffs concede that the Court overlooked this controlling fact. In an effort to overcome this error, Plaintiffs point out that in prior rulings addressing a different pleading (Plaintiffs' Third Amended Complaint, Dkt. No. 87), the Court acknowledged that Natixis was not a primary dealer in Italian EGBs. Opp. at 3, 17. But Plaintiffs' response does not refute that the Court's Decision relied on Figure 12 to support an inference of conspiracy only as to those Defendants that were primary dealers in Italian EGBs. By erroneously concluding that Natixis was a primary dealer in Italian EGBs, the Court incorrectly sustained Plaintiffs' claim against Natixis while dismissing the case against other Defendants that (fortuitously) did not appear in Figure 12. Mot. at 6-7.[2]

Plaintiffs also argue that the Court's oversight is immaterial, contending that Figure 12 supports an inference that Natixis participated in the alleged conspiracy regardless of whether it was a primary dealer of Italian EGBs. Opp. at 17-18. But this newfound argument finds no support in (and is undercut by) the FAC. Plaintiffs cite Figure 4 and paragraph 229 of the FAC. *Id.* But Figure 4 is a chart alleging that Natixis was *not* a primary dealer in Italian EGBs, and paragraph 229 describes the purported rationale for why a *primary dealer* would bid prices up in the primary market. That Plaintiffs can find no support in the FAC, of course, is no surprise. Nothing in the FAC describes—let alone plausibly alleges—how or why Natixis could have conspired with

---

[2] The FAC notes that Defendants not in Figure 12 are omitted because "[q]uote data was not available for [them] during this [2012-2013] time period." FAC ¶ 301 n.22.

2

primary market dealers to inflate the price of Italian EGBs in the primary market (a market in which it did not participate) or in the secondary market (a market in which, under Plaintiffs' theory, Natixis would have purchased bonds at inflated prices, just like other alleged victims of the alleged conspiracy).[3] Although Plaintiffs also cite the Court's prior statement that "not all defendants need to participate in all aspects of a conspiracy," Opp. at 3, that statement lends them no support because Plaintiffs' theory is that "cartel members relied upon their primary dealer status to acquire EGBs by rigging issuer auctions." *Id*. at 17.  Therefore, *under Plaintiffs' theory Natixis would have been a victim of the alleged conspiracy as to Italian EGBs* because it must have purchased any such EGBs on the secondary markets—presumably from a co-Defendant who allegedly purchased the Italian EGBs on the primary market and then sold them to Natixis on the secondary market at inflated prices.  Indeed, if Plaintiffs' allegations that primary dealers inflated secondary market prices are credited, the narrowing of Natixis's bid-ask spreads in 2013 set out in Figure 12 would merely reflect that Natixis was no longer purchasing Italian EGBs at inflated prices in 2013.

> B. **Figure 12 Does Not Support Plaintiffs' Claim Against Natixis Because It Addresses Alleged Conduct in a Year (2012) When the EC Decision Concluded Natixis Was *Not* Involved in Any Conduct.**

Figure 12 cannot support an inference of conspiratorial parallel conduct by Natixis because the data in Figure 12 relates solely to alleged misconduct in 2012, while the EC decision determined that Natixis did not engage in any conduct after August 2009.  The EC Decision, therefore, cannot be a plus factor supporting Figure 12.  Nothing in the Opposition refutes that the Court overlooked this controlling fact.

*First*, Plaintiffs argue that the Court can ignore the EC Decision because conspiratorial

---

[3] *See D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 11 n.12 (2d Cir. 2017) ("We test the sufficiency of a complaint in response to a Rule 12(b)(6) motion to dismiss, and a party is not entitled to amend its complaint through statements made in motion papers.").

3

conduct *could have* existed in 2012. Unable to point to any factual support for this speculative assertion, Plaintiffs instead argue that "a government regulator's prosecutorial decisions are not affirmative evidence that the misconduct alleged in a complaint did not happen"[4] and "the EC Decision itself does not state that the conspiracy ended in 2011." Opp. at 18. But these arguments are nothing more than a suggestion that Plaintiffs' claim should go forward based on conjecture and speculation, rather than specific and plausible factual allegations of conspiratorial conduct. *See, e.g., Alaska Dep't of Revenue, Treasury Div. v. Manku*, 2021 WL 3027170, at *3 (2d Cir. Jul. 19, 2021) ("[P]laintiffs must allege sufficient facts to show more than a sheer possibility that a defendant has acted unlawfully[.]"). Further, nothing in the nearly 250-page single-spaced EC Decision purporting to detail EGB conduct found by the European Commission indicates that it omitted relevant conduct by Natixis. Instead, the EC Decision explicitly concluded that the "last date[]" on which "Natixis [was] involved in the infringement" was August 6, 2009. Mot. at 6. It makes no sense that the European Commission would have desisted from investigating any other suspect conduct relevant to Natixis after 2009. On the contrary, the European Commission had every incentive to investigate and find infringements as far into the present as possible so that it could avoid statute of limitations bars to imposing fines on Natixis. The European Commission found no such conduct involving Natixis after August 2009 and therefore was unable to impose any fine against Natixis.

---

[4] Plaintiffs attempt to analogize inapt cases from U.S. criminal and regulatory contexts. *In re Lipitor Antitrust Litig.*, 868 F.3d 231 (3d Cir. 2017), and *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002), address the impact on civil litigation of *inaction* by the FTC and DOJ, respectively. Unlike in these cases, the European Commission *did* institute an action and released the nearly 250-page single-spaced EC Decision detailing its findings. *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016), involves the impact on civil litigation of *guilty pleas* in the context of an *ongoing* DOJ criminal investigation, and *In re Local TV Advertising Antitrust Litig.*, 2020 WL 6557665 (N.D. Ill. Nov. 6, 2020), addresses DOJ *consent decrees* signed by defendants. Guilty pleas and consent decrees—which result from negotiations with the government and represent agreements among the parties—are of a different nature from the EC Decision, which is a non-negotiated decision resulting from a foreign investigation that this Court has already described as "final." Op. at 61.

*Second*, Plaintiffs argue that their claim against Natixis is nonetheless plausible because of "the numerous chats the European Commission cites" that involve Natixis and because "Natixis only escaped a substantial penalty because of the limitations applicable to the European Commission." Opp. at 12. Not so. Although the Court held the EC Decision could constitute a "plus factor" supporting an inference of conspiracy, Op. at 62, a "plus factor" can only support an inference of conspiracy if there is a connection between the "plus factor" and suspect parallel conduct. *See Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 139 (2d Cir. 2013) (affirming motion to dismiss and articulating that "even if a plaintiff alleges additional facts or circumstances—what we have previously called 'plus factors'—these facts must still lead to an inference of conspiracy"); *In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig.*, 328 F. Supp. 3d 217, 228 (S.D.N.Y. 2018) (granting motion to dismiss and holding that there must be a "connection between [the plus factor] and the price-fixing conspiracy alleged"). Here, the EC Decision found that Natixis's relevant conduct ended in 2009, and the absence of any chats or findings in the EC Decision involving conduct by anyone at Natixis after August 2009[5] undermines Plaintiffs' contention that Figure 12 demonstrates "a plausible showing of conscious parallelism against" Natixis. Opp. at 2. Moreover, of course, the Court has already recognized that the chats referenced in the EC Decision, by themselves, cannot sustain an antitrust conspiracy cause of action. Op. at 56-57.

*Third*, Plaintiffs contend that Natixis's reconsideration motion prematurely asks the Court to "determine as a matter of law that Natixis withdrew from the conspiracy as of August 2009." Opp. at 11. But that argument is nothing more than an attempt to obscure the applicable pleading standard that Plaintiffs have failed to satisfy. Natixis's Motion is not asking the Court to make

---

[5] The last chat involving Natixis in the EC Decision took place on August 6, 2009. *See* EC Decision ¶¶ 262-64, 778.

5

any withdrawal determination but rather to recognize that Plaintiffs have not adequately alleged that Natixis participated in the alleged conspiracy. According to the EC Decision, only two Natixis employees were even present in any chatroom. The first was disinvited on May 18, 2009 "on the grounds of lack of participation," and the second resigned from Natixis on August 6, 2009 but continued to participate in conduct after taking up employment at WestLB. Mot. at 3 n.3; EC Decision at ¶ 433. The August 2009 resignation of the only Natixis employee active in alleged conduct terminates Natixis's liability, as Natixis cannot be held liable for the apparent continued participation of that former employee while employed at another institution after the employee left the bank in August 2009. *See Kilbride Invs. Ltd. v. Cushman & Wakefield of Pa., Inc.*, 294 F. Supp. 3d 369, 378 (E.D. Pa. 2018) (company "may . . . only be held liable for actions taken in furtherance of the conspiracy that occurred prior to July 28, 2006, at which time [the employee] left his employment with the firm").[6]

*Lastly*, Plaintiffs assert that even if other Defendants' conduct described in the EC Decision ended in 2011, it could have had knock-on effects into 2012 that would be captured by Figure 12. Opp. at 18-19. But this is irrelevant as to Natixis. According to the EC Decision Plaintiffs rely on, the last relevant act by any Natixis employee occurred years before—in August 2009.

### C. Plaintiffs Concede That Natixis's Inclusion in The EC Decision by Itself Falls Short of What Is Required to Adequately Allege an Antitrust Claim Against Natixis.

Plaintiffs do not contest that even if Natixis's inclusion in the EC Decision is properly understood as a "plus factor" (which, as discussed *supra,* Argument § B, it is not) that fact alone cannot sustain a cause of action without adequate allegations of conspiratorial parallel conduct.

---

[6] Under principles of *respondeat superior*, Natixis can be liable only insofar as its employees engaged in prohibited conduct in the course and scope of their employment. *See Chau v. Donavan*, 357 F. Supp. 3d 276, 290 (S.D.N.Y. 2019) ("To state claim for *respondeat superior*, a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests.").

6

As such, Plaintiffs concede that if the Court agrees that Figure 12 does not support an inference that Natixis participated in the conspiracy Plaintiffs allege, then Natixis must be dismissed. Because Figure 12 cannot plausibly support an allegation of conspiratorial parallel conduct on behalf of Natixis, Plaintiffs' claim against Natixis, therefore, must be dismissed.  Mot. at 8.

### D. Natixis's Inclusion in This Case Is Manifestly Unjust.

Because the Court's Decision overlooked controlling facts that compel dismissal of Natixis, it is manifestly unjust for Natixis to remain as a Defendant in this case simply because quote data for Natixis is publicly available such that Natixis is included in Plaintiffs' statistical analysis concerning Italian EGBs set out in Figure 12.  Op. at 67.  As set forth in Natixis's Motion and above, Figure 12 cannot support an inference of conspiratorial conduct by Natixis, nor does the EC Decision constitute a "plus factor" that corroborates the allegations of conspiracy purportedly set out in Figure 12.  If anything, under Plaintiffs' theory of the case, Natixis was a victim of the Italian EGB conspiracy that Plaintiffs allege.  And yet, if Natixis remains in the case, it will be left responsible for an alleged conspiracy that, under Plaintiffs' own theory, victimized Natixis while other alleged conspirator Defendants that *were* primary dealers of Italian EGBs are dismissed because (fortuitously) quote data was not available for them for the 2012-2013 period addressed in Figure 12.

## CONCLUSION

Natixis respectfully requests that the Court reconsider its Decision and, upon reconsideration, grant Natixis's motion to dismiss the FAC, and grant such other and further relief as the Court deems just and proper.

Dated:  April 28, 2022

                                               */s/* Fiona A. Schaeffer
                                               Fiona A. Schaeffer
                                               James G. Cavoli
                                               MILBANK LLP
                                               55 Hudson Yards
                                               New York, New York 10001
                                               Telephone:  (212) 530-5172
                                               Facsimile:  (212) 822-5172
                                               fschaeffer@milbank.com
                                               jcavoli@milbank.com

                                               Mark D. Villaverde
                                               MILBANK LLP
                                               2029 Century Park East, 33rd Floor
                                               Los Angeles, CA 90067-3019
                                               Telephone:  (424) 386-4343
                                               Facsimile:  (213) 892-4743
                                               mvillaverde@milbank.com

                                               *Attorneys for Natixis S.A.*