**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>**IN RE EUROPEAN GOVERNMENT BONDS**</td><td>)</td><td>Lead Case No. 1:19-cv-2601</td></tr>
<tr><td>**ANTITRUST LITIGATION**</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>Hon. Victor Marrero</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF STIPULATION AND**
**AGREEMENT OF SETTLEMENT WITH JPMORGAN CHASE BANK, N.A.,**
**J.P. MORGAN SECURITIES PLC (F/K/A J.P. MORGAN SECURITIES LTD.),**
**AND J.P. MORGAN SECURITIES LLC (F/K/A J.P. MORGAN SECURITIES INC.)**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

PROCEDURAL BACKGROUND ........................................................................................ 2

ARGUMENT ........................................................................................................................ 7

I.     THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT ........................................................................................................... 7

     A.     The Settlement Is Procedurally Fair Because It Was Achieved Through Extensive Arm's-Length Negotiation (Rule 23(e)(2)(B)) ...................................... 8

     B.     The Settlement Is Substantively Fair ............................................................... 9

           1.     The Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor #1) ............................................................ 9

           2.     The Reaction of the Settlement Class (*Grinnell* Factor #2)..................... 10

           3.     The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor #3)..................................................... 11

           4.     The Risks of Establishing Liability and Damages (*Grinnell* Factors #4, 5) .......................................................... 13

           5.     The Risks of Maintaining a Class Through Trial (*Grinnell* Factor #6) .......................................................... 15

           6.     JPMorgan's Ability to Withstand a Greater Judgment (*Grinnell* Factor #7) .......................................................... 15

           7.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation (*Grinnell* Factors #8, 9)..................................................... 16

     C.     The Remaining Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement................................................................... 19

           1.     Rule 23(e)(2)(A) – Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class ............................................. 19

           2.     Rule 23(e)(2)(C) – the Monetary Relief, Cooperation, and Remediation Measures Provided by JPMorgan Are Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors................................................................... 20

           3.     Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to Each Other ................................................ 22

II.     CERTIFICATION OF THE SETTLEMENT CLASS AND APPOINTMENT OF CO-LEAD COUNSEL AS COUNSEL FOR THE SETTLEMENT CLASS IS WARRANTED ................................................................... 23

III.     NOTICE TO THE SETTLEMENT CLASS.............................................................. 23

CONCLUSION.................................................................................................................... 24

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
No. 14-cv-7126 (JMF) (S.D.N.Y. May 11, 2016) ...................................................24

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ..........................................................................11

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
No. 85 Civ. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ....................15

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.
Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ................................................8

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ................................................................................................15

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .................................................................................19

*Garland v. Cohen & Krassner*,
No. 08-CV-4626 (KAM), 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011) ..............15

*Guippone v. BH S&B Holdings LLC*,
No. 09-CV-1029 (CM), 2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016) .................15

*Henry v. Little Mint, Inc.*,
No. 12 Civ. 3996 (CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ...................9

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987) .................................................................................22

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............11, 12

*In re: Commodity Exch. Inc. Gold Futures & Options Trading Litig.*,
No. 14-md-2548 (VEC) (S.D.N.Y. Dec. 9, 2016) .................................................24

*In re Corrugated Container Antitrust Litig.*,
M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322
(5th Cir. 1981)......................................................................................................17

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
No. 13 Civ. 7789 (LGS), 2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016)...............14

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................11

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................. *passim*

*In re GSE Bonds Antitrust Litig.*,
No. 19-CV-1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ....................................8

*In re High-Tech Emp. Antitrust Litig.*,
No. 11-CV-2509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ...........................................12

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................12, 18, 19

*In re Lipitor Antitrust Litig.*,
868 F.3d 231 (3d Cir. 2017) ........................................................14

*In re Local TV Advertising Antitrust Litig.*,
MDL No. 2867, 2020 WL 6557665 (N.D. Ill. Nov. 6, 2020) ...................................13

*In re London Silver Fixing, Ltd. Antitrust Litig.*,
No. 14-md-2573-VE (S.D.N.Y. Nov. 23, 2016) ........................................24

*In re Mexican Gov't Bonds Antitrust Litig.*,
No. 1:18-cv-04673(JPO) (S.D.N.Y. Dec. 16, 2020) ................................................17

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ........................................10, 14, 17

*In re Nissan Radiator/Transmission Cooler Litig.*,
10 CV 7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013) .........................................11

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ...................................18, 19

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013), *reversed and vacated on other grounds*,
827 F.3d 223 (2d Cir. 2016) ........................................................10, 13

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
330 F.R.D. 11 (S.D.N.Y. 2019) ........................................7, 20, 21

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) ........................................16, 18

*In re Processed Egg Prod. Antitrust Litig.*,
284 F.R.D. 278 (E.D. Pa. 2012) ..................................................... *passim*

*In re Vitamin C Antitrust Litig.,*
  No. 06-MD-1738 (BMC), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................10, 15

*In re Warner Chilcott Ltd. Sec. Litig.,*
  No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)............................10

*In re Warner Commc'ns Sec. Litig.,*
  618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................................................14

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,*
  66 F. Supp. 3d 477 (S.D.N.Y. 2015)........................................................................................9

*Maley v. Del Glob. Techs. Corp.,*
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................................................2

*Morris v. Affinity Health Plan, Inc.,*
  859 F. Supp. 2d 611 (S.D.N.Y. 2012).....................................................................................8

*Richardson v. L'Oreal USA, Inc.,*
  951 F. Supp. 2d 104 (D.D.C. 2013) ......................................................................................17

*Schulte v. Fifth Third Bank,*
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................................................17

*Shapiro v. JPMorgan Chase & Co.,*
  No. 11-cv-8331, 2014 WL 1224666 (S.D.N.Y. March 24, 2014) ..........................................16

*Trombley v. Nat'l City Bank,*
  759 F. Supp. 2d 20 (D.D.C. 2011) ........................................................................................17

*Virgin Atl. Airways Ltd. v. British Airways PLC*
  257 F.3d 256 (2d Cir. 2001)..................................................................................................10

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)...............................................................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005).....................................................................................................14

*Wong v. Accretive Health, Inc.,*
  773 F.3d 859 (7th Cir. 2014) ................................................................................................17

*Yim v. Carey Limousine NY, Inc.,*
  No. 14-CV-5883(WFK)(JO), 2016 WL 1389598 (E.D.N.Y. Apr. 7, 2016)............................16

**Statutes, Rules, and Regulations**

15 U.S.C.
  §1.............................................................................................................................................3, 6

iv

Federal Rules of Civil Procedure

Rule 12(b)(2)............................................................................................3, 4, 5, 6
Rule 12(b)(6)............................................................................................3, 4, 5, 6
Rule 23..............................................................................................................8, 22
Rule 23(a)................................................................................................................23
Rule 23(b)................................................................................................................23
Rule 23(c)(1)(B)......................................................................................................23
Rule 23(e).........................................................................................................7, 22
Rule 23(e)(2).....................................................................................7, 8, 19, 22
Rule 23(e)(2)(A)......................................................................................................19
Rule 23(e)(2)(B)........................................................................................................8
Rule 23(e)(2)(C)......................................................................................................20
Rule 23(e)(2)(C)(i)..................................................................................................20
Rule 23(e)(2)(C)(ii)................................................................................................20
Rule 23(e)(2)(C)(iii)...............................................................................................20
Rule 23(e)(2)(C)(iv).........................................................................................20, 21
Rule 23(e)(2)(D)......................................................................................................22
Rule 23(e)(3)....................................................................................................7, 21
Rule 23(f).................................................................................................................10
Rule 23(g)................................................................................................................23
Rule 23(g)(1)(A)(i)-(iv)..........................................................................................23

**Other Authorities**

Joseph M. McLaughlin, MᴄLᴀᴜɢʜʟɪɴ ᴏɴ Cʟᴀss Aᴄᴛɪᴏɴs
§6:23 (18th ed. 2021)............................................................................................22

## INTRODUCTION

If approved, the JPMorgan Settlement[1] will provide Plaintiffs and the Settlement Class with a Settlement Fund of $13 million (plus interest earned between preliminary approval and distribution) and substantial and timely cooperation to aid Plaintiffs in pursuing their claims. JPMorgan's cooperation obligations began upon execution of the term sheet on February 14, 2022. Two days later, JPMorgan began its rolling production to Plaintiffs of chatroom transcripts, as well as European Government Bond transaction data.  Plaintiffs immediately began their review of the JPMorgan chatroom transcripts and have been able to identify what Plaintiffs view as direct evidence of collusive communication among various dealer banks – including both defendants and non-defendants – in the European Government Bond market.  Plaintiffs intend to incorporate the chatroom transcripts provided by JPMorgan into an amended complaint to buttress allegations against the banks named in the Fourth Amended Complaint that the Court recently dismissed, and to potentially add defendants whose participation in the agreement to manipulate prices of European Government Bonds was revealed to Plaintiffs upon reviewing the JPMorgan chatroom transcripts.  Accordingly, this cooperation, provided at an early stage prior to formal discovery, greatly enhances the Settlement's value.

Moreover, this first "icebreaker" monetary settlement represents an excellent recovery for the class and an important strategic milestone.  The settlement is the product of extensive arm's-length negotiations between experienced counsel.  Based on their experience and knowledge of the claims and defenses at issue in this Action, Co-Lead Counsel believe that the JPMorgan

---

[1]     Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement with JPMorgan Chase Bank, N.A., J.P. Morgan Securities plc (f/k/a J.P. Morgan Securities Ltd.), and J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.) (the "JPMorgan Stipulation").

Settlement is in the best interests of the Settlement Class. *See Maley v. Del Glob. Techs. Corp*., 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) (stating that "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").[2] Each Plaintiff also supports the JPMorgan Settlement.

Apart from the monetary terms, the JPMorgan Stipulation is essentially identical to the Stipulation and Agreement of Settlement with State Street Corporation and State Street Bank and Trust Company (together, "State Street") (ECF No. 209). Any differences are inconsequential to the class action settlement process. Because of the similarities between the two settlements and to promote efficiency, Plaintiffs propose combining notice to the Settlement Class of the JPMorgan and State Street settlements, as well as any other settlements with other Defendant(s) that may be reached by the notice date. The Court has entered an order deferring notice of the settlement with State Street until September 12, 2022. ECF No. 233. Therefore, Plaintiffs respectfully request that the Court also defer notice of the JPMorgan Settlement until September 12, 2022.

As discussed more fully below, the JPMorgan Settlement provides valuable consideration and cooperation to the Settlement Class and should be approved.

**PROCEDURAL BACKGROUND**

On March 4 and March 22, 2019, Plaintiffs Electrical Workers Pension Fund Local 103 I.B.E.W. ("IBEW 103") and Ohio Carpenters' Pension Fund ("Ohio Carpenters") filed their initial complaints, triggered by an announcement by the European Commission that it issued a Statement of Objections to eight banks. *See* Joint Declaration of Kristen M. Anderson, Vincent Briganti, Gregory S. Asciolla, and Todd A. Seaver in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with JPMorgan Chase Bank, N.A., J.P. Morgan Securities plc (f/k/a

---

[2]    Unless otherwise noted, citations are omitted and emphasis is added.

J.P. Morgan Securities Ltd.), and J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.) ("Co-Lead Counsel Decl."), filed herewith, ¶9.  Shortly thereafter, on April 26, 2019, the Court appointed Scott+Scott Attorneys at Law LLP ("Scott+Scott"), Lowey Dannenberg P.C. ("Lowey Dannenberg"), and DiCello Levitt Gutzler LLP ("DiCello Levitt") as interim co-lead counsel in the Action.  *Id.*, ¶10.[3]  On April 23, 2021, Berman Tabacco was appointed as additional interim co-lead counsel.  *Id.*, ¶10.

On June 11, 2019, Plaintiffs filed the Consolidated Class Action Complaint.  Co-Lead Counsel Decl., ¶11.  Following several rounds of pre-motion letters to dismiss the complaint and amendment of the complaint thereafter, Plaintiffs filed the Third Amended Complaint ("TAC") on December 3, 2019.  *Id.*, ¶¶12-15.  The TAC did not name JPMorgan as a defendant.  *Id.*, ¶15.

On July 23, 2020, the Court issued its Decision and Order granting in part and denying in part Defendants' Rule 12(b)(2) and 12(b)(6) motion to dismiss the TAC.  *Id.*, ¶17 ("July 23 Decision and Order").  The Court sustained Plaintiffs Ohio Carpenters' and IBEW 103's claim under Section 1 of the Sherman Act, 15 U.S.C. §1, finding that Plaintiffs had plausibly alleged a conspiracy to fix European Government Bond prices against Natixis S.A. ("Natixis"), Nomura International plc, and Nomura Securities International Inc. (together, "Nomura").  *Id.*  The Court, however, dismissed Defendants Bank of America Merrill Lynch International Designated Activity Company ("BAML") and NatWest Markets plc on personal jurisdiction grounds.  *Id.*  In addition, the Court dismissed Plaintiffs' claims against BAML, UniCredit Bank AG, and UniCredit Capital Markets LLC on antitrust standing grounds and dismissed BAML, Bank of America, N.A., Merrill Lynch International, NatWest Markets plc (f/k/a Royal Bank of Scotland plc), NatWest Markets

---

[3]     On March 8, 2022, the Court entered an order amending the Court's Amended Case Management Order No. 1, which substituted DiCello Levitt LPP for Labaton Sucharow LLP.  *Id.*, ¶1 n.1.

Securities Inc. (f/k/a RBS Securities Inc.), UBS AG, UBS Europe SE, and UBS Securities LLC (f/k/a UBS Warburg LLC) for failure to connect these Defendants to the antitrust conspiracy alleged in the TAC. *Id*. Natixis and Nomura filed a motion for reconsideration of the July 23 Decision and Order, which Plaintiffs opposed. *Id.*, ¶18.

On October 9, 2020, Plaintiffs and State Street executed a term sheet, which required State Street to provide significant and immediate cooperation upon its execution. *Id.*, ¶20. Pursuant to the Court's direction in the July 23 Decision and Order, Plaintiffs sought leave to amend the TAC to replead against dismissed Defendants, and the parties agreed on a schedule for amendment, permitting Plaintiffs to file their Fourth Amended Complaint ("FAC") 60 days after the Court's decision on the Natixis and Nomura's motion for reconsideration. *Id.*, ¶19. The Court denied Natixis and Nomura's motion for reconsideration on December 11, 2020. *Id.*, ¶21. Accordingly, on February 9, 2021, Plaintiffs filed the FAC, which included the named defendants in the TAC, as well as naming an additional 12 Defendants, including the three JPMorgan entities, based in part on the cooperation materials received from State Street. *Id.*, ¶22. Among other things, the FAC incorporated cooperation materials provided by State Street and added San Bernardino County Employees' Retirement Association ("SBCERA") as a Plaintiff. *Id*.

On April 16, 2021, Defendants served Plaintiffs with three pre-motion letters informing Plaintiffs of their intent to move to dismiss the FAC under Rule 12(b)(2) and 12(b)(6). *Id.*, ¶24. On May 17, 2021, Plaintiffs served Defendants with letters responding to Defendants' pre-motion letters. *Id*.

On May 21, 2021, the European Commission announced the issuance of a decision against Bank of America, Natixis, Nomura, RBS (now NatWest), UBS, UniCredit and WestLB for their participation in a cartel in the primary and secondary market for European Government Bonds and

imposed fines totaling over €371 million ($454.4 million).  *Id.*, ¶25.  On May 26, 2021, Plaintiffs filed a pre-motion letter requesting a conference for the purpose of filing a request for judicial notice of the May 20, 2021 press release issued by the European Commission regarding its European Government Bonds decision.  *Id.*, ¶26.  On June 4, 2021, Defendants responded to Plaintiffs' judicial notice letter and notified the Court of the parties' failure to resolve their dispute over the appropriateness of the filing of a motion to dismiss.  *Id.*

On June 15, 2021, Plaintiffs moved for preliminary approval of the State Street settlement. *Id.*, ¶27.  The Court preliminarily approved the State Street settlement on June 16, 2021, ordering that notice of the State Street settlement be deferred for 180 days following entry of the order.  *Id.* On December 9, 2021, Plaintiffs filed a letter requesting that the Court defer notice for an additional 90 days, which the Court granted on December 10, 2021, staying the notice deadline of the State Street settlement until March 14, 2022.  *Id.*  On March 7, 2022, the Court entered an order deferring notice of the State Street Stipulation until September 12, 2022.  *Id.*

On November 1, 2021, Plaintiffs filed a pre-motion letter requesting a conference for the purpose of filing a request for judicial notice of the European Commission's Provisional Non-Confidential Decision ("Decision") and Summary of the Decision.  *Id.*, ¶28.  The 248-page Decision included chatroom communications which the European Commission found "occurred regularly, sometimes daily, in particular when EGB came up for auction. Communications could be lengthy, lasting all day or spanning multiple days."[4]  *Id.*  On November 9, 2021, Defendants replied to Plaintiffs' judicial notice letter.  *Id.*, ¶29. On March 2, 2022, the Court denied Plaintiffs' letter requests for a conference regarding Plaintiffs' request that the Court take judicial notice of

---

[4]     The European Commission's Decision was publicly released after the FAC was served, the FAC does not include any of the chats and other information that provide additional evidence of collusion and directly implicate many of the Defendants in the conspiracy alleged in the Action.

the European Commission's May 20, 2021 press release, Decision, and Summary of the Decision. *Id.*, ¶29.  The Court stated that it would construe Plaintiffs' letter motions as requests for judicial notice, and would address both motions in connection with the pending motions to dismiss the FAC.  *Id.*

On February 9, 2022, Plaintiffs and JPMorgan, through their respective counsel, engaged in settlement negotiations.  *Id.*, ¶31.  That same day, after extensive arm's-length negotiations between experienced counsel, the Parties reached a tentative understanding on the material monetary and non-monetary terms of a settlement, and a definitive agreement in principle was reached when the Parties executed a binding term sheet on February 14, 2022.  *Id.*, ¶33.  Following execution of the term sheet, JPMorgan began its rolling production of documents and transaction data on February 16, 2022, which cooperation continues.  *Id.*, ¶34.  Plaintiffs immediately started reviewing JPMorgan's cooperation and have identified what Plaintiffs believe to be direct evidence of collusion among dismissed Defendants, as well as against presently unnamed banks that are potentially culpable for the conspiracy alleged in the Action.  *Id.*, ¶39.  After weeks of negotiations, the Parties executed the JPMorgan Stipulation on April 15, 2022.  *Id.*, ¶35.

On March 14, 2022, the Court issued its Decision and Order granting in part and denying in part Defendants' Rule 12(b)(2) and 12(b)(6) motion to dismiss the FAC.  *Id.*, ¶30 ("March 14 Decision and Order").  The Court sustained Plaintiffs' claim under Section 1 of the Sherman Act, 15 U.S.C. §1, against Natixis S.A., Nomura International plc, Nomura Securities International Inc., UniCredit Bank AG, Citigroup Global Markets Limited, Citigroup Global Markets Inc., Jefferies International Limited, and Jefferies LLC.  *Id.*  The Court, however, dismissed Defendant NatWest Markets plc on personal jurisdiction grounds.  *Id.*  In addition, the Court dismissed Plaintiffs' claims against UniCredit Capital Markets LLC on antitrust standing grounds, dismissed Plaintiffs'

claims against JPMorgan as untimely, and dismissed Bank of America, N.A., Merrill Lynch International, NatWest Markets plc (f/k/a Royal Bank of Scotland plc), NatWest Markets Securities Inc. (f/k/a RBS Securities Inc.), RBC Europe Limited, Royal Bank of Canada, RBC Capital Markets, UniCredit Capital Markets LLC, UBS AG, UBS Europe SE, and UBS Securities LLC (f/k/a UBS Warburg LLC) for failure to connect these Defendants to the antitrust conspiracy alleged in the FAC.  *Id.*

## ARGUMENT

## I.  THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT

Rule 23(e) requires court approval of a proposed class action settlement upon finding that the proposal "is fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).  The preliminary approval process is governed by a "likelihood standard" – requiring the Court to assess whether the parties have shown that "the court will ***likely*** be able to grant final approval and certify the class."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (S.D.N.Y. 2019) (emphasis in original).  Under the December 1, 2018 amendments to Rule 23(e), in weighing preliminary approval, the Court must consider whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)      the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).  The Rule 23 factors "supplement rather than displace the[] '*Grinnell*' factors" traditionally considered in the Second Circuit to evaluate the substantive fairness of a settlement during the preliminary approval process.  *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019).  *Grinnell* requires the Court to weigh the following factors to determine whether a proposed settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

### A.      The Settlement Is Procedurally Fair Because It Was Achieved Through Extensive Arm's-Length Negotiation (Rule 23(e)(2)(B))

To determine whether a settlement is procedurally fair, courts evaluate the process undertaken to achieve it.  *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012).  On February 9, 2022, the Parties engaged in an all-day settlement negotiation.  Co-Lead Counsel Decl., ¶31.  During the negotiations, each side presented their views of the Action, including the likelihood of success at the motion to dismiss, class certification, and summary judgment stages and JPMorgan's role in the conspiracy alleged in the FAC.  *Id.*, ¶32.  At all times, the negotiations were completely arm's length, and counsel zealously advocated for their respective clients.  *Id.*, ¶33.  Following a full day of negotiations, the Parties reached a tentative understanding on the material monetary and non-monetary terms of a settlement.  *Id.*

8

In recommending that the Court approve the JPMorgan Settlement, Co-Lead Counsel considered the uncertain outcome and risks of further litigation and believe the Settlement confers significant monetary and non-monetary benefits on the Settlement Class.   Based on these considerations, "there is a presumption that the terms of the settlement are also fair and reasonable."  *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 477, 482 (S.D.N.Y. 2015); *see also Henry v. Little Mint, Inc.*, No. 12 Civ. 3996 (CM), 2014 WL 2199427, at \*6 (S.D.N.Y. May 23, 2014) ("If the settlement was achieved through experienced counsels' arm's-length negotiations, 'absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'").  Thus, an initial presumption of fairness attaches to the JPMorgan Settlement.  *See In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 278, 296 (E.D. Pa. 2012).

> **B.**     **The Settlement Is Substantively Fair**
>
> > **1.**     **The Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor #1)**

This Action involves complex issues of law and fact.  Defendants' arguments raised in their pre-motion letters to dismiss the TAC (ECF No. 110) and FAC (ECF No. 206), and certain defendants' arguments in their motion for reconsideration (ECF No. 120, 239, 241, 243), illustrate the complexity of the Action.  For example, Defendants have argued that Plaintiffs' economic analysis of bid-ask spreads failed to show that each defendant conspired for six years across 13 bond-issuing countries.   Moreover, Defendants argued that Plaintiffs' economic analysis of European Government Bond auctions was the result of ordinary market forces, not manipulation. Defendants also argued that the Court should interpret the chatroom transcripts as consistent with ordinary market conduct rather than as evidence of collusion, as Plaintiffs contend.  Defendants,

including JPMorgan, further argued that the EC Decision was inconsistent with a finding of conspiracy.

Complex issues of law and fact are also likely to be raised at the class certification stage, and the losing party will likely seek interlocutory review pursuant to Rule 23(f), which will cause delay in resolving the litigation. *See In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 n.13 (E.D.N.Y. 2013), *reversed and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) (noting that "[i]n the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision").

Finally, any trial in this action is likely to be lengthy, and "[t]he losing parties would likely appeal any adverse jury verdicts, thereby extending the duration of litigation." *Payment Card*, 986 F. Supp. 2d at 212.

As a result, numerous courts have recognized that "'[f]ederal antitrust cases are complicated, lengthy . . . bitterly fought,' as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC), 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"). This case is no different. In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998). Accordingly, this factor weighs in favor of the JPMorgan Settlement.

### 2. The Reaction of the Settlement Class (*Grinnell* Factor #2)

This *Grinnell* factor is generally inapplicable prior to disseminating notice. *See Payment Card*, 986 F. Supp. 2d at 221 (declining to address "the reaction of the class to the settlement"); *see also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at

*2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").  At this time, the reaction of the Settlement Class comes from Plaintiffs, which are all sophisticated institutional investors, and authorized the JPMorgan Settlement.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor #3)

In assessing the fairness of a settlement at preliminary approval, the Court inquires as to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."  *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("[T]he question is whether the parties had adequate information about their claims.").  Further, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).

Co-Lead Counsel's knowledge of the merits and potential weaknesses of Plaintiffs' claims supports preliminary approval of the JPMorgan Settlement.  Co-Lead Counsel have undertaken an extensive investigation, which included engaging two sets of experts, one of which analyzed the price of French and Italian 10-year bonds in and around auctions for the period of 2006-2013, while the other collected and analyzed millions of Italian, French, German, and Spanish government bond quotes in the secondary market from 2004 through 2015.  *See*, *e.g.*, *In re Nissan Radiator/Transmission Cooler Litig.*, 10 CV 7493 (VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (stating "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement").

11

By the time the negotiations with JPMorgan occurred, Plaintiffs had received and reviewed 1,670 pages of documents produced in connection with the State Street settlement, including chatroom transcripts involving JPMorgan's traders. Co-Lead Counsel Decl., ¶31; *see also* ECF No. 209, ¶36. They also reviewed and analyzed the European Commission's 248-page Decision. Co-Lead Counsel Decl.*,* ¶31. Plaintiffs also had the benefit of receiving and analyzing: (i) four rounds of pre motion-to-dismiss letters from the Defendants, which also resulted in Plaintiffs amending the complaint; (ii) the Court's ruling on Defendants' motion to dismiss the TAC; (iii) Natixis and Nomura's motion for reconsideration; and (iv) the Court's ruling on Natixis and Nomura's motion for reconsideration. *Id*. Thus, by the February 9 negotiation, Co-Lead Counsel were well apprised of the strengths and weaknesses of Plaintiffs' claims. *See Processed Egg Prod.*, 284 F.R.D. at 299 (finding counsel had adequate knowledge of the litigation where counsel had "conducted extensive investigations into the case in preparation for filing of the complaint" and defendants' motions to dismiss provided counsel "with an additional platform from which to ascertain [settling defendant's] and the other Defendants' positions on the case and thereby to evaluate further the merits of the litigation").

Co-Lead Counsel "'have engaged in sufficient investigation of the facts to enable the Court to "intelligently make . . . an appraisal" of the Settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10. Indeed, if extensive discovery was required for settlement approval, class action plaintiffs would be deprived of the "ice breaker" settlement strategy, which is often used in multi-party cases, as it was here, to "'break the ice' and bring other defendants to the point of serious negotiations." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *see also In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013). Therefore, this factor weighs in favor of preliminary approval.

**4.** **The Risks of Establishing Liability and Damages (*Grinnell* Factors #4, 5)**

To assess this factor, "the Court should balance the benefits afforded the Class, including the **immediacy** and **certainty** of a recovery, against the continuing risks of litigation.'" *Payment Card*, 986 F. Supp. 2d at 224. Regarding liability, Plaintiffs expect Defendants to continue to vigorously contest all elements of Plaintiffs' claims during each stage of the case.

Defendants' multiple motions to dismiss have already raised difficult issues of law and fact. In their motion to dismiss, which the Court considered in the July 23 Decision and Order (ECF No. 110), Defendants argued that Plaintiffs failed to allege a plausible conspiracy to fix prices of European Government Bonds across all Eurozone auctions. Defendants also challenged the findings of the statistical analysis in the TAC, arguing that the inverted "V" pattern observed in the primary market was the result of ordinary market forces, not manipulation. Moreover, Defendants argued that allegations of widening of Defendants' bid-ask spreads for Italian bonds did not reflect collusion across all other Eurozone members' bonds in the secondary market. Even at the pleading stage, resolution of these issues was complex.

JPMorgan further had the unique argument in its motion to dismiss that because it did not receive a Statement of Objections from the European Commission, it should not be found to have participated in the European Government Bonds cartel. *See, e.g.,* ECF No. 206-2, at 2 (arguing that "Plaintiffs have not satisfied the 'starting point' of the plausibility analysis with respect to" JPMorgan because they were not one of the eight banks that received the European Commission's Statement of Objections). While Plaintiffs argued that the scope and nature of the European Commission's enforcement action is not determinative of Plaintiffs' claims here,[5] there was a risk

---

[5] *See In re Local TV Advertising Antitrust Litig.*, MDL No. 2867, 2020 WL 6557665, at *2, *16 (N.D. Ill. Nov. 6, 2020) (denying motion to strike nationwide class allegations where DOJ

that the Court would credit JPMorgan's argument.  JPMorgan also argued that the TAC did not

adequately allege fraudulent concealment against it ECF No. 206-2, at 3 ("the FAC pleads no

[public statements about general compliance] at all by the JPMorgan defendants, thus requiring

their dismissal under the Court's prior opinion").  Indeed, the Court credited JPMorgan's argument

and dismissed without prejudice Plaintiffs' claims against the bank as untimely in its March 14

Decision and Order.  ECF No. 236 at 44.  At all times, there was a substantial risk of establishing

liability against JPMorgan.

        If liability is established, Plaintiffs will still face the difficulties inherent in proving

damages.  Plaintiffs' theory of damages will be hotly contested, and there is no doubt that at trial

the issue will involve a "battle of the experts."  *NASDAQ*, 187 F.R.D. at 476.  "In this 'battle of

experts,' it is virtually impossible to predict with any certainty which testimony would be credited,

and ultimately, which damages would be found to have been caused by actionable, rather than the

myriad nonactionable factors . . . ."  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45

(S.D.N.Y. 1985).  Thus, there is a substantial risk that a jury might accept one or more of

Defendants' damages arguments, or award far less than the value of the JPMorgan Settlement, or

nothing at all.  Indeed, "'the history of antitrust litigation is replete with cases in which antitrust

plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at

trial, or on appeal.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005).

        In short, "[t]here is a substantial risk that the plaintiff might not be able to establish liability

at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any

_____

civil enforcement concerned conduct in specific local markets); *In re Lipitor Antitrust Litig.*, 868
F.3d 231, 263 (3d Cir. 2017) (lack of FTC civil enforcement not determinative of private plaintiffs'
claims); *cf. In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2016
WL 5108131, at *4 (S.D.N.Y. Sept. 20, 2016) (holding that guilty pleas "'are not determinative of
the plaintiffs' potential claims in a civil antitrust suit'").

recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 Civ. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987).  In contrast, the JPMorgan Settlement provides a significant, immediate, and certain monetary benefit to the Settlement Class. Plaintiffs also receive the benefit of immediate cooperation from JPMorgan.  Plaintiffs intend to incorporate the chatroom transcripts provided by JPMorgan into an amended complaint to bolster the allegations against the banks named in the FAC that the Court dismissed in its March 14 Decision and Order, and to potentially add new defendants whose participation in the agreement to manipulate prices of European Government Bonds was revealed to Plaintiffs only upon reviewing the chatroom transcripts.

### 5.   The Risks of Maintaining a Class Through Trial (*Grinnell* Factor #6)

Although the "risk of maintaining a class through trial is present in [every] class action," *Guippone v. BH S&B Holdings LLC*, No. 09-CV-1029 (CM), 2016 WL 5811888, at *7 (S.D.N.Y. Sept. 23, 2016), "this factor [nevertheless] weighs in favor of . . . settlement" where "it is likely that defendants would oppose class certification" if the case were to be litigated, *Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM), 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011). Plaintiffs believe they will ultimately persuade the Court to certify a litigation class, but Defendants will advance substantial arguments in opposition.  Thus, there is a risk that this litigation might not be maintained as a class through trial.  *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013) (reversing class certification in an antitrust case).

### 6.   JPMorgan's Ability to Withstand a Greater Judgment (*Grinnell* Factor #7)

"'[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement.'" *Vitamin C*, 2012 WL

5289514, at *6.  However, "the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment."  *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008).  In applying this factor "the [s]ettlement must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'"  *Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-8331, 2014 WL 1224666, at *11 (S.D.N.Y. March 24, 2014).  Here, JPMorgan's ability to withstand a greater judgment is offset by the value of the immediate cooperation it has agreed to in the JPMorgan Stipulation.  Co-Lead Counsel Decl., ¶¶37-38.  In negotiating the monetary amount of the Settlement, Plaintiffs weighed the benefit of obtaining immediate cooperation prior to formal discovery that could be used to buttress the pleadings in the Action and potentially expand Plaintiffs' case.  *Id.*, ¶38.  This factor therefore weighs in favor of granting preliminary approval.

### 7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation (*Grinnell* Factors #8, 9)

In recommending that the Court preliminarily approve the JPMorgan Settlement, Plaintiffs have considered a preliminary estimated damages range, the benefits and risks of continuing litigation against JPMorgan in light of the money and cooperation the bank has agreed to provide, and the range of possible outcomes in the absence of a settlement.  *See, e.g.*, *Processed Egg Prod.*, 284 F.R.D. at 302 ("'Despite the difficulties they pose to measurement, nonpecuniary benefits . . . may support a settlement.'").

At preliminary approval, the range of reasonableness factor is satisfied when, as here, there are no obvious doubts as to the adequacy of the settlement amount.  *See, e.g., Yim v. Carey Limousine NY, Inc.*, No. 14-CV-5883(WFK)(JO), 2016 WL 1389598, at *4 (E.D.N.Y. Apr. 7, 2016) (granting preliminary approval of settlement without submission of "a specific number as

[plaintiffs'] best possible recovery, particularly at this stage of preliminary approval, where the level of inquiry is more lenient than at final approval").[6]  Further, the Settlement Amount and cooperation achieved by the JPMorgan Settlement is similar to other recent settlements in antitrust bond cases in this District.  *See, e.g.*, *In re Mexican Gov't Bonds Antitrust Litig.*, No. 1:18-cv-04673(JPO), ECF No. 25 at 3 (S.D.N.Y. Dec. 16, 2020) (preliminarily approving second-in settlement with JPMorgan for $15,000,000 and cooperation); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 702 (S.D.N.Y. 2019) (preliminarily approving second-in settlement with First Tennessee Bank for $14,500,000 and cooperation).  Moreover, as to the antitrust claims, Plaintiffs may recover the entire amount of damages against the Non-Settling Defendants (after an offset post-trebling for the settlement amounts) under joint and several liability.  *See In re Corrugated Container Antitrust Litig.*, M.D.L. 310, 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981) (noting that partial settlements preserved plaintiffs' ability to seek the entire amount of damages from non-settling defendants weighed in favor of settling approval).

In addition, JPMorgan's cooperation obligations at this early stage of litigation, including attorney proffers, witness interviews, production of data and documents, evidentiary declarations, and further cooperation that the Parties agree to, provides additional value.  JPMorgan Stipulation,

---

[6]      *See also Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 24-26 (D.D.C. 2011) (granting preliminary approval based on no obvious deficiency on adequacy of settlement amount but indicating additional information required for final approval); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 569 (N.D. Ill. 2011) (same); *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 107-08 (D.D.C. 2013) (preliminarily approving settlement where valuing monetary damages would be challenging).  Even at final approval, in some cases, "the exact amount of damages need not be adjudicated . . . ."  *Nasdaq*, 187 F.R.D. at 478; *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (affirming district court approval of a settlement without quantifying the expected value of continued litigation where quantifying damages "would have required testimony by a damages expert," and that testimony would have "resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class − exactly the type of litigation the parties were hoping to avoid by settling").

¶15; *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011) (recognizing value of early cooperation); *Pressure Sensitive Labelstock*, 584 F. Supp. 2d at 702 (same); *Linerboard*, 292 F. Supp. 2d at 643 (same).  JPMorgan is obligated to provide this cooperation until judgment is final against all Defendants or five years from February 14, 2022.  JPMorgan Stipulation, ¶16.  JPMorgan's agreement to provide continued cooperation "is valuable consideration in light of the risks in proceeding with this suit against the remaining Defendants."  *See Processed Egg Prod.*, 284 F.R.D. at 303.

The immediate production of chatroom transcripts and other cooperation from JPMorgan was a key consideration in Plaintiffs' settlement strategy.  Co-Lead Counsel Decl., ¶38.  After reviewing JPMorgan's cooperation, Plaintiffs intend to incorporate the chatroom transcripts provided by JPMorgan into an amended complaint to bolster the allegations against the banks named in the FAC that the Court dismissed in its March 14 Decision and Order, and to potentially add new defendants whose participation in the agreement to manipulate prices of European Government Bonds was revealed to Plaintiffs for the first time when reviewing the chatroom transcripts.  *Id.*, ¶39.  Because the JPMorgan cooperation assists Plaintiffs in bolstering allegations against dismissed Defendants and potentially expanding the case to additional banks, the cooperation is extremely valuable.

Further, receiving JPMorgan's crucial cooperation prior to formal discovery provides greater efficiency.  *See Processed Egg Prod.*, 284 F.R.D. at 303 (finding that "the [] Settlement likely has short-circuited at least some of the expense and delay of future discovery by securing [settling defendant's] cooperation and removing the [settling defendant] forces from those who would contest or complicate Plaintiffs' discovery efforts.").  Information learned from the JPMorgan cooperation bestows Plaintiffs with "a clear tactical advantage . . .  to formulate a

strategy in taking discovery from the remaining Defendants, specific tailoring the scope and focus of discovery." *Id.* at 304.

Finally, the JPMorgan Settlement has added value as an "ice-breaker" monetary settlement in a multi-party antitrust case. *Packaged Ice*, 2011 WL 717519, at *10. Such settlements add value because they can "'break the ice' and bring other defendants to the point of serious negotiations." *Linerboard*, 292 F. Supp. 2d at 643; *see also GSE Bonds*, 414 F. Supp. 3d at 697. Plaintiffs respectfully submit that the JPMorgan Settlement confers substantial benefits while eliminating risks attendant to continued litigation against JPMorgan, which is a well-financed and well-represented party.

### C.    The Remaining Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement

#### 1.    Rule 23(e)(2)(A) – Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class

Plaintiffs each share the same interest as the Settlement Class in prosecuting this Action to ensure the greatest recovery from JPMorgan and Defendants. Plaintiffs are part of the Settlement Class and suffered the same injuries as other Settlement Class Members – *i.e.*, monetary losses, when they were overcharged or underpaid in their transactions with Defendants in European Government Bonds. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) ("'class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members'"). Plaintiffs have played an active role in this case's development, prosecution, and settlement. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 n.25 (2d Cir. 2006) (stating that a class representative "must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members"). Thus, the Plaintiffs are adequate representatives of the Settlement Class and should be appointed

as class representatives for settlement purposes. Further, Co-Lead Counsel have demonstrated they are qualified, experienced, and able to conduct the litigation. *See* Section II.C., *infra*.

> **2.    Rule 23(e)(2)(C) – the Monetary Relief, Cooperation, and Remediation Measures Provided by JPMorgan Are Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors**

To assess whether this relief is adequate, Rule 23(e)(2)(C) requires the Court to consider:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

FED. R. CIV. P. 23(e)(2)(C)(i-iv). Plaintiffs previously discussed Rule 23(e)(2)(C)(i) in Sections I.B.1, I.B.4, and I.B.5, *supra*.[7] The remaining Rule 23(e)(2)(C) factors support preliminarily approving the JPMorgan Settlement.

> **a.    Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(C)(iii) – Effectiveness of Any Proposed Method of Distributing Relief to the Class and the Terms of Any Proposed Award of Attorneys' Fees**

Rule 23(e)(2)(C)(ii) requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." FED. R. CIV. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *GSE Bonds*, 414 F. Supp. 3d at 694.

---

[7]     *Grinnell* factors 1, 4, 5, and 6 are subsumed by Rule 23(e)(2)(C)(i), which analyzes the costs, risks, and delay of trial and appeal. *Payment Card*, 330 F.R.D. at 36 (noting that this assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial, and considering each *Grinnell* factor in its analysis).

At this time, Plaintiffs are not asking the Court to review any proposed notice or distribution plan.  Plaintiffs will move separately for preliminary approval of those plans before formal notice or any other steps are taken.  Even if this factor were nonetheless found to be relevant to the limited motion currently before the Court, Plaintiffs would need to show only a likelihood that the Court will be able to grant approval.  *See Payment Card*, 330 F.R.D. at 28 n.21.  The basis for such a finding can be found in the JPMorgan Stipulation, which requires JPMorgan's assistance in the gathering of data and class member information (*see* JPMorgan Stipulation, ¶15(k)), and outlines expectations for a standard process for receiving claim forms subject to documentary audits (*see id.*, ¶33) to be overseen by a Claims Administrator appointed by the Court (*see id.*, ¶25).  This process, to be detailed further when Plaintiffs move separately for preliminary approval of the notice and distribution plans, will be adequate to deter or defeat unjustified claims.

### b.  Rule 23(e)(2)(C)(iv) – Any Agreement Required to Be Identified Under Rule 23(e)(3)

This factor requires courts to consider "'any agreement required to be identified by Rule 23(e)(3),' that is, 'any agreement made in connection with the proposal.'"  *GSE Bonds*, 414 F. Supp. 3d at 696.  The sole agreement required to be disclosed under Rule 23(e)(3) is a "Supplemental Agreement" the Parties executed that provides JPMorgan with the qualified right to withdraw or terminate the Settlement upon the occurrence of certain conditions.  JPMorgan Stipulation, ¶41.  This qualified right arises if potential Settlement Class Members who meet certain criteria exclude themselves from the Settlement Class.  *Id.*  To determine whether certain conditions are met, the Parties have the right, but not the obligation, to subpoena putative Settlement Class Members that exclude themselves for documents pertinent to the threshold.  JPMorgan Stipulation, ¶42.  These types of agreements are common in class action settlements and are generally allowed to remain confidential because "knowledge of the specific number of

opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out."  *See generally* MANUAL FOR COMPLEX LITIGATION (Fourth) §21.631 (2004); *see also* Fed. R. Civ. P. 23(e), 2003 Advisory Committee Note, Subdivision (e).

     **3.**       **Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to Each Other**

This Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." FED. R. CIV. P. 23 advisory committee's note to 2018 amendment.  The Releases treat all Settlement Class Members equitably relative to one another.  Subject to Court approval, all Settlement Class Members will be giving JPMorgan an identical release running to the identical factual predicate of the Action.  JPMorgan Stipulation, ¶¶3-9.

Plaintiffs will at a later date file a separate motion for preliminary approval for a plan of distribution that will provide further details as to how the net settlement fund will be distributed to Class Members.  But the JPMorgan Stipulation makes clear that even the eventual distribution plan will remain distinct from the terms of the Settlement Agreement itself.  JPMorgan Stipulation, ¶30. Where the settlement terms are themselves set, as here, the Second Circuit has approved of entering final approval of settlements without a distribution plan.  *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987) ("The prime function of the district court in holding a hearing on the fairness of the settlement is to determine that the amount paid is commensurate with the value of the case.  This can be done before a distribution scheme has been adopted so long as the distribution scheme does not affect the obligations of the defendants under the settlement agreement."); *see also* Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS §6:23 (18th ed. 2021) ("Because court approval of a settlement as fair, reasonable and adequate is conceptually

distinct from the approval of a proposed plan of allocation, however, courts frequently approve

them separately.").  Thus, the Court may preliminarily approve the JPMorgan Settlement at this

time, even though a plan of distribution has not yet been proposed.

## II.   CERTIFICATION OF THE SETTLEMENT CLASS AND APPOINTMENT OF CO-LEAD COUNSEL AS COUNSEL FOR THE SETTLEMENT CLASS IS WARRANTED

"In order to preliminarily approve the settlement . . . the Court must also find that it will

likely be able to certify the class for purposes of judgment on the proposal." *GSE Bonds*, 414 F.

Supp. 3d at 699-700.  A settlement class may be certified where the proposed class "meets the

requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule

23(b)." *Id.* at 700.  Because the Settlement Class proposed here is substantially similar to the

settlement class that the Court previously found it would likely be able to certify, ECF No. 212,

¶1, the Court will likely be able to certify the Settlement Class.

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)."

FED. R. CIV. P. 23(c)(1)(B) considering the factors identified in Rule 23(g)(1)(A)(i)-(iv).  The

Court previously appointed Scott+Scott, Lowey Dannenberg, DiCello Levitt, and Berman Tabacco

as interim co-lead counsel, ECF Nos. 32, 200, and as counsel for the settlement class certified for

purposes of the State Street settlement, ECF No. 212.  At all times, the firms have competently

undertaken the responsibilities assigned to them by the Court.  Accordingly, Plaintiffs request that

Scott+Scott, Lowey Dannenberg, DiCello Levitt, and Berman Tabacco be appointed as counsel

for the Settlement Class for purposes of the JPMorgan Settlement.

## III.   NOTICE TO THE SETTLEMENT CLASS

Plaintiffs propose combining notice of the JPMorgan and State Street settlements with

notice(s) of other settlements if those materialize.  Therefore, the proposed Preliminary Approval

Order defers notice of the JPMorgan Settlement until September 12, 2022.  *See* [Proposed] Preliminary Approval Order, ¶2.

JPMorgan agreed to supply the names and addresses of potential Settlement Class Members who or which can be identified based on records within the bank's possession, and prior to providing notice, Plaintiffs will require name and address information from the other Defendants as well.  JPMorgan Stipulation, ¶15(k).  Plaintiffs have not yet requested this information due to their request that the provision of notice be stayed until September 12, 2022.  Prior to issuing notice, Plaintiffs would submit a motion for the Court to approve the form and manner of notice. Similar processes deferring preliminary approval of the form and manner of notice have been adopted in several recent class action settlements.[8]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order preliminarily approving the JPMorgan Settlement.

Dated:  April 29, 2022

| **DICELLO LEVITT GUTZLER LLC** | **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | **LOWEY DANNENBERG, P.C.** |
|---|---|---|
| *s/ Gregory S. Asciolla* | *s/ Kristen Anderson* | *s/ Vincent Briganti* |
| GREGORY S. ASCIOLLA | KRISTEN ANDERSON | VINCENT BRIGANTI |
| MATTHEW J. PEREZ | DONALD A. BROGGI | GEOFFREY M. HORN |
| VERONICA BOSCO | MICHELLE E. CONSTON | CHRISTIAN LEVIS |
| 60 East 42nd Street, Suite 2400 | The Helmsley Building | ROLAND R. ST. LOUIS, III |
| New York, NY, 10165 | 230 Park Ave., 17th Floor | 44 South Broadway, Suite 1100 |
| Telephone: 646-933-1000 | New York, NY 10169 | White Plains, NY 10601 |
| gasciolla@dicellolevitt.com | Telephone: 212-223-6444 | Telephone: 914-997-0500 |
| mperez@dicellolevitt.com | Facsimile:  212-223-6334 | Facsimile:  914-997-0035 |

---

[8]      *See, e.g.,* Order Preliminarily Approving Class Action Settlement, *In re London Silver Fixing, Ltd. Antitrust Litig.*, No. 14-md-2573-VE (S.D.N.Y. Nov. 23, 2016), ECF No. 166; Order Preliminarily Approving the Deutsche Bank Settlement Agreement, *In re: Commodity Exch. Inc. Gold Futures & Options Trading Litig.*, No. 14-md-2548 (VEC) (S.D.N.Y. Dec. 9, 2016), ECF No. 187; Order Preliminarily Approving Settlement Agreements, *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126 (JMF) (S.D.N.Y. May 11, 2016), ECF No. 228.

vbosco@dicellolevitt.com

kanderson@scott-scott.com
dbroggi@scott-scott.com
mconston@scott-scott.com

vbriganti@lowey.com
ghorn@lowey.com
clevis@lowey.com
rstlouis@lowey.com

CHRISTOPHER M. BURKE
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
cburke@scott-scott.com

CHARLES KOPEL
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: 215-399-4770
Facsimile: 610-862-9777
ckopel@lowey.com

DAVID R. SCOTT
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
david.scott@scott-scott.com

**BERMAN TABACCO**
*s/ Todd A. Seaver*
JOSEPH J. TABACCO, JR.
TODD A. SEAVER
CARL N. HAMMARSKJOLD
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: 415-433-3200
Facsimile: 415-433-6382
jtabacco@bermantabacco.com
tseaver@bermantabacco.com
chammarskjold@bermantabacco.com

*Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

 *s*/ Kristen M. Anderson
Kristen M. Anderson