UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE EUROPEAN GOVERNMENT BONDS ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) | Lead Case No. 1:19-cv-2601<br><br>Hon. Victor Marrero<br><br>Hon. Sarah Netburn |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN ORDER APPROVING CLASS NOTICE PLAN, PRELIMINARILY APPROVING DISTRIBUTION PLAN FOR CLASS ACTION SETTLEMENTS WITH DEFENDANTS JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES PLC, J.P. MORGAN SECURITIES LLC, STATE STREET CORPORATION, AND STATE STREET BANK AND TRUST COMPANY, AND SCHEDULING HEARING FOR FINAL APPROVAL OF THE SETTLEMENTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................i

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.       The Class Notice Plan satisfies the standard for approval. ............................................... 2

    II.      The Court should preliminarily approve the Distribution Plan. ....................................... 6

CONCLUSION ............................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 145 (2d Cir. 1987).................................................................................................. 3

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................................... 7

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001).................................................................................... 7

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13-md-2476 (DLC), 2016 WL 2731524 (S.D.N.Y.)...................................................…7

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................……7

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)……………………………………………………...7

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................................……7

*Maley v. Del. Global Tech. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................................…….2

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)……………………………………………………….7

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)................................................................................................................4

*Soberal-Perez v. Heckler*,
  717 F.2d 36 (2d Cir. 1983).....................................................................................................3

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005).................................................................................................2, 6

*Weigner v. City of New York*,
  852 F.2d 646 (2d Cir. 1988)...................................................................................................2

**Rules**

FED. R. CIV. P. 23(e)(1)(B).................................................................................................2

FED. R. CIV. P. 23(c)(2)(B)..............................................................................................2, 3

## INTRODUCTION

On June 16, 2021, the Court preliminarily approved Plaintiffs'[1] Settlement with State Street Corporation and State Street Bank and Trust Company (together, "State Street") and conditionally certified a Settlement Class. ECF No 212. On May 2, 2022, the Court preliminarily approved Plaintiffs' Settlement with JPMorgan Chase Bank, N.A., J.P. Morgan Securities plc (f/k/a J.P. Morgan Securities Ltd.), and J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.) (collectively, "JPMorgan") and conditionally certified a Settlement Class. ECF No. 258. Pursuant to these orders, and to the Court's September 12, 2022 order extending Plaintiffs' settlement notice deadline (ECF No. 284), Plaintiffs now propose: (i) a Class Notice Plan[2] to notify Class Members of the Settlements and provide details regarding the claims process; and (ii) a Distribution Plan for the Net Settlement Fund.[3] Both plans warrant court approval.

Co-Lead Counsel selected A.B. Data, Ltd. ("A.B. Data") to develop the Class Notice Plan, following a multi-party request for proposal process, based on A.B. Data's substantial expertise in administering class action settlements in hundreds of large antitrust, consumer, securities, ERISA, and insurance matters, and matters involving financial instruments traded in over-the-counter markets.[4] *See* Affidavit of Elaine Pang attached as Nov. 2022 Joint Decl., Ex. 1. As described

---

[1] Plaintiffs are Ohio Carpenters' Pension Fund, Electrical Workers Pension Fund Local 103 I.B.E.W., and San Bernardino County Employees' Retirement Association.

[2] The "Class Notice Plan" consists of the Affidavit of Elaine Pang, which describes the methods for distributing Class Notice, and the forms of notice. *See* Joint Declaration dated November 11, 2022 ("Nov. 2022 Joint Decl."), Exs. 1-4.

[3] *See* Nov. 2022 Joint Decl., Ex. 6. Unless otherwise noted, capitalized terms used herein have the same meaning as defined in the Stipulation and Agreement of Settlement with State Street Corporation and State Street Bank and Trust Company (ECF No. 209 at Ex. 1), and the Stipulation and Agreement of Settlement with JPMorgan Bank Chase Bank, N.A., J.P. Morgan Securities plc (f/k/a J.P. Morgan Securities Ltd.), and J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.) (ECF No. 256-1) (together, the "Settlement Agreements" or "Agreements").

[4] *See, e.g.*, *In re Mex. Gov't Bonds Antitrust Litig.*, No. 1:18-cv-02830 (JPO) (S.D.N.Y.) (settlements relating to the alleged manipulation of sovereign debt securities issued by the Mexican federal government and traded over the counter during the period of January 1, 2006 through April 19, 2017); *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR) (S.D.N.Y) (settlements relating to the alleged manipulation of unsecured bonds issued by government-sponsored enterprises and traded over-the-counter during the period of January 1, 2009 through January 1, 2019); *Sonterra Capital Master Fund,*

below, the Class Notice Plan readily satisfies the requirements of Rule 23, Local Rule 23.1, and due process. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005).

Likewise, Co-Lead Counsel, in consultation with an industry expert and economist, developed the Distribution Plan to provide a "fair and adequate" distribution of the Net Settlement Fund. *Maley v. Del. Global Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (citation omitted). Co-Lead Counsel developed the Distribution Plan based on their extensive experience prosecuting bond manipulation and financial services antitrust cases.[5]

For these reasons, and those discussed below, the Court should approve the Class Notice Plan and the Distribution Plan and set a schedule for a final approval hearing in accordance with the proposed Order filed contemporaneously with this motion.

## ARGUMENT

**I.   The Class Notice Plan satisfies the standard for approval.**

Due process and Rule 23 require that the settlement class receive "adequate" notice of a class action settlement. *See Wal-Mart Stores*, 396 F.3d at 113-14. Whether notice is "adequate" depends on whether it is reasonable given the circumstances. *See* FED. R. CIV. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."); FED. R. CIV. P. 23(c)(2)(B) (Rule 23(b)(3) class members must be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."); *see also Weigner v. City of New York*, 852 F.2d

---

*Ltd. v. UBS AG*, No. 15-cv-5844 (GBD) (S.D.N.Y.) (administering settlements covering a class period of January 1, 2006 through June 30, 2011 and including interest rate swaps and swaptions, forward rate agreements, and Yen currency futures contracts and forward agreements price based on the London Interbank Offered Rate for the Japanese Yen ("Yen-LIBOR")); *Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC) (S.D.N.Y.) (involving settlements of claims relating to the alleged manipulation of the Euro Interbank Offered Rate ("Euribor") and the prices of Euribor-based interest rate swaps, forward rate agreements, forwards, futures, and options); *State Street Indirect FX Class Actions*, 11-cv-10230 (MLW) (S.D.N.Y.) (administering settlement covering a class period of January 2, 1998 through December 31, 2009 and including over-the- counter foreign currency transactions).

[5] *See* Firm Resumes, attached as Nov. 2022 Joint Decl., Exs. 7-10.

646, 649 (2d Cir. 1988) (due process does not require actual notice to every class member, as long as class counsel "acted reasonably in selecting means likely to inform persons affected."); *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (noting the "basic standard to be applied is one of reasonableness."). Accordingly, courts are afforded "considerable discretion" in fashioning a notice plan. *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987).

The Federal Rules require that the notice include: "(i) the nature of the action; (ii) the definition of the [settlement] class certified; (iii) the class claims, issues, or defenses; (iv) [a directive] that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who [timely] requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members [of the settlement class] under Rule 23(c)(3)." FED. R. CIV. P. 23(c)(2)(B). Local Rule 23.1 further requires that "notice shall include a statement of the names and addresses of the applicants for [attorneys'] fees and amounts requested respectively and shall disclose any fee sharing agreements with anyone." S.D.N.Y. L.R. 23.1.

Here, the Class Notice Plan comports with the requirements of Rule 23(c)(2)(B), Local Rule 23.1, and due process. In particular, the Class Notice details the nature of the Action, identifies in clear and concise terms the make-up of the Settlement Class, and includes an ample "Background of the Litigation," which provides Class Members with an overview of the procedural history of the case, describes the claims, issues, and/or defenses presented in the action, and explains that, upon approval of the Settlements and entry of the Court's Final Judgment, the releases will be binding on all Class Members that do not opt out, but remain in the Settlement Class. November 2022 Joint Decl., Ex. 2 at 1-3, 5-7, 10.

The proposed Class Notice also explains that Class Members will release the State Street

3

Released Parties and the JPMorgan Released Parties from claims arising from the conduct alleged in the Action. *Id.*, Ex. 2 at 9-10. The Class Notice will allow Class Members to fully consider the details of the proposed Settlements and understand the range of options available to them, including their right to object to or opt out of the Settlements, appear in court concerning the adequacy of the Settlements, or participate in the Settlements. The Class Notice also explains how attorneys will be paid, who will receive payment, and the amount, in aggregate, counsel will seek for reimbursement of expenses already incurred for the benefit of the Class.

Notice will be distributed to Class Members through various means. First, the Class Notice Plan contains a direct mail component[6] that involves sending the Long-Form Notice (*id.*, Ex. 2) and the Proof of Claim and Release form (*id.*, Ex. 5) via First-Class mail (or its equivalent), postage prepaid, to Settlement Class Members including, among others, Settling Defendants' and non-settling Defendants' respective counterparties that transacted in European Government Bonds. State Street and JPMorgan have provided contact information for their respective counterparties and transfer agents that transacted in European Government Bonds, consistent with the obligations set forth in their respective Settlement Agreements and relevant foreign bank secrecy and/or customer confidentiality laws that may restrict their ability to provide counterparty-identifying information to third parties. Plaintiffs have requested the same information from the non-settling Defendants.

Recipients of the mailed Long-Form Notice will be asked to forward it to their clients or provide their list of clients to A.B. Data for the purpose of sending individual notice. By mailing individual notice to these various persons and entities, notice is reasonably calculated to reach all Class Members that traded EGBs. The database of these recipients will be continually updated to

---

[6] The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g., Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950).

capture any address changes, including any changes to the counterparty information made available to A.B. Data.

Second, the Claims Administrator will publish the Summary Notice (*id.*, Ex. 3) in IBD Weekly, Stocks & Commodities, Financial Times (US edition), The New York Times, and the Wall Street Journal. *Id.*, Ex. 1 at 2-3.

In addition, the Claims Administrator will publish the notice in digital media. Banner ads will appear on targeted financial websites such as marketplace.com, cnbc.com, finance.yahoo.com, and hundreds of others. Ads will be served across multiple devices, including desktop, tablet, and mobile devices. They will be displayed prominently on websites, ensuring that they can be easily seen when viewers first open website pages. Internet advertising allows the viewer to click on a banner advertisement and instantly be directed to the Settlement website. *Id.*, Ex. 1 at 3.

To drive engagement with potential Class Members, newsfeed ads will be purchased on LinkedIn. These ads will be microtargeted to individuals who have expressed an interest in information relevant to the trading of European Government Bonds. Sponsored search listings will be placed through the Google search engine. When identified target phrases and keywords are used in searches on Google, links to the Settlement Website will appear at the top of the search result pages. Representative keywords will include terms such as "European Bonds," "European Government Bonds," "European Government Bonds Litigation," and "European Government Bonds Antitrust." *Id.*, Ex. 1 at 3-4.

To supplement direct notice, a news release will be disseminated via PR Newswire's US1 distribution list. This news release will be distributed to the news desks of approximately 10,000 newsrooms, including those of print, broadcast, and digital websites across the United States.

A.B. Data will establish and maintain a case-specific toll-free telephone number to address potential Class Member inquiries. The toll-free telephone number will be equipped with an

5

automated interactive voice response system that will present callers with a series of choices to hear prerecorded information. If callers need further help, they will have an option to speak with a live operator during business hours. *Id.*, Ex. 1 at 4. Co-Lead Counsel will also be available to answer questions and assist Class Members as needed.

Finally, the Claims Administrator will maintain a Settlement Website, www.EuropeanGovernmentBondsSettlement.com, that will serve as a source for Class Members to obtain necessary information regarding the Settlements. From the Settlement Website, Class Members can review and obtain: (i) a blank Claim Form; (ii) the Long-Form and Summary Notices; (iii) the proposed Distribution Plan; (iv) the Settlement Agreement with State Street (v) the Settlement Agreement with JPMorgan; and (vi) key pleadings and Court orders.

A detailed Long-Form Notice will be used for direct mail notice and will be available on the Settlement Website. A Summary Notice will be used to provide notice via the print publications and press release, as described in detail above. Both notices include detailed information about the action and the Settlements. *Id.,* Ex. 1 at 4-5.

This type of multi-faceted notice program, which combines individual Long-Form and Summary Notice, has routinely been approved by federal courts in complex class actions, including those prosecuted in this Circuit. *See, e.g., Wal-Mart Stores*, 396 F.3d at 105 (affirming "notice plan that required mailing the settlement notice to class members and publishing a condensed version of the settlement notice in numerous widely-distributed publications."). Thus, Plaintiffs respectfully request that the Court approve the proposed Class Notice Plan and appoint A.B. Data as Claims Administrator.

II. **The Court should preliminarily approve the Distribution Plan.**

To warrant approval, the Distribution Plan must "also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate." *In re Payment Card*

*Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 40 (E.D.N.Y. 2019). In addition, "when formulated by competent and experienced class counsel," a plan for allocation of net settlement proceeds "need have only a reasonable, rational basis." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004)); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (same).

Here, Co-Lead Counsel developed the Distribution Plan based on their experience prosecuting bond manipulation and financial services antitrust cases,[7] and in consultation with an industry expert and economist. This method for distributing the Net Settlement Fund has been approved for use in an analogous case concerning the manipulation of bonds issued by U.S. government-sponsored enterprises. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694-95 (S.D.N.Y. 2019) (approving similar distribution plan for settlements resolving antitrust claims relating to unsecured bonds issued by Fannie Mae, Freddie Mac, Federal Farm Credit Banks and Federal Home Loan Banks). The Distribution Plan should be preliminarily approved.

Co-Lead Counsel firmly believe that the Distribution Plan fairly, adequately, and rationally distributes the Net Settlement Fund to the Settlement Class, while minimizing administrative costs and the amount of effort required for Class Members to file a claim. *See In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016) ("A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund."); *Meredith Corp. v. SESAC, LLC,* 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.") (internal citations omitted).

---

[7] *See* Firm Resumes, attached as Nov. 2022 Joint Decl., Exs. 7-10.

Under the Distribution Plan, the Net Settlement Fund will be allocated on a *pro rata* basis according to a duration-adjusted weighting of each Authorized Claimant's transaction(s) in European Government Bonds. The Distribution Plan allocates the Net Settlement Fund based on "Risk Number," which is a widely accepted measure of the sensitivity of a bond's price to changes in yield (bond prices move inversely with yields). Bonds of longer durations are impacted more by price moves and carry higher Risk Numbers. European Government Bond transactions will be placed into one of 45 categories based on the remaining years to maturity when purchased or sold, and each category has its own "Risk Number" and a preliminarily assigned Multiplier based on the Risk Number. *See* Nov. 2022 Joint Decl. Ex. 6 at Table 1. To determine the duration-adjusted weighting of each Authorized Claimant's trading volume, the Claims Administrator will multiply each Authorized Claimant's net prices for each category by the corresponding Multiplier and sum up the results.[8]

For example, the first bucket includes bonds that have less than one year until maturity, and they have a Risk Number of approximately 0.5 and a Multiplier of 1. The last bucket includes bonds that have over 60 years until maturity, and they have a Risk Number of approximately 27.81 and a Multiplier of 56. The longer dated bond in this example has 56 times more risk than the short-dated bond (27.81÷0.5=56) – hence, the assignment of Multipliers 56 and 1.

For each claim, the Claims Administrator will multiply the net prices for all the eligible bonds in each category by the corresponding Multiplier and sum those amounts to obtain the Authorized Claimant's Individual Transaction Claim Amount. The Individual Transaction Claim Amount is *not* the Authorized Claimant's payment amount.

After each Authorized Claimant's Individual Transaction Claim Amount is determined, and

---

[8] A Multiplier Table will be posted to the Settlement Website at least thirty days prior to the objection and opt-out deadlines. Changes, if any, to the Multiplier Table based on newly available data or information will be posted promptly to the Settlement Website, and Settlement Class Members will be encouraged to check the website for updates.

subject to the alternative minimum payment (described below), the Claims Administrator will calculate each Authorized Claimant's pro rata share by dividing the Individual Transaction Claim Amount by the total of all Transaction Claim Amounts. In consultation with Co-Lead Counsel, the Claims Administrator will determine an alternative minimum payment to be paid to Authorized Claimants where it is reasonably determined that the cost of administering the claim would exceed the value of the claim. The alternative minimum payment amount will be a set amount for all such Authorized Claimants. Settlement Class Members are urged to visit the settlement website to keep apprised of other pertinent information relating to the Distribution Plan, including any Court-approved changes to the Distribution Plan. The Distribution Plan may be amended to account for new information, including but not limited to litigation risk adjustments.

## **CONCLUSION**

Plaintiffs respectfully request that the Court enter the accompanying proposed order that, among other things: (1) approves the proposed forms of Class Notice Plan; (2) appoints A.B. Data as Claims Administrator; (3) approves the Distribution Plan with respect to the Settlements; and (4) sets a schedule leading to the Court's consideration of final approval of the Settlements.

Dated: November 11, 2022

/s/ Kristen M. Anderson
Kristen M. Anderson
Scott+Scott Attorneys at Law LLP
230 Park Ave., 17th Floor
New York, NY 10169
Email: kanderson@scott-scott.com

/s/ Vincent Briganti
Vincent Briganti
Lowey Dannenberg, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: 914-997-0500
Fax: 914-997-0035
Email: vbriganti@lowey.com

/s/ Gregory S. Asciolla
Gregory S. Asciolla
DiCello Levitt LLC
485 Lexington Avenue, Suite 1001
New York, NY 10017
Email: gasciolla@dicellolevitt.com


/s/ Todd A. Seaver
Todd A. Seaver
Berman Tabacco
425 California Street, Suite 2300
San Francisco, CA 94104
Email: tseaver@bermantabacco.com


*Co-Lead Class Counsel*