**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE EUROPEAN GOVERNMENT BONDS ANTITRUST LITIGATION** | Lead Case No. 19-cv-2601<br><br>Hon. Victor Marrero |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS STATE STREET CORPORATION AND STATE STREET BANK AND TRUST COMPANY; JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES PLC, AND J.P. MORGAN SECURITIES LLC; UNICREDIT BANK AG; AND NATIXIS S.A.**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION.................................................................................................1

PROCEDURAL HISTORY....................................................................................2

ARGUMENT........................................................................................................5

I.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED
     SETTLEMENTS ...........................................................................................5

     A.   The Settlements Are Procedurally Fair ...................................................6

          1.   Plaintiffs and Co-Lead Counsel have adequately represented the Class (Rule
               23(e)(2)(A))......................................................................................7

          2.   The Settlements were negotiated at arm's length (Rule 23(e)(2)(B)) ................9

     B.   The Proposed Settlements are Substantively Fair....................................11

          1.   The costs, risks, and delay of trial and appeal favor the Settlements (*Grinnell*
               Factors # 1, 4, 5 and 6 and Rule 23(e)(2)(C)(i))..............................................12

          2.   The reaction of the Settlement Class to the Settlements supports approval
               (*Grinnell* Factor # 2)..................................................................................15

          3.   The stage of the proceedings and the amount of discovery completed favors
               approving the Settlements (*Grinnell* Factor # 3)..............................................16

          4.   Settling Defendants' ability to withstand a greater judgment does not impact the
               fairness of these Settlements (*Grinnell* Factor #7)...........................................17

          5.   The Settlements are reasonable given the risks and potential range of recovery
               (*Grinnell* Factors #8 and 9) ......................................................................17

          6.   The Distribution Plan provides an effective and equitable method for distributing
               relief (Rule 23(e)(2)(C)(ii) and 23(e)(2)(D)) ....................................................20

          7.   The proposed attorneys' fee award confirms that the Class will receive substantial
               relief from the Settlements (Rule 23(e)(2)(C)(iii)).............................................21

          8.   The Settlements identify all relevant agreements, and such agreements do not
               impact the adequacy of the relief (Rule 23(e)(2)(C)(iv))......................................22

II.  THE PROPOSED SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED....22

III. THE CLASS NOTICE PLAN INFORMED THE CLASS OF THE SETTLEMENTS
     AND SATISFIED DUE PROCESS ........................................................24

CONCLUSION................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ............................................................................9

*Belton v. GE Cap. Consumer Lending, Inc.*,
   No. 21-cv-9492 (CM), 2022 WL 407404 (S.D.N.Y. Feb. 10, 2022) ...................10

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ......................................................................*passim*

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......9

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ...................................................................................9

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) .................................................................................7

*Flores v. CGI Inc.*,
   No. 22-cv-350 (KHP), 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022)............5, 7

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................15

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ...................................................................................6

*Hart v. BHH, LLC*,
   No. 15-cv-4804, 2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020) .........................11

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
   No. 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..........15, 17

*In re Austrian and German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000).....................................................................9

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)..................................................................16

*In re Currency Conversion Fee Antitrust Litig.*,
   224 F.R.D. 555 (S.D.N.Y. 2004) .........................................................................24

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009) ................................................................................. 8, 13

*In re Facebook, Inc.*,
   822 F. App'x 40 (2d Cir. 2020) ......................................................................................... 13

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) ............................................................................... 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-cv-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)......................... 21

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................................ 21

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...................................................................... *passim*

*In re GSE Bonds Antitrust Litig.*,
   No. 19-cv-1704(JSR), 2020 WL 3250593 (S.D.N.Y. Jun. 16, 2020) ........................... 20, 22

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y 2012) ......................................................................................... 21

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................................................... 24

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   327 F.R.D. 483 (S.D.N.Y. 2018) ...................................................................... 14, 17, 18, 19

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003)................................................................................. 18

*In re NASDAQ Market–Makers Antitrust Litigation*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................... 12, 14

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ........................................................................................ 20

*In re Nissan Radiator/Transmission Cooler Litig.*,
   No. 10-cv-7493(VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ............................... 8, 17

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015).............................................................................................. 23

iii

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................9, 21

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019)......................................................................5, 7, 12, 18

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016).................................................................................................7

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ....................................................................................15

*In re Visa Check/Mastermoney Antitrust Litig.*,
   192 F.R.D. 68 (E.D.N.Y. 2000)......................................................................................15

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985)..................................................................................14

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
   No. 14-cv-2058 (JST), 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ...............................21

*Matheson v. T-Bone Rest. LLC*,
   No. 09 Civ. 4214 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)............................15

*Meredith Corp. v. SESAC LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015)...............................................................................22

*New York v. Hendrickson Bros.*,
   840 F.2d 1065 (2d Cir. 1988) .........................................................................................20

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
   No. 17-cv-5543, 2021 WL 76328 (S.D.N.Y. Jan. 7, 2021)...................................................6

*Priceline.com, Inc. v. Silberman*,
   405 F. App'x 532 (2d Cir. 2010) .......................................................................................8

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .............8, 12

*Soler v. Fresh Direct, LLC*,
   No. 20-cv-3431 (AT), 2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) ...................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)......................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................1, 6, 12

Fed. R. Civ. P. 23(a) .....................................................................................................23

Fed R. Civ. P. 23(a)(4) ...................................................................................................7

Fed. R. Civ. P. 23(b)(3) ...................................................................................23, 24, 25

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................................25

Fed. R. Civ. P. 23(e) ...............................................................................................12, 25

Fed. R. Civ. P. 23(e)(1) .................................................................................................25

Fed. R. Civ. P. 23(e)(1)(B) ...........................................................................................25

Fed. R. Civ. P. 23(e)(2) .............................................................................................5, 6

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................6, 7

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................6, 9

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................................6, 11, 12

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................................12

Fed. R. Civ. P. 23(e)(2)(C)(iii) ......................................................................................22

Fed. R. Civ. P. 23(e)(2)(C)(iv) ......................................................................................23

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................................6, 11, 12

Fed. R. Civ. P. 23(e)(3) .................................................................................................11

Fed. R. Civ. P. 23(g) .....................................................................................................24

**Other Authorities**

William B. Rubenstein, 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:50 (6th ed. 2023)..............................................................................................................................10

# **INTRODUCTION**

Plaintiffs Ohio Carpenters' Pension Fund ("Ohio Carpenters"), Electrical Workers Pension Fund Local 103 I.B.E.W. ("IBEW 103"), and San Bernardino County Employees' Retirement Association ("SBCERA") move under Rule 23 of the Federal Rules of Civil Procedure for final approval of the settlements with (1) State Street Corporation and State Street Bank and Trust Company (together, "State Street"); (2) JPMorgan Chase Bank, N.A., J.P. Morgan Securities plc (f/k/a J.P. Morgan Securities Ltd.), and J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.) (collectively, "JPMorgan"); (3) UniCredit Bank AG ("UniCredit"); and (4) Natixis S.A. ("Natixis") (collectively, the "Settlements").[1] The Settlements have recovered $40,000,000 to benefit Settlement Class Members and yielded significant cooperation that directly assisted Plaintiffs in their continued prosecution of claims against the remaining Defendants related to the alleged manipulation of European Government Bonds, including the preparation of the Fourth Amended Consolidated Class Action Complaint ("FAC"), ECF No. 146, the Fifth Amended Consolidated Class Action Complaint ("5AC"), ECF No. 410, and the Second Amended Complaint filed by the same Plaintiffs in the related *Ohio Carpenters' Pension Fund et al. v. Deutsche Bank AG et al.*, No. 1:22-cv-10462 (S.D.N.Y.) (the "*EGB II*" action).

In granting preliminary approval to the Settlements, the Court found that it would likely be able to approve the Settlements with State Street, JPMorgan, UniCredit, and Natixis (collectively, the "Settling Defendants") under Rule 23(e)(2). The Class's reaction since Class Notice was issued further supports the bases for finally approving the Settlements. The modified

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as defined in the Stipulation and Agreement of Settlement with State Street ("State Street Stipulation"), ECF No. 209; the Stipulation and Agreement of Settlement with JPMorgan ("JPMorgan Stipulation"), ECF No. 256-1; the Amended Stipulation and Agreement of Settlement with UniCredit ("Amended UniCredit Stipulation"), ECF No. 375-2; and the Amended Stipulation and Agreement of Settlement with Natixis ("Amended Natixis Stipulation"), ECF No. 375-1. The foregoing are collectively referred to as the "Stipulations." Unless otherwise noted, internal citations and quotation marks are omitted, and emphasis is added.

notice period began on September 5, 2023, and more than 8,688 Notice Packets have been mailed directly to potential Class Members. There have also been more than 27,198 visits to the Settlement website. While two weeks remain until the objection and opt-out deadlines, to date, there has been only one (1) objection, and no Class Members have requested exclusion from any Settlement. This is a positive indication from the Class that the Settlements reflect a satisfactory resolution. For the reasons detailed below and previously in Plaintiffs' memoranda in support of their motions for preliminary approval (ECF Nos. 208, 255, 348) ("Prelim. Approval Mems."), Plaintiffs respectfully request that the Court finally approve the Settlements and the Distribution Plan, certify the Settlement Classes, and enter the proposed Final Judgments.

## PROCEDURAL HISTORY[2]

On June 11, 2019, Plaintiffs filed the Consolidated Class Action Complaint ("CAC") against Defendants Bank of America, N.A., Bank of America Merrill Lynch International Designated Activity Company (f/k/a Bank of America Merrill Lynch International Limited) ("BAML"), and Merrill Lynch International (collectively, the "BAML Defendants"); NatWest Markets plc (f/k/a Royal Bank of Scotland plc) and NatWest Markets Securities Inc. (f/k/a RBS Securities Inc.) (together, the "NatWest Defendants"); Nomura Securities International Inc. and Nomura International PLC (together, "Nomura"); and UniCredit and UniCredit Capital Markets LLC (together, the "UniCredit Defendants"). Joint Decl. ¶ 9. On September 6, 2019, Plaintiffs filed a Second Amended Consolidated Class Action Complaint ("SAC"). *Id.* ¶ 11. On December 3, 2019, Plaintiffs filed a Third Consolidated Amended Class Action Complaint ("TAC"), adding

---

[2] A detailed description of the procedural history of this case is included in the Joint Declaration of Kristen M. Anderson, Gregory S. Asciolla, Vincent Briganti, and Todd A. Seaver in Support of Motion for Final Approval of Settlements and Motion for an Interim Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Declaration" or "Joint Decl."), filed herewith.

Natixis and UBS AG, UBS Europe SE, and UBS Securities LLC (f/k/a UBS Warburg LLC) (collectively, "UBS") as Defendants in the Action. *Id.* ¶ 13.

On February 26, 2020, Defendants served a pre-motion letter informing Plaintiffs of their intent to move to dismiss the TAC, to which Plaintiffs responded on March 11, 2020. *Id.* ¶ 14. On July 23, 2020, the Court issued its Decision and Order granting in part and denying in part Defendants' motion to dismiss the TAC. *Id.* ¶ 15. On August 6, 2020, Natixis and Nomura moved for reconsideration of the July 23 Decision and Order, which the Court denied. *Id.* ¶¶ 16, 19.

After moving to amend their complaint, agreeing with Defendants on an amendment schedule, and obtaining leave of the Court, Plaintiffs filed their Fourth Consolidated Amended Class Action Complaint ("FAC") on February 9, 2021, adding twelve Defendants, including Citigroup Global Markets Limited and Citigroup Global Markets Inc. (together, "Citi"); RBC Europe Limited (f/k/a Royal Bank of Canada Europe Limited), Royal Bank of Canada, and RBC Capital Markets, LLC (f/k/a Dain Rauscher Inc.) (collectively, "RBC"); Jefferies International Limited and Jefferies LLC (together, "Jefferies"); State Street; and JPMorgan; and joining SBCERA as a Plaintiff in place of Boston Retirement System. *Id.* ¶¶ 17, 20.

On April 16, 2021, Defendants (except for State Street) served Plaintiffs with a pre-motion letter concerning their intent to move for dismissal of the FAC. *Id.* ¶ 22. On May 17, 2021, Plaintiffs served Defendants with a letter responding to Defendants' pre-motion letter. *Id.*

On March 14, 2022, the Court issued its Decision and Order granting in part and denying in part Defendants' motions to dismiss the FAC. *Id.* ¶ 30. On March 28, 2022, UniCredit, Natixis, Citi and Jefferies filed motions for reconsideration of the March 14 Decision and Order, which the Court denied. *Id.* ¶¶ 31-32.

While the motion to dismiss the FAC was pending, on June 15, 2021, Plaintiffs moved for preliminary approval of their proposed settlement with State Street, which the Court granted. *Id.* ¶ 25. On April 29, 2022, Plaintiffs moved for preliminary approval of the JPMorgan Settlement, which the Court granted. *Id.* ¶ 25. On November 17, 2022, the Court preliminarily approved the proposed notice program and Distribution Plan for the State Street and JPMorgan Settlements. *Id.* ¶ 25. Notice of the State Street and JPMorgan settlement began on February 1, 2023, but due to issues with distributing notice to certain non-settling Defendants' counterparties, the Court vacated all deadlines for the two settlements on March 21, 2023. *Id.*

On August 10, 2022, Plaintiffs and Natixis, Nomura,[3] UniCredit, Citi, and Jefferies ("Remaining Defendants") held an initial discovery conference. *Id.* ¶ 34. On August 19, 2022, Plaintiffs and Remaining Defendants exchanged initial disclosures and initial requests for production of documents. *Id.* ¶ 35. On September 15, 2022, Remaining Defendants served amended initial disclosures. *Id.* On September 16, 2022, the Court approved the parties' Electronically Stored Information Protocol and Protective Order governing the discovery of confidential information. *Id.* ¶ 36.

On November 7, 2022, Plaintiffs moved for leave to amend the FAC, which certain previously dismissed Defendants opposed. *Id.* ¶ 39. On May 12, 2023, Plaintiffs moved for preliminary approval of its Natixis and UniCredit settlements, which the Court granted on May 16, 2023. *Id.* ¶¶ 64, 75. On the same date, the Court approved a modified notice schedule that would provide a single notice to potential Class members for the State Street, JPMorgan, UniCredit, and Natixis settlements with common deadlines to file claims, requests for exclusion, and objections. *Id.* ¶ 64.

---

[3] Plaintiffs voluntarily dismissed Nomura Securities International Inc. from the case on December 20, 2022. *See* ECF No. 321. Nomura International plc remains a Defendant.

On May 19, 2023, Deutsche Bank AG, Deutsche Bank Securities, Inc. (together, "Deutsche Bank"), Coöperatieve Rabobank U.A., and Rabo Securities USA, Inc. (together, "Rabobank"), the defendants in the related *EGB II* action (the "*EGB II* defendants"), objected to the Natixis and UniCredit Settlements on the grounds that the initial UniCredit and Natixis stipulations improperly included the *EGB II* defendants in the definition of the term "Defendants." *Id.* ¶¶ 64, 75. On June 27, 2023, the Court issued a Decision and Order sustaining the *EGB II* defendants' objection and requiring amendment of the UniCredit and Natixis stipulations. *Id.* ¶¶ 65, 76. Plaintiffs filed the Amended UniCredit and Natixis Stipulations with proposed amended preliminary approval orders on July 11, 2023. *Id.* ¶¶ 66, 77. The Court granted preliminary approval to the amended stipulations the next day. *Id.* ¶¶ 69, 80.

On September 25, 2023, the Court granted Plaintiffs' motion to amend the FAC. *Id.* ¶ 40. Plaintiffs filed the 5AC on October 16, 2023. *Id.* ¶ 41.

## ARGUMENT

### I.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENTS

"The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005). In service of "the strong judicial policy in favor of settlements, particularly in the class action context," *id.*, a court may approve a class action settlement upon a showing that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). A settlement is fair, reasonable, and adequate and should be approved if the settlement is shown to be both procedurally and substantively fair. *See Flores v. CGI Inc.*, No. 22-cv-350 (KHP), 2022 WL 13804077, at *3 (S.D.N.Y. Oct. 21, 2022); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D.

11, 28 (E.D.N.Y. 2019) ("*Payment Card*") (analyzing the amended Rule 23(e)(2) standards to be applied at both preliminary and final approval).

Rule 23 enumerates criteria to guide the Court's analysis, with the factors in Rule 23(e)(2)(A) and (B) focusing on the procedural fairness of a settlement and those in Rule 23(e)(2)(C) and (D) focusing on substantive fairness. FED. R. CIV. P. 23 advisory committee's note to 2018 amendment ("2018 Advisory Note") (Rule 23 focuses on the "core concerns of procedure and substance" to be considered when deciding whether to finally approve a settlement). The courts in this Circuit also consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"), to assess the fairness of a class settlement. Applying the *Grinnell* factors and Rule 23 to the Settlements here demonstrates final approval of the Settlements is warranted.

### A.    The Settlements Are Procedurally Fair

To approve a class settlement, Rule 23 requires the Court to find in part that, "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length[.]" FED. R. CIV. P. 23(e)(2)(A)-(B). Courts presume settlements are procedurally fair when they are "the product of arm's length negotiations conducted by experienced, capable counsel after meaningful discovery." *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, No. 17-cv-5543, 2021 WL 76328, at *1 (S.D.N.Y. Jan. 7, 2021) (settlements reached "under the supervision and with the endorsement of a sophisticated institutional investor" are entitled to an "even greater presumption of reasonableness.").

### 1.  Plaintiffs and Co-Lead Counsel have adequately represented the Class (Rule 23(e)(2)(A))

Adequate representation under Rule 23(e)(2)(A) (and 23(a)(4))[4] requires that plaintiffs "demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is qualified, experienced and generally able to conduct the litigation." *Flores*, 2022 WL 13804077, at *4. This is met when the class representative's interests are not antagonistic to those of the class and their chosen counsel is qualified, experienced, and able to conduct the litigation. *See Soler v. Fresh Direct, LLC*, No. 20-cv-3431 (AT), 2023 WL 2492977, at *3 (S.D.N.Y. Mar. 14, 2023); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223, 232 (2d Cir. 2016) (the focus for adequacy is whether the interests of the class are "sufficiently cohesive to warrant adjudication.").

Plaintiffs' identical interests relative to the Class demonstrate their adequacy to represent the Class. Plaintiffs suffered the same alleged injury as other Class Members—monetary losses resulting from overcharges or underpayments in their European Government Bond transactions with Defendants due to the alleged collusion. These same Plaintiffs have been active in the development and prosecution of this Action and have played a role in analyzing and determining that the Settlements are fair and reasonable. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (class representatives must have "an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members").

Further, Co-Lead Counsel's extensive class action, antitrust, and complex litigation experience combined with their work in the Action provide strong evidence that the Settlements

---

[4] Courts analyze the adequacy of representation requirement of Rule 23(e)(2)(A) using the same considerations for representative adequacy under Rule 23(a)(4). *See Payment Card*, 330 F.R.D. at 30, n.25 ("This adequate representation factor [under Rule 23(e)(2)(A)] is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context. As a result, the Court looks to Rule 23(a)(4) case law to guide its assessment of this factor."); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) ("*GSE Bonds*").

are procedurally fair. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) (noting the "extensive" experience of counsel in granting final approval of settlement), *aff'd sub nom. Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) ("*JPMorgan*") (giving "great weight" to experienced class counsel's opinion that the settlement was fair). As Co-Lead Counsel's firm resumes demonstrate, they have led numerous antitrust and other complex class actions and recovered billions of dollars for class members. *See* ECF No. 312-7, 312-8, 312-9, 312-10 (firm resumes). In appointing Co-Lead Counsel as interim class counsel, the Court made an initial determination of counsel's adequacy. *See* 2018 Advisory Note (interim appointment entails an evaluation of counsel's adequacy to represent the class).

The Court's initial determination of counsel's adequacy has been bolstered by Co-Lead Counsel's performance in this case. Co-Lead Counsel undertook an extensive investigation, which included, *inter alia*, engaging experts to analyze European Government Bond prices around auctions and quotes in the secondary market, as well as analyzing thousands of pages of settlement cooperation to include in the FAC and 5AC. Joint Decl. ¶¶ 5, 86; *see, e.g.*, *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-cv-7493 (VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (counsel "conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement").

Using their substantial collective experience in complex class actions and the information they developed in investigating and litigating this Action, Co-Lead Counsel gained an understanding of the potential strengths and risks of Plaintiffs' claims and developed a comprehensive strategy to maximize Plaintiffs' ability to obtain a favorable outcome for the

Class. *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (crediting the adequacy of counsel that "developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had a clear view of the strengths and weaknesses of their case and of the range of possible outcomes at trial"). As a result, both Co-Lead Counsel and Plaintiffs were more than adequate in their representation of the Settlement Class.

### 2. The Settlements were negotiated at arm's length (Rule 23(e)(2)(B))

"[A] strong initial presumption of fairness attaches to [a] proposed settlement," when the "integrity of the arm's length negotiation process is preserved[.]" *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd sub nom.* 117 F.3d 721 (2d Cir. 1997) ("*PaineWebber*"); *see In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) (where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness"), *aff'd sub nom., D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). The Settlements are entitled to a presumption of fairness because the process by which the agreements were struck bears the hallmarks of a hard-fought, non-collusive negotiation led by capable counsel.

As noted in Plaintiffs' Prelim. Approval Mems., prior to engaging in settlement discussions with Settling Defendants, Co-Lead Counsel had the benefit of their investigations into the European Government Bond market, *see* ECF No. 208 at 910; ECF No. 255 at 11-12; ECF No. 348 at 13-15. They also benefited from the arguments Defendants presented in their motions to dismiss the TAC and FAC, their motions for reconsideration, and in their opposition to Plaintiffs' motion for leave to amend the FAC. Accordingly, "plaintiffs' counsel [was]

9

sufficiently well informed" to adequately advise and recommend the settlement to the class representatives and settlement class. *GSE Bonds*, 414 F. Supp. 3d at 699.

In addition to the knowledge acquired through their investigation and prosecution of the Action, Co-Lead Counsel had the benefit of the Parties' meaningful and productive discussions of their views on the case and the key settlement terms, including the amount of consideration to be paid and the type of cooperation, including proffers, that would be provided to assist in the further prosecution of the Action. The State Street Settlement was reached after extensive negotiations that included a mediation supervised by Anthony Piazza, Esq., acceptance of a mediator's proposal to resolve the litigation, and months of additional work to finalize and execute the State Street Stipulation. Joint Decl. ¶¶ 44-46; *see Belton v. GE Cap. Consumer Lending, Inc.*, No. 21-cv-9492 (CM), 2022 WL 407404, at *4 (S.D.N.Y. Feb. 10, 2022) (mediation session with a "highly regarded mediator" satisfied the court's inquiry into the thoroughness of the negotiations); *see also* William B. Rubenstein, 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:50 (6th ed. 2023) ("Evidence of a truly adversarial bargaining process helps assuage this concern [of collusive settlements] and there appears to be no better evidence of such a process than the presence of a neutral third party mediator"). The JPMorgan Settlement negotiations in turn incorporated information developed from the State Street Settlement and the European Commission's May 2021 Decision with other information Co-Lead Counsel and JPMorgan's counsel had available, allowing for arm's length negotiations that culminated in the settlement. Joint Decl. ¶¶ 50-53. The UniCredit and Natixis Settlements were similarly built on information that had been developed from JPMorgan and State Street, and months of on-and-off discussions between Co-Lead Counsel and the respective counsel for UniCredit and Natixis before the agreements were reached. Joint Decl. ¶¶ 58-62; 70-74.

At all times, Co-Lead Counsel were fully informed about the facts, risks and challenges of the Action and had a sufficient basis on which to recommend the Settlements. Co-Lead Counsel's conclusion that the Settlements are fair and reasonable weighs in favor of finding the Settlements are procedurally fair and should be approved. *See Hart v. BHH, LLC*, No. 15-cv-4804, 2020 WL 5645984, at *2 (S.D.N.Y. Sept. 22, 2020) (courts give "great weight . . . to the recommendations of counsel, who are most closely acquainted with the facts of the [] litigation").

## B.    The Proposed Settlements are Substantively Fair

To assess the Settlement's substantive fairness, the Court considers whether "the relief provided for the class is adequate," accounting for the following factors: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). The Court is also required to confirm that the Settlements "treat[] class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). In addition, courts in this Circuit consider the nine *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463; *see GSE Bonds*, 414 F. Supp. 3d at 692 ("The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these '*Grinnell*' factors."); *Payment Card*, 330 F.R.D. at 29

("[T]here is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C)-(D) factors"). Here, the *Grinnell* factors and Rule 23(e) weigh heavily in favor of final approval.

### 1. The costs, risks, and delay of trial and appeal favor the Settlements (*Grinnell* Factors # 1, 4, 5 and 6 and Rule 23(e)(2)(C)(i))

To determine whether a settlement provides adequate relief, the Court evaluates "the costs, risks, and delay of trial and appeal," FED. R. CIV. P. 23(e)(2)(C)(i), "to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *Payment Card*, 330 F.R.D. at 36. This factor "implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Id.*; *see also GSE Bonds*, 414 F. Supp. 3d at 693. In its evaluation, the Court "balance[s] the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *GSE Bonds*, 414 F. Supp. 3d at 694; *see also JPMorgan*, 2014 WL 1224666, at *10 (at final approval, the Court's role is not to "decide the merits of the case[,] resolve unsettled legal questions or [] foresee with absolute certainty the outcome of the case").

Antitrust cases require a significant expenditure of time and resources, and this case is no exception. *See Wal-Mart Stores, Inc.*, 396 F.3d at 118; *GSE Bonds*, 414 F. Supp. 3d at 693 ("Numerous federal courts have recognized that federal antitrust cases are complicated, lengthy, and bitterly fought as well as costly . . . ."); *In re NASDAQ Market–Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ III*") (discussing the difficulties of proving antitrust liability where plaintiffs had to prove, among other things, a complex conspiracy involving multiple defendants, a common motive, actions against defendants' financial interest and/or evidence of coercion). As the case advances from the pleadings through discovery and into the trial phase, the litigation risks only increase. *See, e.g.*, *GSE Bonds*, 414 F. Supp. 3d at

694 ("there is no guarantee that plaintiffs will be able to prove liability" after the parties further develop the case through discovery). Discovery in antitrust cases is traditionally lengthy and costly. Given the expert analysis required and the number of parties involved, continued litigation would be prolonged and expensive. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (experts "tend[] to increase both the cost and duration of litigation").

Specifically, this Action requires a deep understanding of the European Government Bond market, which Plaintiffs have developed through their investigation and expert work. The intricate nature of the financial products and market involved, the lengthy period over which the alleged anticompetitive conduct occurred, and the number of defendants involved make this Action highly complex and risky for Plaintiffs. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. at 123 ("the complexity of Plaintiffs' claims *ipso facto* creates uncertainty").

As previously described in Plaintiffs' Prelim. Approval Mems, the factual and legal issues in this Action are complex and expensive to litigate. *See* ECF No. 208 at 7-8; ECF No. 255 at 9-10; ECF No. 348 at 12-13. Plaintiffs alleged that Defendants conspired to manipulate transactions in European Government Bond issued by 13 different bond-issuing countries across a multi-year period. Defendants have argued, among other things, that Plaintiffs' economic analysis of bid-ask spreads failed to show Defendants' involvement in a conspiracy, and that analysis of the European Government Bond auctions demonstrate outcomes based on ordinary market forces and not manipulation. Defendants contend that the chat communications identified as evidence of collusion are just ordinary market conduct, and that the European Commission's May 2021 Decision, currently under appeal, does not support any theory of collusion.

Notwithstanding that Plaintiffs largely prevailed on Defendants' multiple motions to dismiss and motions for reconsideration, Plaintiffs will face continued risks in establishing liability and damages as the procedural posture of the case matures. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 494 (S.D.N.Y. 2018) ("*LIBOR*") ("[A]s to liability, establishing the existence and extent of a conspiracy will necessarily be a complex task, and many of the hurdles that plaintiffs have overcome at the pleading stage will raise substantially more difficult issues at the proof stage."). Each Settling Defendant raised unique arguments in negotiations with Plaintiffs and/or in its motion to dismiss that, if credited by the Court or jury, may limit or eliminate their liability for the damages caused by the alleged conspiracy.

If liability is established, Plaintiffs still face the risk of proving damages at trial. There is no doubt that at trial the parties would engage in a "battle of the experts" regarding proof of damages. *NASDAQ III*, 187 F.R.D. at 476. "In this battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). There is a substantial risk that a jury might accept Defendants' damages arguments and award far less than the funds secured by the Settlements, or even nothing at all. "[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Wal-Mart Stores, Inc.*, 396 F.3d at 118. These factors support approval of the Settlements.

In addition to the risks of establishing liability and damages, Plaintiffs also must maintain a class through trial. *See In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("[T]he process of class certification

would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement."). The class certification motion would be vigorously contested by the Settling Defendants and would consume additional time and expense. Even if a litigation class were certified, that certification could be challenged on appeal, or at another stage in the litigation. *In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 89 (E.D.N.Y. 2000) *aff'd*, 280 F.3d 124 (2d Cir. 2001) ("If factual or legal underpinnings of the plaintiffs' successful class certification motion are undermined once they are tested . . . , a modification of the order, or perhaps decertification, might then be appropriate.").

"[T]he primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Matheson v. T-Bone Rest. LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011). Although Plaintiffs and Co-Lead Counsel firmly believe that the asserted claims are meritorious and would prevail at trial, there are risks that come with continuing this Action. These Settlements offset some of those risks while still permitting Plaintiffs and Co-Lead Counsel to pursue claims (and potentially recover additional damages) from non-settling Defendants. The existence of these risks balanced against the immediate benefits provided by the Settlements weighs in favor of approving the Settlements.

### 2. The reaction of the Settlement Class to the Settlements supports approval (*Grinnell* Factor # 2)

While Class Members continue to have an opportunity to file a claim, object or opt out, the Settlement Class's reaction so far indicates that they favor approval of the Settlements. *Wal-Mart Stores, Inc.*, 396 F.3d at 118 ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'"). To date, one objection to the State Street Settlement has been filed; there are no objections to the J.P. Morgan, UniCredit, or Natixis Settlements, and no requests for exclusion have been received, while more than 8,500

Notice Packets have been sent to Class Members. Decl. of Jack Ewashko on Behalf of A.B. Data, Ltd. Regarding Notice Administration ("AB Data Decl.") ¶¶ 16-17.

Notably, the Settlement Class includes sophisticated, experienced institutional investors with the financial expertise and wherewithal to scrutinize these Settlements. Consequently, the lack of objections and opt-outs is a strong affirmation by the Settlement Class of its support. *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013) (lack of institutional investor objection to settlement is an indicia of fairness). The Settlement Administrator will submit an updated report following the November 13, 2023 objection and opt-out deadline. Plaintiffs will address any objections that may be filed in their reply to this motion.

### 3. The stage of the proceedings and the amount of discovery completed favors approving the Settlements (*Grinnell* Factor # 3)

The Court's primary task in examining the stage of the proceedings and the discovery completed is to assess whether the settling parties "have engaged in sufficient investigation of the facts" to understand the strengths and weaknesses of their case, and whether the settlement is adequate given those risks. *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10. This factor does not require extensive formal discovery to have occurred, or indeed any formal discovery at all, "as long as [counsel can] 'intelligently make . . . an appraisal' of the settlement.'" *Id.*

That inquiry is satisfied here. As described herein and in the Prelim. Approval Mems., Co-Lead Counsel conducted extensive factual and legal research and consulted with experts to assess the strengths and challenges of Plaintiffs' claims. *See* ECF No. 208 at 9-10; ECF No. 255 at 11-12; ECF No. 348 at 13-15; *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *7. Defendants' motions to dismiss and the Court's rulings on those motions provided further critical information that was incorporated into the evaluation of the Settlements. Plaintiffs also reviewed the settlement cooperation received to date to refine Co-Lead Counsel's

understanding of the strengths, challenges, and risks of the Action in advance of each subsequent settlement negotiation. As a result, Plaintiffs had more than sufficient information with which to assess the Settlements and to find them fair, reasonable and adequate.

### 4. Settling Defendants' ability to withstand a greater judgment does not impact the fairness of these Settlements (*Grinnell* Factor #7)

There is little reason to doubt that Settling Defendants could withstand a greater judgment than they paid in settlement, but "fairness does not require that the [defendant] empty its coffers before this Court will approve a settlement." *LIBOR*, 327 F.R.D. at 494. Settling Defendants' ability to pay more than was offered in settlement does not indicate that the Settlements are unreasonable or inadequate. *See id.* at 495 ("this factor is intended to 'strongly favor settlement' when 'there is a risk that an insolvent defendant could not withstand a greater judgment' but that 'the ability of defendants to pay more, on its own, does not render the settlement unfair'"). The settlement cooperation added significant value to the Settlements and offsets any concern that Settling Defendants could have been subject to a greater judgment at trial.

### 5. The Settlements are reasonable given the risks and potential range of recovery (*Grinnell* Factors #8 and 9)

Courts examine the reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation. *Payment Card*, 330 F.R.D. at 47-48. "[T]he settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." *LIBOR*, 327 F.R.D. at 495. This analysis involves evaluating "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc.*, 396 F.3d at 119. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455 n.3.

As discussed in Plaintiffs' Prelim. Approval Mems., *see* ECF No. 208 at 13; ECF No. 255 at 16; ECF No. 348 at 17-18, the Settlements will provide substantial and timely cooperation to aid Plaintiffs in pursuing their claims and recover $40,000,000 on behalf of the Settlement Class. As a cooperation-only agreement, the State Street Settlement played a critical role as the "ice breaker" settlement in this multiparty action and helped "bring other Defendants to the point of serious negotiation." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). The State Street cooperation also directly led to the addition of twelve defendants that allegedly participated in the conspiracy.

The sole objection received to date is to the consideration obtained in the State Street settlement. *See* Joint Decl., Ex. 5 (December 7, 2022, January 1, 2023, March 16, 2023, March 22, 2023, March 28, 2023, and April 5, 2023 Letters from Terrence J. Hackett). Mr. Hackett argues the cooperation-only settlement is unfair. *Id*. As a threshold issue, Mr. Hackett is not a Class Member and thus lacks standing to object. *LIBOR*, 327 F.R.D. at 499 (collecting cases stating that only putative class members have standing to object to class settlements). Mr. Hackett represents that he is a beneficiary of Plaintiff Ohio Carpenters. *See* Joint Decl. Ex. 5 (January 2, 2023 Letter) (raising objection "as a participating pension benefit recipient of the Ohio Carpenters Pension Plan Fund"). The Settlement Class does not reach beneficiaries of pension funds; rather, it reaches only those who traded directly with Defendants:

> "Settlement Class" or "Class" means all persons or entities who or which purchased or sold one or more European Government Bond(s) in the United States directly from a Defendant or a direct or indirect parent, subsidiary, affiliate, or division of a Defendant, or any of their conspirators, from January 1, 2007 through December 31, 2012.

State Street Stipulation, ECF No. 209, Ex. 1., at 10. Ohio Carpenters is a Class Member (ECF No. 410, ¶123); Mr. Hackett is not. Moreover, Mr. Hackett failed to submit "documents sufficient to prove membership in the Settlement Class." Therefore, he – under the Court's order approving

the class notice plan for the State Street and JPMorgan Settlements – is "deemed to have waived his…right to object to any aspect of the proposed Settlement…and shall be forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy" of the Settlement "in this or any other proceeding."  ECF No. 315, ¶¶14(g), 15.

The objection also fails on the merits. The thrust of Mr. Hackett's objection is that the State Street Settlement is unfair in light of a wholly irrelevant criminal indictment of the bank. As discussed herein, the cooperation provided by State Street has proven to be extremely valuable, expanding the scope of the Action in the FAC by adding twelve additional defendants whose involvement was previously unknown to Plaintiffs. State Street was differently situated from other defendants in the Action, as it only maintained a European Government Bond trading desk for one year, from December 2010 through December 2011, with significant time spent during this period simply setting up the desk.  The desk was active for a limited time, after which State Street represented that it exited the European Government Bond market as a dealer.  Most importantly, State Street estimated that it had a very limited share, well below 1%, of the secondary market. That State Street's cooperation came early in the Action prior to discovery further enhanced its value. Taken together, the cooperation-only State Street Settlement is fair, and should the Court address Mr. Hackett's objection on the merits, it should be overruled.

The JPMorgan, UniCredit, and Natixis Settlements are also fair, reasonable, and adequate. Each is comparable to other early antitrust class settlements concerning bond markets. See In re Mexican Gov't Bonds Antitrust Litig., No. 18-cv-04673 (JPO), ECF No. 274 (S.D.N.Y. Oct. 29, 2021) (finally approving second-in settlement with JPMorgan for $15 million and cooperation); In re GSE Bonds Antitrust Litig., No. 19-cv-1704 (JSR), 2020 WL 3250593, at *1-2 (S.D.N.Y. Jun. 16, 2020) (finally approving second-in and third-in settlements with First

Tennessee Bank and Goldman Sachs for $14.5 million and $20 million, respectively, and cooperation).

Moreover, the remaining Defendants are subject to joint and several liability, which may allow the Settlement Class to recover their full losses from any defendant that participated in the alleged conspiracy. *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 519 (S.D.N.Y. 1996) ("Liability for antitrust violations is joint and several . . . . Each class member may recover his or her full loss from any defendant who can be shown to have participated in the alleged conspiracy."); *see also New York v. Hendrickson Bros.*, 840 F.2d 1065, 1086 (2d Cir. 1988) (amount recovered by a plaintiff from a co-conspirator in settlement of antitrust claims is not deductible from the amount of damages determined by the jury). The Settlements preserve Settlement Class Members' ability to be fully compensated for their losses should the litigation continue against non-settling Defendants. This risk for non-settling Defendants may in turn serve as a catalyst for additional settlements. *See In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 14-cv-2058 (JST), 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) (the right to seek entire damages from non-settling defendants "provides increased value . . . by creating added incentive for the remaining defendants to settle or allowing greater recovery for the Plaintiffs at trial").

Viewed in their totality, the Settlements are fair, reasonable, and adequate.

### 6. The Distribution Plan provides an effective and equitable method for distributing relief (Rule 23(e)(2)(C)(ii) and 23(e)(2)(D))

A plan of allocation is fair and reasonable if it has a "reasonable, rational basis." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM)(PED), 2010 WL 4537550, at *21 (S.D.N.Y. Nov. 8, 2010). Generally, a plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y 2012). A plan of allocation need not be tailored "with mathematical

precision." *PaineWebber*, 171 F.R.D. at 133. In determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("in determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel").

As detailed in the Distribution Plan and the motion for preliminary approval of the distribution and notice plans, Co-Lead Counsel developed the Distribution Plan in consultation with an industry expert and economist based on their experience consulting on bond manipulation and financial services antitrust cases. ECF No. 311 at 2. The Net Settlement Fund will be allocated on a *pro rata* basis according to a duration-adjusted weighting of each Authorized Claimant's transaction(s) in European Government Bonds. *Id* at 8.

This method for distributing settlement funds has been finally approved for use in an analogous antitrust case concerning the manipulation of bonds. *See, e.g.*, *GSE Bonds*, 414 F. Supp. 3d at 694-95 (preliminarily approving distribution plan); *In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *1 (re-adopting its analysis to finally approve settlements and distribution plan). The Distribution Plan should be similarly approved here.

### 7. The proposed attorneys' fee award confirms that the Class will receive substantial relief from the Settlements (Rule 23(e)(2)(C)(iii))

The attorneys' fees and expenses sought in connection with the Settlements are reasonable and ensure the Settlement Class is provided with substantial relief from the Net Settlement Fund. As disclosed in the Class Notice, Co-Lead Counsel seek 30% of the Settlement Funds ($12 million), to be paid, if approved by the Court, upon final approval of the Settlements. *See* Co-Lead Counsel's Motion for an Interim Award of Attorneys' Fees and Reimbursement of Expenses, filed herewith. As more fully described in the memorandum accompanying Co-Lead Counsel's motion, the percentage of attorneys' fees requested is reasonable given the range of

fee awards made in similarly sized settlements in this District and Co-Lead Counsel's prosecution of the Action. In addition, Co-Lead Counsel seek an award of $775,003.70 (1.9% of the Settlement Fund) for unreimbursed litigation costs and expenses incurred through May 16, 2023. *See Meredith Corp. v. SESAC LLC*, 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015) (reasonably incurred expenses may be reimbursed from the settlement fund). The expenses are of the type reasonably incurred in class action litigation.

### 8. The Settlements identify all relevant agreements, and such agreements do not impact the adequacy of the relief (Rule 23(e)(2)(C)(iv))

The Settlements fully describe the relief to which Class Members are entitled and all agreements that may impact the Settlement. This includes disclosing the existence of Supplemental Agreements that grant JPMorgan, UniCredit, and Natixis the qualified right to terminate their respective Settlements. *See* JPMorgan Stipulation ¶¶ 41-42, 57; Amended UniCredit Stipulation ¶¶ 41-42, 58; Amended Natixis Stipulation ¶¶ 41-42, 58. This type of agreement, often referred to as a "blow" provision, is common in class action settlements. *See, e.g.*, *GSE Bonds,* 414 F. Supp. 3d at 696 (finding, after review, that a similar blow provision "has no bearing on the settlement] approval analysis"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015).

## II.   THE PROPOSED SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

Federal Rule of Civil Procedure 23(a) provides that a movant must meet four requirements to be entitled to class certification: numerosity, commonality, typicality, and adequacy of representation. In addition, Rule 23(b)(3) provides that the movant must show both (i) that common questions predominate over any questions affecting only individual members, and (ii) that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

When the Court preliminarily approved the Settlements, it found that the applicable provisions of Rule 23(a) and 23(b)(3) have been satisfied and the Court would likely be able to approve the Settlements and certify the Settlement Class. *See* ECF No. 212 ¶ 1 (with respect to the State Street settlement); ECF No. 258 ¶ 1 (JPMorgan settlement); ECF No. 381 ¶ 1 (UniCredit settlement); ECF No. 382 ¶ 1 (Natixis settlement).   For the same reasons previously argued, the Court should grant final certification of the Class for purposes of the Settlements. Over 8,500 Notice Packets were mailed to potential Class Members, demonstrating the numerosity of the Settlement Class. AB Data Decl. ¶¶ 16-17; *see In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009) ("Sufficient numerosity can be presumed at a level of forty members or more."). Commonality is easily satisfied here as Plaintiffs and the Settlement Class transacted in European Government Bonds, allege injury caused by the conspiracy to manipulate European Government Bond prices, and the success of their claims would rest on the answers to the same body of common class-wide questions of fact and law relating to issues such as the impact of the alleged manipulation on these prices. Plaintiffs' claims are typical of the Settlement Class because liability would arise from the same course of conduct, Defendants' alleged manipulation of European Government Bond prices. As noted in Part I.A, *supra*, both Plaintiffs and Co-Lead Counsel are adequate representatives.[5]

Lastly, as required by Rule 23(b)(3), common questions predominate, and a class action is the superior method for resolving this case. Predominance exists because common questions, such as whether Defendants engaged in the alleged manipulation of European Government Bond prices, and other forms of generalized proof will determine the outcome of this litigation rather than individualized proof issues. The size of the Class supports the superiority of pursuing the

---

[5] Given Co-Lead Counsel's adequacy, the Court should also confirm their appointment as class counsel under FED. R. CIV. P. 23(g).

claims through a class action. *See In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004) (class action is "the superior method for the fair and efficient adjudication of the controversy" where the class is numerous). Moreover, a class action is superior because Settlement Class members have no substantial interest in proceeding individually in this case, given the complexity and expense of prosecuting this Action. Accordingly, Plaintiffs respectfully request that this Court finally certify the Settlement Class.

## III.   THE CLASS NOTICE PLAN INFORMED THE CLASS OF THE SETTLEMENTS AND SATISFIED DUE PROCESS

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." FED. R. CIV. P. 23(e)(1)(B). The standard for the adequacy of notice to the class is reasonableness. FED. R. CIV. P. 23(c)(2)(B) (for actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc.*, 396 F.3d at 114. The Settlement Class Members have received adequate notice and have been given sufficient opportunity to weigh in on or exclude themselves.

The Class Notice plan has been implemented. *See generally* AB Data Decl. The Settlement Administrator has transmitted more than 6,400 copies of the Notice Packet to potential Class Members using contact information provided by Settling Defendants, nominees, and certain non-settling Defendants pursuant to discovery requests and subpoenas. *Id.* ¶ 16. In addition, non-settling Defendants and Deutsche Bank and Rabobank have retained a third-party

agent, Rust Consulting Inc., which has now provided more than 2,200 copies of the Notice Packet to potential Class Members using contact information in their records, and one non-settling Defendant has supplemented with self-directed notice to its own counterparties. *See* ECF No. 335.[6] The publication notice was printed in five publications, and banner advertisements on at least six websites directed potential Class Members to the Settlement website www.EuropeanGovernmentBondsSettlement.com. AB Data Decl. ¶¶ 18-26.

The Class Notice plan, as well as the mailed notice and publication notice, satisfy due process. The mailed notice and publication notice are written in clear and concise language, and reasonably conveyed the necessary information to the average class member. *See Wal-Mart Stores, Inc.*, 396 F.3d at 114. Class Members have been advised on the nature of the action, including the relevant claims, issues and defenses. *See generally* ECF No. 375-3 (approved Settlement Class Notice). Class Members have been afforded a full and fair opportunity to consider the proposed Settlements, exclude themselves, and respond and/or appear in Court. Further, the Class Notice fully advised Class Members of the judgment's binding effect on them.

The Court should find that the Class Notice plan as implemented was reasonable and satisfied due process.

## CONCLUSION

For foregoing reasons, Plaintiffs respectfully request that Plaintiffs' Motion for Final Approval of Class Action Settlements with the Settling Defendants be granted.

---

[6] Citi and Deutsche Bank are still in the process of disseminating notice through Rust Consulting Inc. to a discrete subset of their European Government Bond counterparties. Plaintiffs will address notice to these potential Class Members in a forthcoming submission to the Court.

Dated: October 30, 2023                    /s/ Vincent Briganti
                                           Vincent Briganti
                                           Roland R. St. Louis, III
                                           **LOWEY DANNENBERG, P.C.**
                                           44 South Broadway, Suite 1100
                                           White Plains, NY 10601
                                           Telephone: 914-997-0500
                                           Facsimile: 914-997-0035
                                           vbriganti@lowey.com
                                           rstlouis@lowey.com

                                           Charles Kopel
                                           **LOWEY DANNENBERG, P.C.**
                                           One Tower Bridge
                                           100 Front Street, Suite 520
                                           West Conshohocken, PA 19428
                                           Telephone: 215-399-4770
                                           Facsimile: 610-862-9777
                                           ckopel@lowey.com

                                           Gregory S. Asciolla
                                           Matthew J. Perez
                                           **DICELLO LEVITT LLP**
                                           485 Lexington Avenue, Suite 1001
                                           New York, NY, 10017
                                           Telephone: 646-933-1000
                                           gasciolla@dicellolevitt.com
                                           mperez@dicellolevitt.com

                                           Brian M. Hogan
                                           **DICELLO LEVITT LLP**
                                           Ten North Dearborn Street, Sixth Floor
                                           Chicago, Illinois 60602
                                           Telephone: 312-214-7900
                                           bhogan@dicellolevitt.com

                                           Kristen M. Anderson
                                           Donald A. Broggi
                                           Michelle E. Conston
                                           Patrick J. Rodriguez
                                           **SCOTT+SCOTT**
                                           **ATTORNEYS AT LAW LLP**
                                           The Helmsley Building
                                           230 Park Ave., 17th Floor
                                           New York, NY 10169
                                           Telephone: 212-223-6444

Facsimile: 212-223-6334
kanderson@scott-scott.com
dbroggi@scott-scott.com
mconston@scott-scott.com
prodriguez@scott-scott.com

Daniel J. Brockwell
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
dbrockwell@scott-scott.com

David R. Scott
Amanda Lawrence
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
david.scott@scott-scott.com
alawrence@scott-scott.com

Joseph J. Tabacco, Jr.
Todd A. Seaver
Carl N. Hammarskjold
Christina Sarraf
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: 415-433-3200
Facsimile: 415-433-6382
jtabacco@bermantabacco.com
tseaver@bermantabacco.com
chammarskjold@bermantabacco.com
csarraf@bermantabacco.com

*Co-Lead Counsel for the Class*

27