# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE EUROPEAN GOVERNMENT BONDS ANTITRUST LITIGATION | Case No. 1:19-cv-2601 (VM) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF STIPULATION AND AGREEMENT OF SETTLEMENT WITH BANK OF AMERICA, N.A., MERRILL LYNCH INTERNATIONAL, NATWEST MARKETS PLC, NATWEST MARKETS SECURITIES INC., NOMURA INTERNATIONAL PLC, UBS AG, UBS EUROPES SE, UBS SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., CITIGROUP GLOBAL MARKETS LIMITED, JEFFERIES INTERNATIONAL LIMITED, <u>AND JEFFERIES LLC</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

PROCEDURAL BACKGROUND.........................................................................2

ARGUMENT ..........................................................................................................8

I.    THE COURT IS LIKELY TO GRANT FINAL APPROVAL OF THE
PROPOSED SETTLEMENT ..............................................................8

    A.    The Settlement Is Procedurally Fair Because It Was Achieved Through
Extensive Arm's-Length Negotiation (Rule 23(e)(2)(B)) ........................10

    B.    The Settlement Is Substantively Fair......................................................11

        1.    The Complexity, Expense, and Likely Duration of the Litigation
(*Grinnell* Factor #1) ....................................................................11

        2.    The Stage of the Proceedings and the Amount of Discovery
Completed (*Grinnell* Factor #3) ..................................................12

        3.    The Risks of Establishing Liability and Damages (*Grinnell* Factors
#4, #5) ..........................................................................................13

        4.    The Risks of Maintaining a Class Through Trial (*Grinnell* Factor
#6) ................................................................................................16

        5.    Settling Defendants Abilities to Withstand a Greater Judgment
(*Grinnell* Factor #7) ....................................................................16

        6.    The Range of Reasonableness of the Settlement Fund in Light of
the Best Possible Recovery and Attendant Risks of Litigation
(*Grinnell* Factors #8, #9)............................................................17

    C.    The Remaining Rule 23(e)(2) Factors Support Preliminary Approval of
the Settlement.........................................................................................18

        1.    Rule 23(e)(2)(A) – Plaintiffs and Co-Lead Counsel Have
Adequately Represented the Settlement Class .............................18

        2.    Rule 23(e)(2)(C) – The Monetary Relief and Remediation
Measures Provided by Settling Defendants Are Adequate, Taking
Into Account the Costs and Risks of Further Litigation and All
Other Relevant Factors.................................................................19

3.    Rule 23(e)(2)(D) – The Settlement Treats Class Members
Equitably Relative to Each Other ................................................21

II.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS AND
APPOINTMENT OF CO-LEAD COUNSEL AS COUNSEL FOR THE
SETTLEMENT CLASS IS WARRANTED........................................................22

III.    NOTICE TO THE SETTLEMENT CLASS ........................................................23

CONCLUSION........................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                   **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987) ................................18

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   No. 02 Civ. 5575(SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................12, 13

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
   No. 85 Civ. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987)....................................16

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 43 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.
   Integrated Res., Inc.*, 209 F.3d 43 (2d. Cir. 2000) ..................................................................9

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ................................................................................................................16

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) .................................................................................................18

*Garland v. Cohen & Krassner*,
   No. 08-CV-4626, 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011).........................................16

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................................12

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ..............................................................15, 16, 20, 22

*In re GSE Bonds Antitrust Litig.*,
   No. 19-CV-1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019)...................................9

*Guippone v. BH S&B Holdings LLC*,
   No. 09 Civ. 01029 (CM), 2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016)..............................16

*Henry v. Little Mint, Inc.*,
   No. 12 Civ. 3996 (CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ................................10

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ..................................................................................10

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................12, 15, 17

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................8, 19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013), *rev'd & vacated on other grounds*, 827
    F.3d 223 (2d Cir. 2016) .................................................................... 9, 12, 13, 16

*In re Processed Egg Prods. Antitrust Litig.*,
    284 F.R.D. 278 (E.D. Pa. 2012)....................................................................................11

*Richardson v. L'Oreal USA, Inc.*,
    951 F. Supp. 2d 104 (D.D.C. 2013) .............................................................................17

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011)............................................................................17

*Trombley v. Nat'l City Bank*,
    759 F. Supp. 2d 20 (D.D.C. 2011) ...............................................................................17

*In re Tronox Inc.*,
    No. 14 Civ. 5495, 2014 WL 5825308 (S.D.N.Y. Nov. 10, 2014) ..........................17

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001) ........................................................................................11

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)...................... 11, 17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .....................................................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................... 15, 23

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ................9

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...................15

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) .......................................................................................17

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    66 F. Supp. 3d 477 (S.D.N.Y. 2015)............................................................................10

*Yim v. Carey Limousine NY, Inc.*,
    No. 14-CV-5883, 2016 WL 1389598 (E.D.N.Y. Apr. 7, 2016) ...........................................17

**Statutes, Rules and Regulations**

15 U.S.C. §1 ..................................................................................................... 3, 6, 14, 20

Federal Rules of Civil Procedure

Rule 12(b)(2) ......................................................................................................... 3, 4, 5, 6

Rule 12(b)(6) ......................................................................................................... 3, 4, 5, 6

Rule 23 ........................................................................................................................ 2, 9, 21

Rule 23(a) .......................................................................................................................22

Rule 23(b) .......................................................................................................................22

Rule 23(c)(1)(B) .............................................................................................................22

Rule 23(e) ................................................................................................................. 2, 8, 21

Rule 23(e)(2) ............................................................................................................*passim*

Rule 23(e)(2)(A)-(D) ........................................................................9, 10, 18, 19, 21

Rule 23(e)(3) ......................................................................................... 9, 19, 20, 21

Rule 23(g) .......................................................................................................................22

Rule 23(g)(1)(A)(i)-(iv) ..................................................................................................22

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (Fourth),
    §21.63 (4th ed. 2023) .............................................................................................21

## INTRODUCTION

Plaintiffs have reached a proposed settlement of their claims with the remaining Defendants in this litigation. Pursuant to the Settlement Agreement,[1] Settling Defendants[2] will pay $80 million into escrow for the benefit of the Settlement Class. Co-Lead Counsel Decl., ¶4. If approved, this Settlement will resolve this case in its entirety with a total recovery for the Settlement Class of $120 million.[3]

As with Plaintiffs' prior settlements, this Settlement Agreement was reached after extended negotiations between experienced antitrust counsel, now informed by over five years of investigation, tens of thousands of pages of prior settlement cooperation and discovery, and hotly contested litigation concerning conduct extending back two decades. *Id.*, ¶¶6-9, 65, 69-71. This monetary Settlement affords the U.S. investors comprising the Settlement Class with their first, only, and best opportunity for recovery from Settling Defendants – many of which are located abroad and escaped liability or financial penalty from the European Commission's investigation into the European Government Bond market – for the alleged cartel conduct. As detailed below

---

[1]    Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement with Defendants, dated July 1, 2024 (the "Settlement Agreement"), attached as Exhibit 1, to the Joint Declaration of Patrick Coughlin, Vincent Briganti, Gregory S. Asciolla, and Todd A. Seaver in Support of Plaintiffs' Motion for Preliminary Approval of Stipulation and Agreement of Settlement ("Co-Lead Counsel Decl."), filed concurrently herewith.

[2]    "Settling Defendants" means: Bank of America, N.A., Merrill Lynch International, NatWest Markets Plc and NatWest Markets Securities Inc., Nomura International plc, UBS AG, UBS Europe SE and UBS Securities LLC, Citigroup Global Markets Inc. and Citigroup Global Markets Limited, Jefferies International Limited, and Jefferies LLC.

[3]    Plaintiffs previously settled with Defendants State Street Corporation and State Street Bank and Trust Company; JPMorgan Chase Bank, N.A., J.P. Morgan Securities plc, and J.P. Morgan Securities LLC; UniCredit Bank AG; and Natixis S.A. for a total of $40 million, which received final approval by the Court on April 19, 2024. ECF No. 485 (State Street Corporation and State Street Bank and Trust Company), No. 486 (JPMorgan Chase Bank, N.A., J.P. Morgan Securities plc, and J.P. Morgan Securities LLC), No. 484 (UniCredit Bank AG), No. 483 (Natixis S.A.).

and in the supporting documents, the Settlement – supported by each Plaintiff – is fair, reasonable, and adequate under the governing standards in this Circuit and amply satisfies all requirements of Fed. R. Civ. P. 23(e). In the face of the risk of an adverse outcome or the potential for lengthy delays and appeals, the Settlement resolves the case and provides an exceptional, immediate recovery for the Settlement Class.

Accordingly, Plaintiffs respectfully request that the Court enter the accompanying proposed Preliminary Approval Order that will (i) preliminarily approve the Settlement; (ii) provisionally certify the Settlement Class under Fed. R. Civ. P. 23 for settlement purposes only; (iii) appoint Ohio Carpenters' Pension Fund ("Ohio Carpenters"), Electrical Workers Pension Fund Local 103 I.B.E.W. ("IBEW 103"), and San Bernardino County Employees' Retirement Association ("SBCERA") as Class Representatives and designate Scott+Scott Attorneys at Law LLP, Lowey Dannenberg P.C., DiCello Levitt LLP, and Berman Tabacco as Settlement Class Counsel; (iv) approve the notice plan for the Settlement Class; (v) appoint A.B. Data, Ltd. ("A.B. Data") as Settlement Claims Administrator; (vi) appoint The Huntington National Bank ("Huntington") as the escrow agent; and (vii) approve the proposed schedule for completing the settlement process and set a date for a final Fairness Hearing.

## PROCEDURAL BACKGROUND

On March 4 and March 22, 2019, Plaintiffs IBEW 103 and Ohio Carpenters filed their initial complaints, triggered by an announcement by the European Commission that it issued a Statement of Objections to eight banks. Co-Lead Counsel Decl., ¶9. Shortly thereafter, on April 26, 2019, the Court appointed Scott+Scott Attorneys at Law LLP ("Scott+Scott"), Lowey Dannenberg P.C. ("Lowey Dannenberg"), and DiCello Levitt LLP ("DiCello Levitt") as interim

co-lead counsel in the Action. *Id.*, ¶10.[4] On April 23, 2021, Berman Tabacco was appointed as additional interim co-lead counsel. *Id.*

On June 11, 2019, Plaintiffs filed the Consolidated Class Action Complaint, which named UniCredit Bank AG ("UniCredit") and UniCredit Capital Markets LLC as defendants for the first time based on public reports that the bank had received a Statement of Objections from the European Commission.[5] *Id.*, ¶11. Following several rounds of pre-motion letters to dismiss the complaint and amendment of the complaint thereafter, Plaintiffs filed the Third Amended Complaint ("TAC") on December 3, 2019. *Id.*, ¶14-15. The TAC added Natixis S.A. ("Natixis") as a defendant for the first time based on public reports that the bank had received a Statement of Objections from the European Commission. *Id.*, ¶15.

On July 23, 2020, the Court issued its Decision and Order granting in part and denying in part Defendants' Rule 12(b)(2) and 12(b)(6) motion to dismiss the TAC ("July 23 Decision and Order"). *Id.*, ¶17. The Court sustained Plaintiffs Ohio Carpenters' and IBEW 103's claim under §1 of the Sherman Act, 15 U.S.C. §1, finding that Plaintiffs had plausibly alleged a conspiracy to fix European Government Bond prices against Natixis, and Nomura International plc and Nomura Securities International Inc. (together, "Nomura"). *Id.* The Court, however, dismissed Defendants Bank of America Merrill Lynch International Designated Activity Company ("BAML") and NatWest Markets plc on personal jurisdiction grounds. *Id.* In addition, the Court dismissed Plaintiffs' claims against BAML, UniCredit, and UniCredit Capital Markets LLC on antitrust

---

[4]    On March 8, 2022, the Court entered an order amending the Court's Amended Case Management Order No. 1, which substituted DiCello Levitt for Labaton Sucharow LLP. *Id.*, ¶1, fn 1.

[5]    *See* Gianluca Semeraro & Silvia Aloisi, *Italy's UniCredit says it is among banks accused of running bond cartel*, REUTERS (Apr. 11, 2019), https://www.reuters.com/article/us-eu-antitrust-banks-unicredit/italys-unicredit-says-it-is-among-banksaccused-of-running-bond-cartel-idUSKCN1RN0UW.

standing grounds and dismissed BAML, Bank of America, N.A., Merrill Lynch International, NatWest Markets plc (f/k/a Royal Bank of Scotland plc), NatWest Markets Securities Inc. (f/k/a RBS Securities Inc.), UBS AG, UBS Europe SE, and UBS Securities LLC (f/k/a UBS Warburg LLC) for failure to connect these Defendants to the antitrust conspiracy alleged in the TAC. *Id*. Natixis and Nomura filed a motion for reconsideration of the July 23 Decision and Order, which Plaintiffs opposed. *Id*., ¶18.

On October 9, 2020, Plaintiffs and State Street executed a term sheet, which required State Street to provide significant and immediate cooperation upon its execution. *Id.*, ¶20. Pursuant to the Court's direction in the July 23 Decision and Order, Plaintiffs sought leave to amend the TAC to replead against the dismissed Defendants, and the parties agreed on a schedule for amendment, permitting Plaintiffs to file their Fourth Amended Complaint ("FAC") 60 days after the Court's decision on Natixis and Nomura's motion for reconsideration. *Id.*, ¶19. The Court denied Natixis and Nomura's motion for reconsideration on December 11, 2020. *Id.*, ¶21. Accordingly, on February 9, 2021, Plaintiffs filed the FAC, which included the named defendants in the TAC, and identified an additional 12 Defendants. *Id.*, ¶22. Among other things, the FAC incorporated cooperation materials provided by State Street and added SBCERA as a Plaintiff. *Id.*

On April 16, 2021, Defendants served Plaintiffs with three pre-motion letters informing Plaintiffs of their intent to move to dismiss the FAC under Rule 12(b)(2) and 12(b)(6). *Id.*, ¶24. On May 17, 2021, Plaintiffs served Defendants with letters responding to Defendants' pre-motion letters. *Id.*

On May 20, 2021, the European Commission announced the issuance of a decision against Bank of America, Natixis, Nomura, NatWest, UBS, and UniCredit for their participation in a cartel in the primary and secondary market for European Government Bonds and imposed fines totaling

over €371 million ($454.4 million) on, among others, Nomura (€129.6 million or $158.5 million) and UBS (€172.4 million or $210.9 million) based on their participation in the European Government Bond cartel. *Id.*, ¶25. The European Commission granted full immunity to NatWest for first reporting the cartel, thereby averting a €260 million (or $318.1 million) fine. *Id.* Bank of America also avoided a fine because the European Commission found its activity in the cartel fell outside of the limitation period for imposition of fines. *Id.*

On May 26, 2021, Plaintiffs filed a pre-motion letter requesting a conference for the purpose of filing a request for judicial notice of the May 20, 2021 press release issued by the European Commission regarding its European Government Bonds decision. *Id.*, ¶26. On June 4, 2021, Defendants responded to Plaintiffs' judicial notice letter and notified the Court of the parties' failure to resolve their dispute over the appropriateness of the filing of a motion to dismiss. *Id.*

On June 15, 2021, Plaintiffs moved for preliminary approval of the State Street settlement. *Id.*, ¶27. The Court issued an order on June 16, 2021 that granted Plaintiffs' motion and deferred the issuance of the settlement notice. *Id.*

On November 1, 2021, Plaintiffs filed a pre-motion letter requesting a conference for the purpose of filing a request for judicial notice of the European Commission's Provisional Non-Confidential Decision ("Decision") and Summary of the Decision. *Id.*, ¶28. The 248-page Decision included chatroom communications which the European Commission found "occurred regularly, sometimes daily, in particular when EGB came up for auction. Communications could be lengthy, lasting all day or spanning multiple days." *Id.* On November 9, 2021, Defendants replied to Plaintiffs' judicial notice letter. *Id.*, ¶29. On March 2, 2022, the Court denied Plaintiffs' requests for a conference and stated that it would construe Plaintiffs' letter motions as requests for judicial

notice of the European Commission's May 20, 2021 press release, Decision, and Summary of the Decision to be addressed in connection with the pending motions to dismiss the FAC. *Id*.

On March 14, 2022, the Court issued its Decision and Order granting in part and denying in part Defendants' Rule 12(b)(2) and 12(b)(6) motion to dismiss the FAC ("March 14 Decision and Order"). *Id.*, ¶30. The Court sustained Plaintiffs' claim under §1 of the Sherman Act, 15 U.S.C. §1, against Natixis,[6] UniCredit, Citigroup Global Markets Limited and Citigroup Global Markets Inc. (together "Citigroup"), and Jefferies International Limited and Jefferies LLC (together "Jefferies"). *Id*. The Court, however, dismissed Defendant NatWest Markets plc on personal jurisdiction grounds. *Id*. In addition, the Court dismissed Plaintiffs' claims against UniCredit Capital Markets LLC on antitrust standing grounds, dismissed Plaintiffs' claims against JPMorgan as untimely, and dismissed Bank of America, N.A., Merrill Lynch International, NatWest Markets plc, NatWest Markets Securities Inc., RBC Europe Limited, Royal Bank of Canada, RBC Capital Markets, UniCredit Capital Markets LLC, UBS AG, UBS Europe SE, and UBS Securities LLC for failure to connect these Defendants to the antitrust conspiracy alleged in the FAC. *Id*.

On March 28, 2022, UniCredit and Natixis filed separate motions for reconsideration of the March 14 Decision and Order, while Citigroup and Jefferies filed a joint motion for reconsideration of the order, all of which Plaintiffs opposed. *Id.*, ¶31. On June 16, 2022, the Court denied the motions for reconsideration of the March 14 Decision and Order in their entirety. *Id.*, ¶33.

On April 29, 2022, Plaintiffs moved for preliminary approval of the JPMorgan settlement. *Id.*, ¶32. JPMorgan agreed to pay $13 million into a Settlement Fund for the benefit of that settlement's defined class members. JPMorgan Stipulation, ¶36 (ECF No. 256-1). The Court

---

[6]     Plaintiffs subsequently voluntarily dismissed Nomura Securities International Inc.

preliminarily approved the JPMorgan settlement on May 2, 2022, and deferred issuance of notice of the settlement. Co-Lead Counsel Decl., ¶32.

On November 11, 2022, Plaintiffs moved for preliminary approval of the notice program and plan of distribution for the State Street and JPMorgan Settlements. *Id.* On November 17, 2022, the Court approved the proposed notice program and plan of distribution. *Id.* Accordingly, notice of the State Street and JPMorgan settlements commenced on February 1, 2023. *Id.* However, due to issues with disseminating notice to certain non-settling Defendants' counterparties, the Court vacated all deadlines for the State Street and JPMorgan settlements on March 21, 2023. *Id.*

On July 19, 2022, the Court entered the Civil Case Management Plan and Scheduling Order (the "Plan"), which ordered Plaintiffs to file any amended pleadings no later than October 17, 2022. *Id.*, ¶34. This deadline was subsequently extended to November 7, 2022. *Id.* On November 7, 2022, Plaintiffs filed a motion for leave to amend the FAC and attached a [Proposed] Fifth Amended Complaint. *Id.*, ¶40. On December 19, 2022, certain Defendants filed their opposition to Plaintiffs' motion to amend. *Id.* Plaintiffs filed their reply brief on January 13, 2023. *Id.* On September 25, 2023, the Court granted Plaintiffs' motion for leave to amend and Plaintiffs filed their Fifth Amended Complaint on October 16, 2023, which included new allegations and realleged claims against Defendants NatWest, Bank of America, and UBS. *Id.*, ¶¶50-51.

On May 12, 2023, Plaintiffs moved for preliminary approval of the UniCredit and Natixis settlements, which the Court granted on May 16, 2023. *Id.*, ¶42. UniCredit agreed to pay $13 million into a Settlement Fund for the benefit of all Settlement Class Members. Amended UniCredit Stipulation, ¶¶1.ll, 13 (ECF No. 375-2). Natixis agreed to pay $14 million into a Settlement Fund for the benefit of all Settlement Class Members. Natixis Stipulation, ¶¶1.ll, 13 (ECF No. 375-1). On July 11, 2023, Plaintiffs and UniCredit executed an Amended UniCredit

Stipulation, and Plaintiffs and Natixis executed an Amended Natixis Stipulation following the Court's order to remove Rabobank and Deutsche Bank from the definition of Defendants in the Stipulations. Co-Lead Counsel Decl., ¶¶46-47 (citing ECF Nos. 375-377). On July 12, 2023, the Court granted preliminary approval of the Amended UniCredit Stipulation and Amended Natixis Stipulation. *Id*., ¶47 (citing ECF Nos. 381, 382).

A final Fairness Hearing for the settlements with State Street, JPMorgan, UniCredit, and Natixis occurred on April 19, 2024, at which time the Court approved each settlement and entered final judgment. *Id*., ¶67 (citing ECF Nos. 483-87).

On or about April 15, 2024, Plaintiffs and Settling Defendants (the "Parties") executed a term sheet agreeing to the material terms of a resolution of the Action, and on July 18, 2024, the Parties executed the Settlement Agreement. *Id.*, ¶¶71-72. The Settling Defendants agreed to pay $80 million collectively into the Settlement Fund for the benefit of all Settlement Class Members. *Id.,* ¶73.

<u>**ARGUMENT**</u>

## I.    THE COURT IS LIKELY TO GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT

Rule 23(e) requires court approval of a proposed class action settlement upon finding that the proposal "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The preliminary approval process is governed by a "'likelihood standard'" – requiring the Court to assess whether the parties have shown that "the court will ***likely*** be able to grant final approval and certify the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019). In weighing preliminary approval, the Court must consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D). These Rule 23 factors "supplement rather than displace the[] '*Grinnell'* factors" traditionally considered in the Second Circuit to evaluate the substantive fairness of a settlement during the preliminary approval process. *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019). *City of Detroit v. Grinnell Corporation* requires the Court to weigh the following factors to determine whether a proposed settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).[7] As demonstrated below, the Settlement warrants preliminary approval because it is both procedurally and substantively fair under the traditional *Grinnell* factors and those listed under Rule 23(e)(2).

---

[7]    *Grinnell* factor #2 (the reaction of the settlement class) is generally inapplicable prior to disseminating notice. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 221 (E.D.N.Y. 2013) (declining to address "the reaction of the class to the settlement"), *rev'd & vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016); *see also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature."). Thus, this analysis will not include this factor.

A.    **The Settlement Is Procedurally Fair Because It Was Achieved Through Extensive Arm's-Length Negotiation (Rule 23(e)(2)(B))**

To determine whether a settlement is procedurally fair, courts evaluate the process undertaken to achieve it. *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). In July 2023, Plaintiffs and Settling Defendants started to engage in settlement negotiations. Co-Lead Counsel Decl., ¶68. During the negotiations, each side presented its view of the Action, including the likelihood of success at class certification and summary judgment, and Settling Defendants' role in the conspiracy alleged in the Fifth Amended Complaint. *Id.*, ¶70. Subsequent negotiations took place over the course of eight months, and included meetings, phone calls and emails. *Id.*, ¶¶ 68-71. At all times, the negotiations were at arm's length, and counsel zealously advocated for their respective clients. *Id.*, ¶71. The negotiations took on greater intensity in early 2024 and, on or about April 15, the Parties executed a term sheet that reflected certain material monetary and other terms of a settlement. *Id.*

Co-Lead Counsel have considered the uncertain outcome and risks of further litigation and believe the Settlement confers significant monetary benefits on the Settlement Class. Importantly, the Settlement Agreement is the result of lengthy and hard-fought litigation over five-plus years, and intense negotiations between counsel experienced in complex antitrust class action litigation. *Id.*, ¶¶6, 68-71. With fact discovery underway and thousands of documents (including chatroom communications between traders) reviewed, Co-Lead Counsel were well-informed about the facts and strengths of the claims asserted when the negotiations began.

Based on these considerations, "there is a presumption that the terms of the settlement are also fair and reasonable." *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 477, 482 (S.D.N.Y. 2015); *see also Henry v. Little Mint, Inc.*, No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *6 (S.D.N.Y. May 23, 2014) ("If the settlement was achieved through

experienced counsels' arm's-length negotiations, '[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'") (internal citation omitted). Thus, an initial presumption of fairness attaches to the Settlement. *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 296 (E.D. Pa. 2012).

**B.    The Settlement Is Substantively Fair**

**1.    The Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor #1)**

This Action involves complex issues of law and fact. Defendants' arguments raised in their pre-motion letters to dismiss the TAC (ECF No. 110) and FAC (ECF No. 206), and in opposition to Plaintiffs' motion to amend the TAC (ECF No. 320), illustrate the complexity of the Action. For example, Defendants have argued that Plaintiffs' economic analysis of bid-ask spreads failed to show that each Defendant conspired for six years across 13 bond-issuing countries. Moreover, Defendants argued that Plaintiffs' economic analysis of European Government Bond auctions reflected the results of ordinary market forces, not manipulation. Defendants also asserted that the Court should interpret the chatroom transcripts as consistent with ordinary market conduct rather than as evidence of collusion, as Plaintiffs contend. Defendants further contend that the European Commission decision, currently under appeal, was inconsistent with a finding of conspiracy, or at least the conspiracy alleged in the Fifth Amended Complaint.

As these disputed issues of laws and facts demonstrate, and as numerous courts have recognized "'[f]ederal antitrust cases are complicated, lengthy . . . bitterly fought[,]' as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (internal citation omitted); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"). Settling Defendants were certain to mount formidable defenses to fact discovery and class certification

11

(including in a potential interlocutory appeal to the Second Circuit). *See Payment Card*, 986 F. Supp. 2d at 222 n.13 (noting that "[i]n the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision"). Settling Defendants also would have asserted numerous arguments and defenses at summary judgment and trial. A jury trial might well turn on questions of proof, many of which would be the subject of dueling expert testimony, making the outcome of such trial uncertain for both Parties. In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998). Accordingly, this factor weighs in favor of preliminary approval of the Settlement.

### 2. The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor #3)

In assessing the fairness of a settlement at preliminary approval, the Court inquires as to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02 Civ. 5575(SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("[T]he question is whether the parties had adequate information about their claims.") (internal citation omitted).

Here, Co-Lead Counsel's knowledge of the merits and potential weaknesses of Plaintiffs' claims, honed through five years of litigation, supports preliminary approval of the Settlement. Co-Lead Counsel have undertaken an extensive investigation, which included engaging two sets of experts, one of which analyzed the price of French and Italian 10-year bonds in and around auctions for the period of 2006-2013, while the other collected and analyzed millions of Italian,

French, German, and Spanish government bond quotes in the secondary market from 2004 through 2015.

Moreover, by the time an agreement was reached with the Settling Defendants, Plaintiffs had received and reviewed 37,816 pages of documents produced in connection with the earlier settlements and produced by the Settling Defendants in discovery. Co-Lead Counsel Decl., ¶65. These documents included chatroom transcripts involving each of the Settling Defendants' traders. *Id.*, ¶65. Plaintiffs also reviewed and analyzed the European Commission's 248-page Decision, as well as non-public documents produced by Defendants underlying the Decision. *Id.*, ¶28, 65. Plaintiffs also had the benefit of evaluating: (i) four rounds of pre motion-to-dismiss letters from the Defendants, which also resulted in Plaintiffs amending the complaint; (ii) the Court's rulings on Defendants' motions to dismiss the TAC and FAC; (iii) four motions for reconsideration; (iv) the Court's rulings on the motions for reconsideration; (v) Defendants' arguments in opposition to Plaintiffs' motion to amend the FAC; and (vi) the Court's ruling on Plaintiffs' motion to amend the FAC. *Id.*, ¶¶ 12, 14, 16-18, 21, 24, 30-31, 33, 40, 50. By the time Plaintiffs and the Settling Defendants' negotiations commenced in July 2023, Co-Lead Counsel were well apprised of the strengths and weaknesses of Plaintiffs' claims.

Co-Lead Counsel "'have engaged in sufficient investigation of the facts to enable the Court to "intelligently make . . . an appraisal" of the Settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10 (internal citations omitted). Therefore, this factor weighs in favor of preliminary approval.

### 3. The Risks of Establishing Liability and Damages (*Grinnell* Factors #4, #5)

To assess this factor, "'the Court should balance the benefits afforded the Class, including the **immediacy** and **certainty** of a recovery, against the continuing risks of litigation.'" *Payment Card*, 986 F. Supp. 2d at 224. Had the Parties not reached the Settlement now, it is likely that this

case would have been litigated for years, as Defendants have vigorously contested liability and damages.

Defendants' multiple motions to dismiss have already raised issues of law and fact that posed risks to Plaintiffs' claims. In their motion to dismiss, which the Court considered in the July 23 Decision and Order (ECF No. 110), Defendants argued that Plaintiffs failed to allege a plausible conspiracy to fix prices of European Government Bonds across all Eurozone auctions. Defendants also challenged the findings of the statistical analysis in the TAC, arguing that the inverted "V" pattern observed in the primary market was the result of ordinary market forces, not manipulation. Moreover, Defendants argued that allegations of widening of Defendants' bid-ask spreads for Italian bonds did not reflect collusion across all other Eurozone members' bonds in the secondary market. While Plaintiffs believe they would be able to prove the agreement element of their Sherman Act claim, success was far from guaranteed.

Defendants' subsequent motion to dismiss, which the Court considered in the March 14 Decision and Order (ECF No. 236), successfully dismissed certain claims and defendants, including Bank of America, NatWest, and UBS. Only with the addition of excerpts of chatroom transcripts included in the European Commission's Decision and obtained from prior settling Defendants and during discovery were the Plaintiffs able to bolster their allegations to successfully add Bank of America, NatWest, and UBS back into the case. ECF No. 402. While Plaintiffs prevailed at the pleading stage and believed they would continue to prevail as the case progressed, they faced significant risk at summary judgment and trial on this element, where the burden of proof would be more difficult to satisfy.

Based on their experience in similar complex class action cases, Co-Lead Counsel anticipates discovery would have been lengthy and costly absent the Settlement. Prosecuting this

action would have required the analysis of complex financial data, the creation of sophisticated damage models to help explain and prove the nature of Defendants' alleged misconduct, and the deciphering of intra-firm communications and documents, including chatroom transcripts involving trader jargon. Meanwhile, Settling Defendants likely would have undertaken their own discovery, with the aim to provide their own evidence to create ambiguities that may refute or weaken Plaintiffs' evidence of collusion or bolster Defendants' affirmative defenses, such as the statute of limitations. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) ("Given that [ ] defendants contend that they can present a strong case against plaintiffs after discovery, there is no guarantee that plaintiffs will be able to prove liability.").

Even if Plaintiffs established liability, they would still face the difficulties inherent in proving damages. Plaintiffs' theory of damages will be hotly contested, and there is no doubt that at trial the issue will involve a "'battle of the experts.'" *NASDAQ*, 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Thus, there was a substantial risk that a jury would accept one or more of Defendants' damages arguments, or award far less than the value of the Settlement, or nothing at all. Indeed, "'the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005).

In short, "[t]here is a substantial risk that the plaintiff[s] might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and

appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 Civ. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). In contrast, the Settlement resolves the case and provides a significant, immediate, and certain monetary benefit to the Settlement Class.

### 4.   The Risks of Maintaining a Class Through Trial (*Grinnell* Factor #6)

Although the "risk of maintaining a class through trial is present in [every] class action," *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 01029 (CM), 2016 WL 5811888, at *7 (S.D.N.Y. Sept. 23, 2016), "this factor [nevertheless] weighs in favor of settlement" where "it is likely that defendants would oppose class certification" if the case were to be litigated. *Garland v. Cohen & Krassner*, No. 08-CV-4626, 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011). While Plaintiffs are confident the Court would certify a litigation class, Defendants would have vigorously opposed the motion. *See GSE Bonds*, 414 F. Supp. 3d at 694 (the risk of maintaining a class through trial "'weighs in favor of settlement' where 'it is likely that defendants would oppose class certification' if the case were to be litigated'") (internal citations omitted). The losing party would have undoubtedly sought interlocutory review, thus further extending the timeline of the litigation. *See Payment Card*, 986 F. Supp. 2d at 222 n.13 ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision."). Thus, there is a risk that this litigation might not be maintained as a class through trial. *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013) (reversing class certification in an antitrust case).

### 5.   Settling Defendants Abilities to Withstand a Greater Judgment (*Grinnell* Factor #7)

"'[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this

fact alone does not undermine the reasonableness of the instant settlement.'" *Vitamin C*, 2012 WL 5289514, at *6 (internal citation omitted); *see also In re Tronox Inc.*, No. 14-cv-5495, 2014 WL 5825308, at *6 (S.D.N.Y. Nov. 10, 2014) ("The law does not require a defendant to completely empty its pockets before a settlement may be approved—indeed, if it did, it is hard to imagine why a defendant would ever settle a case."). Here, the financial obligation the Settlement imposes on Settling Defendants is significant, particularly since it adds to regulatory penalties some of the Settling Defendants have been assessed relating to the same conduct. That Settling Defendants might be able to withstand a greater judgment does not undermine the reasonableness of the Settlement here.

**6.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation (*Grinnell* Factors #8, #9)**

At preliminary approval, the range of reasonableness factor is satisfied when, as here, there are no obvious doubts as to the adequacy of the settlement amount. *See, e.g.*, *Yim v. Carey Limousine NY, Inc.*, No. 14-CV-5883, 2016 WL 1389598, at *4 (E.D.N.Y. Apr. 7, 2016) (granting preliminary approval of settlement without submission of "a specific number as [plaintiffs'] best possible recovery, particularly at this stage of preliminary approval, where the level of inquiry is more lenient than at final approval").[8] In applying this factor, "[d]ollar amounts [in class settlement

---

[8]    *See also Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 24-26 (D.D.C. 2011) (granting preliminary approval based on no obvious deficiency on adequacy of settlement amount but indicating additional information required for final approval); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 569 (N.D. Ill. 2011) (same); *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 107-08 (D.D.C. 2013) (preliminarily approving settlement where valuing monetary damages would be challenging). Even at final approval, in some cases, "the exact amount of damages need not be adjudicated." *NASDAQ*, 187 F.R.D. at 478; *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (affirming district court approval of a settlement without quantifying the expected value of continued litigation where quantifying damages "would have required testimony by a damages expert," and that testimony would have "resulted in a lengthy and expensive battle

agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987). At preliminary approval, this factor is satisfied when there are no obvious doubts as to the adequacy of the settlement amount.

In Co-Lead Counsel's view, Settling Defendants' payment of $80 million, resulting in a $120 million aggregate settlement fund, is an excellent result for the Settlement Class. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (stating "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal citations omitted).

**C.    The Remaining Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement**

**1.    Rule 23(e)(2)(A) – Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class**

Plaintiffs each share the same interest as the Settlement Class in prosecuting this Action to ensure the greatest recovery from Settling Defendants. Plaintiffs are part of the Settlement Class and suffered the same injuries as other Settlement Class Members – *i.e.*, monetary losses, when they were overcharged or underpaid in their transactions with Defendants in European Government Bonds. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) ("'class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members'") (internal citations omitted). Plaintiffs have played an active role in this case's development, prosecution, and settlement. *See Denney v. Deutsche Bank AG*, 443 F.3d 253,

---

of the experts, with the costs of such a battle borne by the class – exactly the type of litigation the parties were hoping to avoid by settling").

268 (2d Cir. 2006) (stating that a class representative "must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members"). Thus, Plaintiffs are adequate representatives of the Settlement Class and should be appointed as class representatives for settlement purposes. Further, Co-Lead Counsel have demonstrated they are qualified, experienced, and able to conduct the litigation. *See* §II., *infra*.

> **2.    Rule 23(e)(2)(C) – The Monetary Relief and Remediation
> Measures Provided by Settling Defendants Are Adequate,
> Taking Into Account the Costs and Risks of Further Litigation
> and All Other Relevant Factors**

To assess whether this relief is adequate, Rule 23(e)(2)(C) requires the Court to consider:

(i)     the costs, risks, and delay of trial and appeal;
(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
(iv)    any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv). Plaintiffs previously discussed Rule 23(e)(2)(C)(i) in §§I.B.1, I.B.3, and I.B.4, *supra*.[9] The remaining Rule 23(e)(2)(C) factors support preliminarily approving the Settlement.

> **a.    Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(C)(iii) –
> Effectiveness of Any Proposed Method of Distributing
> Relief to the Class and the Terms of Any Proposed
> Award of Attorneys' Fees**

Rule 23(e)(2)(C)(ii) requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member

---

[9]     *Grinnell* factor #1, #4, #5, and #6 are subsumed by Rule 23(e)(2)(C)(i), which analyzes the costs, risks, and delay of trial and appeal. *Payment Card*, 330 F.R.D. at 36 (noting that this assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial, and considering each *Grinnell* factor in its analysis).

claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "'A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding.'" *GSE*, 414 F. Supp. 3d at 694.

The Court has already preliminarily approved virtually the same Distribution Plan in connection with the JPMorgan, UniCredit, and Natixis settlements. ECF Nos. 315, 381, and 382. As discussed in greater detail *infra* §I.C.2.3, Plaintiffs propose an amended Distribution Plan that will combine and distribute the proceeds from this Settlement alongside Plaintiffs' prior approved settlements. The Claims Administrator will apply the same principles to distribute the Settlement to Authorized Claimants, allocating the funds on a *pro rata* basis according to a duration-adjusted weighting of each Authorized Claimant's transaction(s) in European Government Bonds. Co-Lead Counsel Decl., Ex. 6. As this Court already preliminarily found, and Judge Rakoff found in an analogous case concerning the manipulation of bonds issued by U.S. government-sponsored enterprises, *see GSE Bonds*, 414 F. Supp. 3d at 694-95, the Distribution Plan fairly, adequately, and rationally distributes the Net Settlement Fund to the Settlement Class, while minimizing administrative costs and the amount of effort required for Class Members to file a claim.

> **b.    Rule 23(e)(2)(C)(iv) – Any Agreement Required to Be Identified Under Rule 23(e)(3)**

This factor requires courts to consider "'any agreement required to be identified by Rule 23(e)(3),' that is, 'any agreement made in connection with the proposal.'" *GSE Bonds*, 414 F. Supp. 3d at 696. The sole agreement required to be disclosed under Rule 23(e)(3) is a "Supplemental Agreement" Plaintiffs separately executed with Settling Defendants that provides Settling Defendants with the qualified right to withdraw or terminate the Settlement upon the occurrence of certain conditions. Settlement Agreement, ¶38. This qualified right arises if potential Settlement Class Members who meet certain criteria exclude themselves from the Settlement

Class. *Id*. To determine whether certain conditions are met, Plaintiffs and Settlement Defendants have the right, but not the obligation, to subpoena putative Settlement Class Members that exclude themselves for documents pertinent to the threshold. *Id.*, ¶39. These types of agreements are common in class action settlements and are generally allowed to remain confidential because "[k]nowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out." *See generally* Manual for Complex Litigation (Fourth) §21.631 (4th ed. 2023); *see also* Fed. R. Civ. P. 23(e) advisory committee's note to 2003 amendment.

### 3.    Rule 23(e)(2)(D) – The Settlement Treats Class Members Equitably Relative to Each Other

This Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendments. The Release treats all Settlement Class Members equitably relative to one another, including Plaintiffs. Subject to Court approval, all Settlement Class Members will be giving Settling Defendants an identical release running to the identical factual predicate of the Action. Settlement Agreement, ¶¶3-9.

Further, the Distribution Plan treats all Class Members, including Plaintiffs and claimants on Plaintiffs' prior settlements, the same. Under the amended Distribution Plan, the Net Settlement Fund represents the accumulated proceeds from this Settlement, as well as the settlements with JPMorgan, UniCredit, and Natixis.[10] The Net Settlement Fund will be allocated on a *pro rata* basis

---

[10]    By combining all settlements into one distribution, a process recommended by Plaintiffs' Claim Administrator, the amended Distribution Plan avoids potential inconsistencies between treatment of claims submitted in connection with Plaintiffs' first round of settlements and saves additional claims administration costs that would arise from successive distributions.

according to a duration-adjusted weighting of each Authorized Claimant's transaction(s) in European Government Bonds. The Distribution Plan allocates the Net Settlement Fund based on "Risk Number," which is a widely accepted measure of the sensitivity of a bond's price to changes in yield (bond prices move inversely with yields). Co-Lead Counsel Decl., Ex. 6. Bonds of longer durations are impacted more by price moves and carry higher Risk Numbers. European Government Bond transactions will be placed into one of 45 categories based on the remaining years to maturity when purchased or sold, and each category has its own "Risk Number" and a preliminarily assigned Multiplier based on the Risk Number. For each claim, the Claims Administrator will multiply the net prices (the notional value of a bond multiplied by the purchase or sale price, not including any accrued interest purchased or sold) for all the eligible bonds in each category by the corresponding Multiplier and sum those amounts to obtain the Authorized Claimant's Individual Transaction Claim Amount. The Individual Transaction Claim Amount is ***not*** the Authorized Claimant's payment amount. The Claims Administrator will calculate each Authorized Claimant's *pro rata* share by dividing the Individual Transaction Claim Amount by the total of all Transaction Claim Amounts.

## II. PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS AND APPOINTMENT OF CO-LEAD COUNSEL AS COUNSEL FOR THE SETTLEMENT CLASS IS WARRANTED

A settlement class may be certified where the proposed class "meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b)." *GSE Bonds*, 414 F. Supp. 3d at 700. Because the Settlement Class proposed here is substantially similar to the settlement class that the Court previously certified for settlement purposes (ECF Nos. 483, ¶4; 484, ¶4; 485, ¶4; 486, ¶4), the Court will likely be able to certify the Settlement Class.

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B) (considering the factors identified in Rule 23(g)(1)(A)(i)-(iv)). The

Court previously appointed Scott+Scott, Lowey Dannenberg, DiCello Levitt, and Berman Tabacco as interim co-lead counsel (ECF Nos. 32, 200), and as counsel for the settlement class certified for purposes of the State Street settlement (ECF No. 212), JPMorgan settlement (ECF No. 258), UniCredit settlement (ECF No. 381), and Natixis settlement (ECF No. 382). At all times, the firms have competently undertaken the responsibilities assigned to them by the Court. Accordingly, Plaintiffs request that Scott+Scott, Lowey Dannenberg, DiCello Levitt, and Berman Tabacco be appointed as counsel for the Settlement Class for purposes of the Settlement.

## III.    NOTICE TO THE SETTLEMENT CLASS

Plaintiffs respectfully request that the Court appoint A.B. Data as Claims Administrator for the Settlement, which was previously appointed as Claims Administrator for the prior four settlements. ECF Nos. 212, 258, 353, 354, 381, 382. A.B. Data recommends a Class Notice Plan consisting of notice by direct mail, a press release via PR Newswire, publication in digital media, newsfeed ads, and creation of a case-specific telephone number and settlement website. Co-Lead Counsel Decl., Ex. 2. This plan satisfies the requirements of Rule 23, Local Rule 23.1, and due process and should be approved. *See Wal-Mart*, 396 F.3d at 113-14.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of Settlement with Bank of America, N.A., Merrill Lynch International, NatWest Markets Plc and NatWest Markets Securities Inc., Nomura International Plc, UBS AG, UBS Europe SE and UBS Securities LLC, Citigroup Global Markets Inc. and Citigroup Global Markets Limited, Jefferies International Limited, and Jefferies LLC, and enter the accompanying Preliminary Approval Order.

Dated: July 26, 2024

**DICELLO LEVITT LLP**

 s/ *Gregory S. Asciolla*
GREGORY S. ASCIOLLA
NOAH COZAD
485 Lexington Avenue,
Suite 1001
New York, NY, 10017
Telephone: 646-933-1000
gasciolla@dicellolevitt.com
ncozad@dicellolevitt.com

**SCOTT+SCOTT
ATTORNEYS AT LAW LLP**
 s/ *Patrick Coughlin*
PATRICK COUGHLIN
DANIEL J. BROCKWELL
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
pcoughlin@scott-scott.com
dbrockwell@scott-scott.com

**SCOTT+SCOTT
ATTORNEYS AT LAW LLP**
KRISTEN ANDERSON
DONALD A. BROGGI
MICHELLE E. CONSTON
PATRICK J. RODRIGUEZ
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Telephone: 212-223-6444
kanderson@scott-scott.com
dbroggi@scott-scott.com
mconston@scott-scott.com
prodriguez@scott-scott.com

**SCOTT+SCOTT
ATTORNEYS AT LAW LLP**
DAVID R. SCOTT
AMANDA LAWRENCE
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
david.scott@scott-scott.com

**LOWEY DANNENBERG, P.C.**

 s/ *Vincent Briganti*
VINCENT BRIGANTI
GEOFFREY M. HORN
CHRISTIAN LEVIS
ROLAND R. ST. LOUIS, III
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com
clevis@lowey.com
rstlouis@lowey.com

**LOWEY DANNENBERG, P.C.**
CHARLES KOPEL
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: 215-399-4770
Facsimile: 610-862-9777
ckopel@lowey.com

**BERMAN TABACCO**

s/ *Todd A. Seaver*

JOSEPH J. TABACCO, JR.
TODD A. SEAVER
CARL N. HAMMARSKJOLD
CHRISTINA SARRAF
425 California Street, Suite 230
San Francisco, CA 94104
Telephone: 415-433-3200
Facsimile: 415-433-6382
jtabacco@bermantabacco.com
tseaver@bermantabacco.com
chammarskjold@bermantabacco.com
csarraf@bermantabacco.com

*Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 26, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

<u>s/ *Patrick Coughlin*          </u>
Patrick Coughlin